UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

WALTER J. POWELL

PLANTIFF                                    DOCKET # 3:18-CV-30146-MGM

Vs.

City of Pittsfield, Mayor Linda M. Tyer, in her Official and
Individual Capacity, City Solicitor, Richard M. Dohoney, in his
Official and Individual Capacity, former Mayor Edward M.
Reilly, in his Official and Individual Capacity, Former Mayor
Daniel Bianchi in his Official and Individual Capacity, Former
City Solicitor, Kathleen G. Alexander, in her Official and
Individual Capacity, Pittsfield Police Department, Police Chief
Michael J. Wynn, in his Official and Individual Capacity, P.P.D.
Firearms Administrator Susan Wheeler, in her Official and
Individual Capacity, Pittsfield Police Department Captain Michael
Grady in his Official and Individual Capacity, Andrew Couture
In his Official and individual capacity, City of Pittsfield Finance
Director / Treasurer, Matthew M. Kerwood, in his Official and
Individual Capacity, Former Personnel Director, John M. DeAngelo,
in his Official and individual Capacity, Pittsfield Retirement Board,
Pittsfield Retirement Board Administrator, Karen L. Lancto, in her
Official and Individual Capacity

DENFENDANTS

PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION MOTION
TO DEFENDANT ALEXANDERS'S MOTION TO DISMISS

Now comes the Pro Se Plaintiff, Walter J. Powell, and hereby *objects* to and *opposes* Alexander's *April*

*18 2019,* meritless Motion to Dismiss in which she makes blanket universal denials with absolutely no

Page **1** of **29**

documentation to support her preposterous denials. Alexander also attempts to ignore and or totally disregard all of the contemporaneous documentation attached, as Exhibits to the Original September 6 2018, Complaint which this Pro Se Plaintiff is still relying on as well as the exhibits attached to the this Amended Complaint which corroborates all allegations (facts).

As grounds for my Objection to and Opposition of Alexander's erroneous claim that the complaint is barred by Res Judicata and statute of limitations and fails to state a claim for relief which relief can be granted under Fed. R. Civ. P. 12 (b) (6).

Res Judicata shouldn't apply when newly discovered evidence and information was obtained subsequent to the ending of the complaint 97-CV-30189-MAP.

Also the information and facts was concealed because of its connections to more recent nefarious and unlawful misconduct which was calculated and continuous. In Fournogerakis v. Barlow (2008) 256 B. C. A. C. 169 (CA); 431 W.A.C. 169 "The facts material to Alexander's behavior were not necessarily the same as the facts in 97-CV-30185-MAP" and was clearly of a continuous nature. The continuous harassment and retaliatory acts committed by Alexander would have a negative impact on my financial status for 19 consecutive years, until the very day that I retired, October 1 2016.

"The facts involved in these causes of actions aren't the same, see paragraphs 22 thru 24. Alexander's would later have additional involvement in a conspiracy with Attorney Kerry David Strayer BBO# 54904 where Alexander fraudulently misrepresented the facts for the closing of this Pro Se Plaintiff's Taxi and Limo business as a pretext to unlawfully have this Pro Se Plaintiff lose $150 dollars bi-weekly for 19 years, until the very day this Pro Se Plaintiff retired from the Pittsfield Police Department, on October 1 2016. A total of over $68,000 dollars was taken from this Pro Se Plaintiff by the Pittsfield

Treasurer's office.

This Court retains a discretion to refuse to apply the principle where in special circumstances a rigid application would frustrate its purpose. Here, despite Alexander being suspended from practicing law for two years and being fined \$10,000 dollars personally because her egregious behavior, she would ignore this Federal Court's sanctions and vindictively, continued with her deliberate and retaliatory behavior towards this Pro Se Plaintiff with her deliberate quest to cuase even more financial damage to the Pro Se Plaintiff (see exhibits A1 thru A15) attached to the Original Complaint.

The statute of limitations will start to run upon the entirety of this accumulated malfeasance only when Alexander's misbehavior draws to a close, which was *October 1 2016,* the very day of my retirement from the Pittsfield Police Department. My initial Discrimination and Retaliation Complaint with the Massachusetts Commission Against Discrimination was filed on *May 10 2017.*

Hostile work environment claims brought under title VII of the Civil Rights Act of 1964 offer the Paradigmatic example of this type of continuing violation.

A plaintiff alleging a single hostile work environment can recover for all injurious manifestations of that environment, regardless of when they occurred, whether they would be actionable if sued upon individually, and when the plaintiff discovered the essential facts supporting his or her claim, provided that the same hostile environment persisted up into the limitations period prior to the filing of an administrative charge. Here the administrative charge was filed by this Pro Se Plaintiff on *May 10 2017,* with the *M.C. A. D.* and simultaneously with the *E. E. O.C*.

An employer may have to fire a harassing employee, or face continued liability for the hostile work environment his or her mere presence creates (*Alexander, Kerwood, Wynn and Dohoney)*.

One test, applied in some civil rights cases, provides that for a modified continuing violation to exist:

(1)  The defendant's wrongful conduct must continue after the precipitating event that began the pattern of misbehavior ; (2) injury to the plaintiff must accrue after that event; and (3) further injury to the plaintiff must have been avoidable if the defendant had at any time ceased his or her wrongful conduct.  This test has absolutely been satisfied with the deliberate, harassing and retaliatory actions of A*lexander, Kerwood, Wynn and Dohoney.*

A violation is called "continuing, " signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, the court determined, "when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct".

In considering a Motion to Dismiss under Fed. R. Civ. P. Rule 8 or Rule 12 (b) (6), the court should accept as true all allegations in the Complaint, as well as any inferences that may be drawn from the Complaint see e.g., Lantner v. Carson, 374 Mass. 606 (1978); Jones v. Brockton Public Markets, Inc., 369 Mass 387 (1975).

In 3:18-CV-30146-MGM  this Pro Se Plaintiff attached 41 individual exhibits with the *September 6 2018*,  Federal Complaint and also is using the same 41 individual exhibits in this *April 8 2019, Amended Complaint.*  Several of the exhibits have exhibits attached to the exhibits. Specifically, exhibit N1 which thoroughly discusses this Pro Se Plaintiff's unlawful August 7 2017, **LTC** denial has exhibits A thru N attached to that specific exhibit which demonstrates and verifies each and every allegation made in the Federal Complaint.  Exhibits "A" thru "A15" thoroughly discuss Alexander's choreographed unlawful and retaliatory plot to harm me financially for 19 years with specificity and corroborating, contemporaneous

documentation (exhibits).

The criteria required for a Plaintiff to defeat a Motion to Dismiss under Rule 12 (b) (6) or Rule 8 are generous and viewed as a "minimal hurdle" for the Plaintiff, Richards v. Arteva Specialities S. A. R. L., 66 Mass. app. Ct. 726 (2006) (quoting) Bell v. Mazza, 394 Mass. 176, 184 (1985). This standard was clarified following the Supreme Court's decision in Bell Atl. Corp. v. Trombly (550 U.S. 544 (2007) to state that a Complaint should include factual allegations suggesting an entitlement to relief. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636, (2008) quoting  Bell Atl corp v. Trombly, 127 S. Ct. at (1969).

Here, Alexander hasn't even attempted to dispute the fact that she was responsible for the City of Pittsfield and the Pittsfield Treasurer's office taking \$150 dollars bi-weekly from me for 19 years after she unlawfully and retaliatorily forced me to close my taxi and Limo business as a condition to return to work as a Pittsfield Police Officer. Significantly, there were several white Pittsfield Police officers who owned and operated businesses while still working as Pittsfield Police Officers, which includes Pittsfield Chief of Police, Michael J. Wynn.  I have attached ample contemporaneous documentation (exhibits) that verify and corroborate the accuracy and truthfulness of my allegations, which the Attorneys in this matter 3:18-CV-30146-MGM  have chosen to attempt to pretend with their universal blanket denials, as though the corroborating exhibits were never attached.

Nevertheless, "dismissals on the basis of pleadings, before facts have been found, are discouraged." Gennari v. City of Revere, 23 Mass. App. Ct. 979 (1987).  When confronted with a Rule 12 (b) (6) motion to dismiss for failure to state a claim, the court must accept the well-pleaded allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. **See S.E.C. v. Tambbone,** 597 F. 3d 436, 441 (1st Cir. 2010). A complaint that states a plausible claim for relief, on its face will

survive a motion to dismiss.  The Supreme Court has explained that "(a) claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The following facts, which are stated in light most favorable to Plaintiffs, **See Young v. Lepone,** 305 F 3d 1, 8 (1ˢᵗ Cir. 2002),  come directly from the complaint and the attachments thereto. Alexander choreographed a nefarious plot to force me to close my business while several white officers had businesses. Alexander was simultaneously assisting in Berkshire Superior Court to force me to pay for the same business that she was forcing me to shut down. The City of Pittsfield and Pittsfield Treasurers Office then took $150 dollars bi-weekly from me for 19 years, the very day that I retired from the Pittsfield Police Department after serving 30 years with the Pittsfield Police Department and 3 years With the North Adams Police Department.

This Pro Se Plaintiff's Federal Complaint 3:18-CV-30146-MGM is clearly sufficient to withstand the Defendants Motion to Dismiss. The allegations in the Complaint support Plaintiff's claims that the Defendants have (1) deliberately violated specific State and Federal Laws (2) have been in defiant contempt of the United States District Court decision and order in 97-30189-MAP  and (3) participated in a continuous pattern of retaliatory and harassing behavior.

Viewing all facts set forth in the Complaint 3:18-CV-30146-MGM as true and in light most favorable to the Plaintiff, Alexander has failed to meet her burden of showing that Plaintiff is not entitled to any relief.

Alexander's Motion also asks the court to determine conclusions of Law that are more appropriately addressed by a finder of fact.

#### Accurate Procedural History

Alexander correctly states that this Pro Se Plaintiff has a significant litigation history with the City of Pittsfield , City Officials, Pittsfield Police Department and employees. As a Vietnam Era veteran (82nd Airborne), a 33 year retired Massachusetts Police Officer, a United States citizen and father of a fatally ill 19 year old daughter, I have an absolute right to complain and file complaints about unlawful and retaliatory behavior which has persisted for 33 years without interruption. I absolutely have no patience or tolerance for the evil, vindictive, and racist behavior. By the way, all previous complaints filed on my behalf were successful.

The City of Pittsfield and the Pittsfield Police Department has an extremely, significant history of discriminating and retaliating against its past and present black officers. Presently, Officer Dale Eason who was unlawfully terminated in 2016, just recently won his suit at the Supreme Judicial Court. The SJC ordered Officer Eason to get full back pay with interest and all benefits. Chief Wynn is in contempt of the SJC's decision and order.

On December 23 2018, this Pro Se plaintiff personally spoke with Officer Dale Eason. Even though the Massachusetts Supreme Judicial Court on October 4 2018, in a 19-page ruling, ordered Officer Dale Eason back to work with the Pittsfield Police Department, Wynn is still in defiant contempt of the SJC's October 4 2018, order and is still harassing and retaliating against Officer Eason who is also black.

This Pro Se Plaintiff served in the United Army (82 Airborne) Vietnam era veteran. This Pro Se Plaintiff, retired from the Pittsfield Police Department on October 1 2016, after having served 30 years with the Pittsfield Police Department and 3 years with the North Adams Police Department and significantly, was the first minority officer to have ever retired from the Pittsfield Police Department.

The fact, that this Pro Se Plaintiff was the first minority officer to have ever retired from the Pittsfield Police Department on October 1 2016, speaks for itself.

On May 17 2016, this Pro Se Plaintiff did attempt to reopen the 1997 Complaint because the City of Pittsfield and Pittsfield Police Department are still in contempt of Judge Michael A Ponsor's 2002 decision and order. Attorney Olanoff erroneously claimed on page 2, paragraph 2 "In the motion, Plaintiff made many similar allegations as those contained in the Complaint in the instant action, including allegations relating to the garnishment of his pay". That was no allegation of garnishment of pay, as a result of Alexander's choreographed deliberate retaliatory action, I had $150 dollars bi-weekly taken from me for 19 consecutive years by the Pittsfield Treasurers office (see exhibits "A" thru "A15"). All of my *Claims* and *Causes of Actions* are corroborated with the attached Exhibits.

The City of Pittsfield and Pittsfield Police Department in defiant contempt of Judge Ponsor's 2002 decision and order has failed and or refused to replace this Pro Se Plaintiff's 5+ years creditable retirement time back which accumulated during the 5+ year unlawful termination. As a Pro Se Plaintiff you aren't treated fairly or with any dignity, almost as if you are punished for having the courage to represent yourself. This Pro Se Plaintiff has experienced that exact same treatment here in 3:18-CV-30146-MGM and as I was in 2:16-CV-30004-MGM.

Unfortunately, the City of Pittsfield and Pittsfield Police Department have made the treatment of their black officers less than equal to the white officers. In *March of 2010,* I attempted to push the City of Pittsfield and Pittsfield Police Department to honor Judge Michael A. Ponsor's 2002 Order and decision to make me whole with reference to my . On *March 5 2010,* Captain John Mullin did his part to honor Judge Ponsor's 2002 Order and decision in 97-CV-30189-MAP by having Julie Davis compute my

accruals in vacation and sick time (see exhibit "1" attached to this Opposition Memorandum). Significantly, the Pittsfield Police Department, City of Pittsfield and Pittsfield Retirement Board never replaced any of my accumulated vacation time (1288 hours or 161 days) or accumulated 5+ years of retirement time. Significantly, vacation time is considered as wages.

  However, the City of Pittsfield did graciously give me 35 of my 120 accumulated days owed to me (see exhibit "1" *3/5/*2010 computation of time by Julie Davis attached to this Memorandum, also see my exhibit "B" A*ugust 29 2003,* Memorandum of Understanding attached to *Original Complaint* and also used for *Amended Complaint)*.

  Was this Pro Se Plaintiff expected to just say don't worry about my 5 + years of creditable retirement time which the City of Pittsfield and Pittsfield Retirement Board never put back, which significantly lowered my pension. The City of Pittsfield and Pittsfield Police Department are defiantly ignoring Judge Ponsor's 2002 decision and order in 97-CV-30189-MAP, just as they are now doing with reference to black officer Dale Eason in the October 4 2018, Supreme Judicial Court's decision and order.

  It appears as though when it comes to the black officers, the Pittsfield Police Department will defiantly ignore the decisions and orders of the United States District Court and the Massachusetts Supreme Judicial Court if those Courts dare to rule in favor of a black officer.

  Frank Reed was the first black officer in 1965, abused and ran off by the Pittsfield Police Department. I personally got to know each of the other black officers and their families.

  Johnny Johnson was next, late 1970's early 1980's. Johnny Johnson was sitting in his personal vehicle with his white girlfriend whom he would later marry. A state police officer had checked Johnny's vehide. The Pittsfield Police Department somehow found out about the incident and charges were fabricated

and Johnny Johnson was terminated from the Pittsfield Police Department. At that time Johnny Johnson was taking classes at Berkshire Community College and studying to take the Sergeants test.

Next, was Johnny's brother, James Johnson. James Johnson was absolutely tormented by the other white officers and eventually terminated. James Johnson personally told this Pro Se Plaintiff that one night when he went to roll call, somebody had written "nigger" on the wall of the roll call room. Another night, James Johnson was off duty and hanging out a local bar on Melville Street here in Pittsfield. James Johnson said two detectives walked into the bar and asked him if everything was okay? James Johnson responded "yes". When James Johnson walked outside to leave, James found that his van had been shot with a shotgun.

Both, Johnson brothers complained about the abhorrent treatment they received at the hands of the Pittsfield Police Officers. James actually filed a suit and won. The City of Pittsfield and Pittsfield Police Department appealed the decision four times until James Johnson died. The City of Pittsfield stopped appealing once James died. James's son got some money. I occasionally speak with James's son and I have his telephone number and address.

Actually, the City of Pittsfield formed a police review committee to look into the Johnson brother's complaints. The committee like everything else in Pittsfield was for optics. The committee was filled with various individuals. Frank Polidoro a local police officer was one of the board members. Robert Morrell a Berkshire Community College Professor was the board chairman. This Pro Se Plaintiff has copies of all of the minutes from the various meetings.

When this Pro Se Plaintiff first joined the Pittsfield Police Department, I requested a copy of the minutes. Even though in the Berkshire Eagle, it showed that the minutes had been turned over to the

Page **10** of **29**

Berkshire District Attorney's office for safe keeping. However, when I requested a copy, the DA's office, the Pittsfield City Council both claimed the minutes didn't exist. After writing the Secretary of State and petitioning everyone I could think of, I finally got a copy of the minutes about six months later. The City of Pittsfield and Pittsfield Police Department has a history of abusing, discriminating and harassing its black officers. This Pro Se Plaintiff has copies of all of the minutes from the various meetings. Chief Wynn has either been ordered too or has personally decided to keep up with the tradition of attempting to abuse the City of Pittsfield black officers.

On October 4 2018, the Berkshire Eagle printed article "SJC: CITY MUST GIVE OFFICER JOB BACK". The article was writing about black officer Dale Eason who was unlawfully fired by Wynn in 2016. Dohoney agreed to an arbitrator. Both sides agreed that the arbitrator's decision would be binding. After the arbitrator decided that Eason should only receive a 3 day suspension, Wynn and Dohoney reneged on the agreement (contract) and appealed the decision to Berkshire Superior Court. Judge Ford upheld the arbitrator's decision. Wynn and Dohoney appealed Judge Ford's decision to the Massachusetts Supreme Judicial Court. That's the October 4 2018, Berkshire Eagle Article. Wynn is still in defiant contempt of the SJC's October 4 2018, decision and order and has refused to give Eason his job back.

On December 15 2018, the Berkshire Eagle printed an article about an arrest by the Pittsfield Police Department being tossed by Judge Mark Pasqualiello because Dohoney and Wynn lacked candor in their false claim that the Pittsfield Police Department didn't have a policy and procedures manual with reference to the Auxiliary Police. The defense Attorney requested a copy of the policy and procedures manual and Wynn and Dohoney told the DA to falsely claim that there was no policy and procedures manual, which the DA reported that false claim to Judge Mark Pasqualiello. Judge Pasqualiello appearing

Page **11** of **29**

to have been annoyed by the blatant lack of candor said "it's going to be difficult to reconcile going forward". Again, Judge Pasqualiello tossed the case, loaded gun and all.

This Pro Se Plaintiff has been forced to endure this blatant racist discriminatory and harassment for 33 years. So, it's astonishing that both Attorney Trapani and Attorney Olanoff will write that I have a history of litigation with the City, Police Department and employees, that is absolutely correct. As an intelligent and proud Black Man, I chose not to lay down and play dead, while being blatantly discriminated against, abused and harassed. I have no patience or tolerance for the evil, disgusting, vindictive and racist behavior.  Because my 19 year old fatally ill daughter and I have been forced to live through this vile and unlawful absurdity, my skin is extremely thick.  Every preposterous act makes me more determined than ever to expose each and every willing participant in this sorry pathetic saga. Now the jesters are going to the internet.

First, article from Planet Valenti  LENIHAN V. CITY OF PITTSFIELD PART 3 FEAR AND LOATHING IN PPD Aug 26 2015, tomorrow, THE CONCLUSION OF LENIHAN V...... Pittsfield had to pay Walter Powell over 1 million in damages.  The City very well may have paid over 1 million, but not to Walter Powell. That would be for all of the sharp and droll Attorney's they hired.

Second, (Topix/ m.topix.com  Managing Editor Anna Marquardt, Senior Editor Jennifer C. Martin, Senior writer Robert Desalvo, Staff Writer Colin Pinkham, Staff Writer Teresa Newsome, Staff Writer Stacie Hougland. I don't know who these folks are but I will find out who they are. The totally erroneously and slanderous article is as follows:  Pittsfield cop's suit against city claiming discrimination.....June 8 2017,  20 posts 2 authors Just like heroin dealing Pittsfield cop.....police officer Walter Powell. Delmont Keyes (Delmont T. Keyes Appelant v.) The racist propaganda continues here in

Berkshire County. I am convinced there is a nucleus of KKK members that run Pittsfield and Berkshire County. Everything is being chronologically documented.

Third, Berkshire Eagle "Man who overdosed in police custody says he wasn't searched when…. July 30 2016, Pittsfield-City police are investigating how a suspect in….patrol officers Walter Powell and Jennifer Brueckman…. Well, we know Walter Powell's litigation history, Jennifer Breuckman also has a Discrimination Suit in Berkshire Superior Court against the City and Police Department. Relevant facts to this matter. Myself and Breuckman assisted canine officer Jimmy Parise and Sgt. Herland. Parise and Sgt Herland went inside while Breuckman and I guarded the perimeter of the house. The suspect was placed under arrest by Jimmy Parise and Sgt. Gary Herland inside the house. The suspe ct was brought to my cruiser and I transported and Breuckman followed me.  Parise and Herland are yes men.

This Pro Se Plaintiff must rebut each one of Attorney Olanoff's sub sections, because Attorney Olanoff is going on what she is being erroneously told. However, there has been a lack of candor in this matter with reference to the Defendants. That's why this Pro Se Plaintiff attached the 41 individual contemporaneous evidentiary documents that will verify and prove each and every allegation in 3:18-CV-30146-MGM.  Some exhibits have exhibits attached to the exhibits, such as exhibit N1 which has exhibits A thru N attached to that specific exhibit.

## Standard of Review

When confronted with a rule 12 (b) (6) motion to dismiss for failure to state a claim, the court must accept the well-pleaded allegations of the plaintiff complaint as true, drawing all reasonable inferences in favor of the plaintiff. See S.E.C. v. Tambone, 597 f3d 436, 441 (1st Cir. 2010). A complaint that states a plausible claim for relief, on its face will survive a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009). The Supreme Court has explained that "(a) claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Appropriately, this Pro Se Plaintiff exposed Alexander's retaliatory and unlawful conspiracy with Attorney Kerry David Strayer BBO#549404 in 9727-CV-822 first ex-parte in Berkshire Superior Court to unlawfully get a Judgment and then transferred to Central Berkshire District Court for enforcement. That secret, unlawful and retaliatory behavior by Alexander and Attorney Kerry David Strayer BBO# 549404 would cause financial harm to this Pro Se Plaintiff for 19 years. As a result of Alexander's retaliatory behavior, the Pittsfield Treasurers office then took $150 dollars bi-weekly from this Pro Se Plaintiff for 19 years until the very day this Pro Se Plaintiff was the first (1st) black officer to retire from the Pittsfield Police Department on October 1 2016.

Next, this Pro Se Plaintiff must point out that Attorney Olanoff's Factual Allegations on page 4, paragraph 3 is erroneous. Attorney Olanoff attempting to deflect writes " (1) Claims based upon allegations relating to the 1997 Action". This is a very factually intensive matter, so, no, this Pro Se Plaintiff is actually bringing this Federal Court's attention to Alexander's unlawful and retaliatory action that was deliberately and (secretly) perpetrated during and after the 1997 Action, which this Pro Se Plaintiff discovered in 2015.

In considering a Motion to Dismiss under Fed. R. Civ. P. Rule 8 or Rule 12 (b) (6), the court should accept as true all allegations in the Complaint, as well as any inferences that may be drawn from the Complaint see e.g., Lantner v. Carson, 374 Mass. 606 (1978); Jones v. Brockton Public Markets, Inc., 369 Mass 387 (1975). A Motion to Dismiss should not be granted for failure to state a claim, "unless it

appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief". Nader v. Citron, 373 Mass. 96, 98 (1977) (emphasis added).

   The criteria required for a Plaintiff to defeat a Motion to Dismiss under Rule 12 (b) (6) or Rule 8 are generous and viewed as a "minimal hurdle" for the Plaintiff, Richards v. Arteva Specialities S. A. R. L., 66 Mass. app. Ct. 726 (2006) (quoting) Bell v. Mazza, 394 Mass. 176, 184 (1985). This standard was clarified following the Supreme Court's decision in Bell Atl. Corp. v. Trombly (550 U.S. 544 (2007) to state that a Complaint should include factual allegations suggesting an entitlement to relief. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636, (2008) quoting Bell Atl corp v. Trombly, 127 S. Ct. at (1969). Nevertheless, "dismissals on the basis of pleadings, before facts have been found, are discouraged." Gennari v. City of Revere, 23 Mass. App. Ct. 979 (1987).

   Viewing all facts set forth in the Complaint 3:18-CV-30146-MGM as true and in light most favorable to the Plaintiff, Pittsfield Defendants have failed to meet their burden of showing that Plaintiff is not entitled to any relief.

### Argument

   Res Judicata shouldn't apply when newly discovered evidence and information was obtained subsequent to the ending of the complaint 97-CV-30185-MAP.

   Also the information and facts was concealed because of its connections to more recent nefarious and unlawful misconduct which was calculated and continuous. In Fournogerakis v. Barlow (2008) 256 B. C. A. C. 169 (CA); 431 W.A.C. 169 "The facts material to Alexander's behavior were not necessarily the same as the facts in 97-CV-30185-MAP".

   "The facts involved in these causes of actions aren't the same, see paragraphs 22 thru 24.

Alexander's would later have additional involvement in a conspiracy with Attorney Kerry David Strayer
BBO# 54904  where Alexander  fraudulently misrepresented the facts for the closing of this Pro Se
Plaintiff's Taxi and Limo business as a pretext to unlawfully have this Pro Se Plaintiff lose \$150 dollars bi-
weekly for 19 years, until the very day this Pro Se Plaintiff retired from the Pittsfield Police Department,
on October 1 2016. A total of over \$68,000  dollars was taken from this Pro Se Plaintiff by the Pittsfield
Treasurer's office.

   The Court retains a discretion to refuse to apply the principle where in special circumstances a rigid
application would frustrate its purpose. Here, despite Alexander being suspended from practicing law
for two years and being fined \$10,000 dollars because her egregious behavior, she would continue with
her deliberate and retaliatory behavior towards this Pro Se Plaintiff (see exhibits A1 thru A15).

A.  Application of Res Judicial

Attorney Olanoff erroneously attempts to distract by stating "where both the potentially precluding
suit were litigated in Federal Courts, federal law governs the res judicata effect of the prior judgment".

There was no judgment on the new issues which Alexander (secretly) manifested during and after the
litigation in 97-CV-30189-MAP. Judge Michael A. Ponsor, Attorney David P. Hoose , nor this Pro Se
Plaintiff had any clue that Alexander was participating in ex-parte Superior Court action. Alexander
certainly didn't notify Judge Ponsor or my then Attorney David P. Hoose that she was engaging in
retaliatory behavior simultaneously at the same time that she was a Defendant in 97-CV-30189.

Attorney Olanoff on page 5, paragraph 3 makes her fallacious argument ""Under the doctrine of res
Judicata, a final judgment on the merits of an action precludes the parties or their privies from
relitigating claims that were raised or could have been raised in that action".

Again, Attorney Olanoff appears to attempt to overlook the fact that Alexander's simultaneous ex-parte action in Berkshire Superior Court was kept secret from Judge Michael A. Ponsor, my then Attorney David P. Hoose and this Pro Se Plaintiff. Therefore, these issues couldn't have been raised In 97-CV-30189-MAP because nobody other than Alexander and Attorney Kerry David Strayer BBO# 549404 knew about the issues. The case law that Attorney Olanoff has cited here Mass. Sch . Of Law at Andover, Inc v. Am. Ar assn., 142 F.3d 26,37 (1ˢᵗ Cir 1998).

Next, on page 6 paragraph 1, Attorney Olanoff erroneously cites *In re Sonus Networks, Inc., S'bolder Derivative Litig., 499 F. 3d 47, 56 (1ˢᵗ Cir 2007). ("Claim preclusion is based on the idea that the precluded litigant had the opportunity and incentive to fully litigate the claim in an earlier action, so that all matters that were or could have been adjudicated in the earlier action on the claim are considered ti have been finally settled by the first judgment".)*

*Attorney Olanoff is citing case law where the issues were known to the Plaintiff. Here, in the previous matter, 97-CV-30189-MAP, Alexander is the only one who knew about the additional information and issues. Alexander kept those additional facts and issues concealed because of its connections to more recent nefarious and unlawful misconduct which was calculated and continuous by Alexander. In Fournogerakis v. Barlow (2008) 256 B. C. A. C. 169 (CA); 431 W.A.C. 169 "Also, the facts material to Alexander's behavior were not the same as the facts in 97-CV-30185-MAP".*

*Here, what is clearly shown is the fact that Alexander while being prosecuted for her nefarious and unlawful action in 97-CV-30189-MAP. Alexander was secretly and simultaneously immersed in her conspiracy with Attorney Kerry David Strayer BBO# 549404 to continue her retaliatory action for 19 years, ending on October 1 2016.*

*First, the court in the 1997 action did enter a final judgment on the issues that were before the court. However, nobody, other than Alexander knew about the additional issues, which were simultaneously being pursued by Alexander, while she intentionally concealed those issues from the court.*

*Second, the causes of action articulated in the instant action and 1997 action aren't identical. In 2015, prior to retiring from the Pittsfield Police Department, this Pro Se Plaintiff discovered the additional Issues which Alexander had deliberately concealed from the Federal Court, this pro Se Plaintiff's former Attorney, David P. Hoose and this Pro Se Plaintiff.*

*Now, here we have Attorney Olanoff attempting to further unfairly punish this Pro Se plaintiff for Alexander's unlawful and unethical defiant behavior, where during the same time that she was being prosecuted for unlawful wrongdoing, Alexander was simultaneously still committing a secret conspiracy to further retaliate against this Pro Se Plaintiff.*

Attorney Olanoff on page 6, paragraph 2 erroneously claims "In Plaintiff's own words, the <u>instant</u> action is based upon Alexander's involvement and orchestrated nefarious scheme to financially punish me for many years for my engaging in protected activities protected by State law for reporting matters that I believe to have constituted wrong doing."Compl. at 21. "These facts "form a common nucleus that is identifiable as a transaction." Then Attorney Olanoff continues "Where Plaintiff could-have-and in fact did-bring claims against Alexander for retaliation in violation of 42 U.S.C. 1983 and conspiracy to retaliate against him, in violation of 42 U.S.C.s. 1985 (2) based on the same transaction, the cause of action is sufficiently identical for purposes of res judicata". *Res Judicata shouldn't apply when newly discovered evidence and information was obtained subsequent to the ending of the complaint 97-CV-30185-MAP.*

*Also the additional information and facts was deliberately concealed by Alexander because of its connections to more recent nefarious and unlawful misconduct which was calculated and continuous . In Fournogerakis v. Barlow (2008) 256 B.C. A. C. 169 (CA); 431 W.A.C. 169 "The facts material to Alexander's behavior here, were not necessarily the same as the facts in 97-CV-30185-MAP".*

*"The facts involved in these causes of actions aren't the same, see paragraphs 22 thru 24. Alexander's would later have additional involvement in a conspiracy with Attorney Kerry David Strayer BBO# 54904 where Alexander fraudulently misrepresented the facts for the closing of this Pro Se Plaintiff's Taxi and Limo business as a pretext to unlawfully have this Pro Se Plaintiff lose $150 dollars bi-weekly for 19 years, until the very day this Pro Se Plaintiff retired from the Pittsfield Police Department, on October 1 2016. A total of over $68,000 dollars was taken from this Pro Se Plaintiff by the Pittsfield Treasurer's office.*

*The Court retains a discretion to refuse to apply the principle where in special circumstances a rigid Application would frustrate its purpose.*

B. *Plaintiff's Claims Are Not Barred By the Statute of Limitations*

Attorney Olanoff erroneously claims "claims against Alexander are clearly time-barred", but for the claim for violation of the Whistleblower Act, M.G.L. c. 149, s 185 (which is discussed in a separate section and has a shorter limitations period) is subject to a three-year statue of limitations". However, the Continuing Violation Doctrine clearly applies here in this instant matter.  In Pegram v. Honeywell, Inc., 361 F. 3d 272, 279 (5th Cir. 2004) and K Graham-Gonz L. Rev., 2007-Heinline. Once you proved that the respondents discriminating and or violations of Federal Laws is continuing then you should be capable of recovering for acts of discrimination that occur both before and after the

limitations period begins.

Attorney Olanoff on page 8, paragraph 3 erroneously writes "In his Complaint, Plaintiff claims Alexander's tortious conduct began on or about December 5 1997 ("Alexander … was corresponding ex-parte with the lender (Urban Initial Fund) and assisted and encouraged Urban Initial fund to bring me into Berkshire Superior Court ex-parte (secretly) on or about December 5 1997,  to get a judgment…") Complaint at 21.  Thus, under the three-year statutes of limitations, any action against Alexander must have been filed by December 5, 2000.  This suit, filed eighteen years later, is therefore time-barred and must be dismissed".

I was financially harmed for 19 years, as a  result of Alexander's unethical, nefarious and unlawful behavior and actions. The City of Pittsfield, Treasurers Office took \$150 dollars bi-weekly from me until the day I retired, October 1 2016,  as  a direct result of Alexander's orchestrated, unethical, retaliatory and nefarious behavior and actions. See attached Exhibits (A1) 4/16/1996,  Letter to Former Mayor Edward Reilly (A2) 1/23/1998,  Motion to Dismiss by Plaintiff (A3) 1/27/98, Letter from my then Attorney David Hoose to Judge Alfred Barbalunga (A4) 2/19/98,  Answer of City of Pittsfield by City Solicitor Kathleen Alexander Esq, (A5) 5/5/99, letter from City of Pittsfield to Attorney Strayer, (A6) 5/7/99, REQUEST FOR DEFAULT JUDGMENT MOTION, (A7) 8/4/99,  Answer of City of Pittsfield, (A8) 8/18/99, Answer of City of Pittsfield, (A9) 9/1/99, Answer of City of Pittsfield, (A10) 9/15/99,  Answer of City of Pittsfield, (A11) 9/29/99, Answer of City of Pittsfield, (A12) 10/13/99, Answer of City of Pittsfield, (A13) 10/27/99,  Answer of City of Pittsfield, (A14) 6/11/2015,  Letter from James M. Liston (Hackett Feinberg P.C.) and (A15) 6/22/2015,  Letter from (Hackett Feinberg P.C.) to Pittsfield

District Court Attn. SHANNON, Civil Clerk's Office.

The Continuing Violations Doctrine overrides the Statue of Limitations. This is an exception to the Statue of Limitations which sets the maximum period which one can wait before filing a lawsuit. For example an employee who suffers from recurring acts of abusive conduct may be unable to recognize the true character and enormity of the discriminatory harassment until after it has continued for an appreciable period of time.

Also In Cuddyer v. Stop & shop Co. 434 Mass. 521, a plaintiff who claims a hostile work Environment will often have to establish a continuing violation to recover for otherwise time-barred violations. Incidents of retaliation and discrimination serious enough to create a work environment permeated by abuse typically accumulate over time, and many incidents in isolation may not be serious enough for complaint. However, when linked together, the seemingly disparate incidents may show a prolonged and compelling pattern of mistreatment that have forced a plaintiff to work under intolerable, retaliatory and discriminatory conditions.

   a.   The Statute of Limitations is Tolled by the Continuing Violations Doctrine in 3:18-CV-30146-MGM

In Pegram v. Honeywell, Inc., 361 F. 3d 272, 279 (5th Cir. 2004) and K Graham-Gonz L. Rev., 2007-Heinline Once you proved that the respondents discriminating and or violations of Federal Laws is continuing then you should be capable of recovering for acts of discrimination that occur both before and after the limitations period begins.

The Continuing Violations Doctrine overrides the Statue of Limitations. This is an exception to the Statue of Limitations which sets the maximum period which one can wait before filing a lawsuit. For example an employee who suffers from recurring acts of abusive conduct may be unable to recognize

the true character and enormity of the discriminatory harassment until after it has continued for an appreciable period of time.

   Also In Cuddyer v. Stop & shop Co. 434 Mass. 521, a plaintiff who claims a hostile work environment will often have to establish a continuing violation to recover for otherwise time-barred violations. Incidents of retaliation and discrimination serious enough to create a work environment permeated by abuse typically accumulate over time, and many incidents in isolation may not be serious enough for complaint. However, when linked together, the seemingly disparate incidents may show a prolonged and compelling pattern of mistreatment that have forced a plaintiff to work under intolerable, retaliatory and discriminatory conditions.

   b.   Under the Discovery Rule The Plaintiff Knew or should Have Known About any Claims Against Alexander When His Paycheck Was First Garnished

   This Pro Se Plaintiff is compelled to address Attorney Olanoff's erroneous and woozy claim on page 9, last sentence " Under Massachusetts law, the discovery rule tolls the limitations period until a plaintiff recognizes, or reasonably should have recognized , "some casual connection between the defendant's actions and (his) injury".

   First, this Pro Se Plaintiff opened the Taxi and Limo business as a private citizen, while this Pro Se Plaintiff was out of work during the unlawful termination. Therefore, Alexander and the City of Pittsfield had absolutely nothing to do with that private business. Alexander's behavior in 97-CV-30189-MAP was so egregious that Judge Ponsor ordered Alexander to pay this Pro Se Plaintiff $10,000 dollars and said Alexander had no credibility at all. The Supreme Judicial Court suspended Alexander from practicing law for two (2) years.

Significantly, this Pro Se Plaintiff had no idea that Alexander was involved in the garnishing of this pro Se Plaintiff's pay, because Alexander is the one individual who insisted and ordered this Pro Se Plaintiff to close down his business.

Significantly, Alexander deliberately concealed the additional facts and information from Judge Michael A Ponsor, Attorney David P. Hoose and the Plaintiff.

C.  This Pro Se Plaintiff has Stated A Claim Which Relief Can Be Granted

In considering a Motion to Dismiss under Fed. R. Civ. P. Rule 8 or Rule 12 (b) (6), the court should accept as true all allegations in the Complaint, as well as any inferences that may be drawn from the Complaint see e.g., Lantner v. Carson, 374 Mass. 606 (1978); Jones v. Brockton Public Markets, Inc., 369 Mass 387 (1975).

In 3:18-CV-30146-MGM  this Pro Se Plaintiff attached 41 individual exhibits with the September 6 2018,  Federal Complaint. Several of the exhibits have exhibits attached to the exhibits. Specifically, exhibit N1 which thoroughly discusses this Pro Se Plaintiff's unlawful August 7 2017,  LTC denial has exhibits A thru N attached to that specific exhibit which demonstrates and verifies each and every allegation made in the Federal Complaint.

The criteria required for a Plaintiff to defeat a Motion to Dismiss under Rule 12 (b) (6) or Rule 8 are generous and viewed as a "minimal hurdle" for the Plaintiff, Richards v. Arteva Specialities S. A. R. L., 66 Mass. app. Ct. 726 (2006) (quoting) Bell v. Mazza,  394 Mass. 176,  184 (1985). This standard was clarified following the Supreme Court's decision in Bell Atl. Corp. v. Trombly (550 U.S. 544 (2007) to state that a Complaint should include factual allegations suggesting an entitlement to relief. Iannacchino v. Ford Motor Co., 451 Mass. 623,  636,  (2008) quoting  Bell Atl corp v. Trombly, 127 S. Ct. at (1969).

Nevertheless, "dismissals on the basis of pleadings, before facts have been found, are discouraged."

Gennari v. City of Revere, 23 Mass. App. Ct. 979 (1987).

This Pro Se Plaintiff's Federal Complaint 3:18-CV-30146-MGM is clearly sufficient to withstand the

Defendants Motion to Dismiss. The allegations in the Complaint support Plaintiff's claims that the

Defendants have (1) deliberately violated specific State and Federal Laws (2) have been in defiant

contempt of the United States District Court decision and order in 97-30189-MAP and (3) participated in

a continuous pattern of retaliatory and harassing behavior.

Viewing all facts set forth in the Complaint 3:18-CV-30146-MGM as true and in light most favorable to

the Plaintiff, Pittsfield Defendants have failed to meet their burden of showing that Plaintiff is not

entitled to any relief.

The Defendant's Motion also asks the court to determine conclusions of Law that are more

appropriately addressed by a finder of fact.

1. Count II: Violation of MCRA, M.G.L. c. 12 s 11I

Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United

states , or of rights secured by the constitution or laws of the commonwealth, has been interfered with,

or attempted to be interfered with, as described in Section 11 H & I, may institute and prosecute in his

own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as

provided for in said section, including the award of compensatory money damages . Any aggrieved

person or persons who prevail in an action authorized by this section shall be entitled to an award of the

costs of the litigation and reasonable attorney's fees in an amount to be fixed by the court.

Attorney Olanoff appears to have forgotten about Alexander's absolute persistence and order that as

a condition for this Pro Se Plaintiff to return to work as a Pittsfield Police Officer, the Taxi and Limo

business had to be closed.

Even though, there were several white officers who owned and operated businesses, which included

Wynn.

a. Alexander Absolutely Forced this Pro Se Plaintiff to Close Business As A Condition To Return to Work With The Pittsfield Police Department

Initially, this pro Se Plaintiff transferred the Taxi and Limo Business to wife. Alexander was not

satisfied and insisted the Taxi and Limo Business absolutely had to be closed before this Pro Se Plaintiff

could return to work as a Pittsfield Police Officer.

Unbeknownst, to this Pro Se Plaintiff, Judge Michael A. Ponsor or Attorney David P. Hoose, Alexander

was (secretly) and simultaneously behind the scenes, ex-parte with Attorney Kerry David Strayer BBO#

549404 in Berkshire Superior Court getting a default judgment to make this Pro Se Plaintiff pay for the

business that she had been actively forcing this Pro Se Plaintiff to close.

Contrary, to Attorney Olanoff's erroneous claim that I haven't plead factual content that allows the

court to draw that reasonable inference that (Alexander) is liable for the misconduct alleged".

Alexander attempted to hide her involvement, however, something compelled this Pro Se Plaintiff in

2015, to go to the Central Berkshire District Court and request that Shannon Crouse go into the

basement to retrieve the necessary contemporaneous documents that clearly exposed Alexander's

conspiracy with Attorney Kerry David Strayer BBO# 549404 which would make sure that this Pro Se

Plaintiff was retaliated against for 19 years.

2. Count III: Violation of 42 U.S.C. s. 1985

Alexander was Reilly's City Solicitor and surely the Treasurer and office personnel would have known

Case 3:18-cv-30146-MGM Document 187 Filed 05/07/19 Page 26 of 29

that this situation was extremely unusual. Also, Attorney Kerry David Strayer BBO# 549404 was active in the conspiracy. The loan was Federally guaranteed. All of the businesses failed, however, this pro Se Plaintiff is the only individual who was forced to pay any money back. One of the participants borrowed over $500,000 dollars to start an appliance store. The business failed, she never paid any money back.

This Pro Se Plaintiff has now given Attorney Olanoff the other individual in the conspiracy which satisfied the requirement to show a conspiracy.

3. Count V: Intentional Infliction of Emotional Distress

Contrary to Attorney Olanoff's erroneously claim that Alexander's conduct didn't show extreme and outrageous conduct is fallacious.

Unbeknownst, to this Pro Se Plaintiff, Judge Michael A. Ponsor or Attorney David P. Hoose, Alexander was (secretly) and simultaneously behind the scenes, ex-parte with Attorney Kerry David Strayer BBO# 549404 in Berkshire Superior Court getting a default judgment to make this Pro Se Plaintiff pay for the business that she had been actively forcing this Pro Se Plaintiff to close. This Pro Se Plaintiff paid for 19 years, until the very day that this Pro Se Plaintiff retired on October 2016. This Pro Se Plaintiff paid over $68,000 dollars. At the very end, this Pro Se Plaintiff was paying the 5th debt buying company.

Even, more disturbing, this Pro Se Plaintiff started the business while unlawfully fired and was a private citizen. Alexander's intent was to cause as much financial, emotional and psychological damage as possible to this Pro Se Plaintiff. Evil is when you know better, but do worse. This pro Se Plaintiff had children at home to take care of. Alexander's behavior was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Restatement (Second) of Torts s. 46 Comment (d) (1965)

Massachusetts cases have similarly described the limitations upon what can constitute extreme and outrageous conduct. See e.g., *Agis v. Howard Johnson Co., 371 Mass. at 145; George v. Jordan Marsh Co., 359 Mass. 244,254 (1971); Boyle v. Wenk, 378 Mass. 592,594-595 (1979).*

## CONCLUSION

In considering a Motion to Dismiss under Rule 12 (b) (6), the court should accept as true all allegations in the Complaint, as well as any inferences that may be drawn from the Complaint. The criteria required for a Plaintiff to defeat a Motion to dismiss under rule 12 (b) (6) are generous and viewed as a "minimal hurdle" Plaintiff. Nevertheless, dismissals on the basis of pleadings, before facts have been found, are discouraged. This Pro Se Plaintiff's Complaint is clearly sufficient to withstand the Defendant's Motion to Dismiss. The allegations in the Complaint support Plaintiff's claim that the Defendants have (1) deliberately violated specific State and Federal Laws (2) been in defiant contempt of the United States District Court Decision and Order in 97-CV-30189-MAP and (3) participated in a continuous pattern of retaliatory and harassing behavior.

Viewing all facts set forth in the Complaint as true and in a light most favorable to the Plaintiff, Defendants have failed to meet their burden of showing that Plaintiff is not entitled to many relief.

The Defendant's Motion also asks for the court to determine conclusions of law that are more Appropriately addressed by a finder of fact.

Wherefore, Alexander has not met her burden for a dismissal and Alexander's Motion for dismissal should be denied.

Respectfully Submitted

Walter J. Powell Pro Se
P.O. Box 511
22 Robbins Ave.
Pittsfield, Massachusetts 01201
Walterpowell58@gmail.com
413-770-7925

Dated May 6, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed at Federal District Court, Western Massachusetts

Division on this 6th day of May 2019. The registered participants as identified on the Notice of

Electronic filing (NEF) are hereby notified by the filing of this document.

Walter J. Powell / Pro Se

May 6 2019

Intentionally

Left

Blank