UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WALTER J. POWELL, | ) | |
| Plaintiff, | ) | Civil Action No. 18-30146-MGM |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF PITTSFIELD, *et al.*, | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION CONCERNING DEFENDANTS PITTSFIELD
RETIREMENT BOARD, KAREN LANCTO, EDWARD M. REILLY, AND MATTHEW M.
KERWOOD'S MOTION TO DISMISS
(Dkt. No. 162)

I.    INTRODUCTION

Currently before the court is a motion to dismiss by defendants Pittsfield Retirement

Board ("PRB") and its officials, Karen L. Lancto, Edward M. Reilly, and Matthew M. Kerwood

(collectively, "the PRB Defendants") seeking dismissal of the claims asserted against them in the

April 8, 2019 amended complaint ("Complaint") filed by plaintiff Walter J. Powell ("Plaintiff")

(Dkt. No. 158).  The motion has been referred to the undersigned for a report and

recommendation (Dkt. No. 234).  *See* 28 U.S.C. § 636(b)(1)(B).  The court heard argument on

the motion (and others brought by other defendants) on November 1, 2019.   For the reasons set

forth below the court recommends that the PRB Defendants' motion be GRANTED.

II.    BACKGROUND

Plaintiff was terminated from his employment as a Pittsfield police officer on March 21,

1991 (Compl. ¶ 17).  He filed suit alleging racial discrimination by the City of Pittsfield ("the

City"), which settled in September 1993 (Compl. ¶¶ 20-21).  The settlement "called for a

payment of $81,000 and [Plaintiff's] reinstatement to the Pittsfield police department."  *Powell v.*

*City of Pittsfield*, 221 F. Supp. 2d 119, 121 (D. Mass. 2002).  Plaintiff was finally reinstated as a

Pittsfield police officer effective May 20, 1996 (Compl. ¶ 23).  In 1997, Plaintiff filed suit

against the City and two of its officials, Edward Reilly and Kathleen Alexander, alleging

retaliation, disability discrimination, and contract violation for failure and refusal to honor the

terms of the 1993 settlement agreement.  *Id.*  Following a bench trial, the court found the

defendants liable to Plaintiff and awarded damages for lost wages and emotional distress and

attorneys' fees.

This suit includes as defendants the Pittsfield Retirement Board and, in their official and

individual capacities, Karen Lancto ("Lancto"), PRB administrator; Edward M. Reilly

("Reilly"),[1] former Mayor of Pittsfield; and Matthew Kerwood ("Kerwood"), City Finance

Director and Treasurer and *ex officio* member of the PRB, collectively called the PRB

Defendants.  To the extent that Plaintiff asserts additional claims against Reilly and Kerwood in

other capacities as City employees, this report and recommendation does not address those

claims (*see* Dkt. No. 162 at 2 n.3).

Stripped of conclusory statements and allegations that are not relevant to Plaintiff's

claims against these defendants, the Complaint, along with the exhibits attached to the Plaintiff's

initial complaint, filed on September 6, 2019, and by agreement of the parties incorporated by

reference into the operative Complaint,[2] allege that the PRB Defendants injured Plaintiff in three

---

[1]  A suggestion of death was filed with the court on April 3, 2019, notifying the court of Reilly's death (Dkt. No. 155).

[2]  On April 2, 2019, Judge Mastroianni granted Plaintiff's motion for leave to file an amended complaint (Dkt. No. 136) and cautioned that the amended complaint would "'supersede[]' both the original and supplemental complaint" (Dkt. No. 152 (quoting *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008)).  On April 8, 2019, Plaintiff filed his amended complaint (Dkt. No. 158), which included some exhibits and referenced many exhibits that were filed with the original complaint (Dkt. No. 1).  At the hearing on the referred motions held on November 1,

ways.  First, Plaintiff alleges that when he was reinstated as a Pittsfield police officer on May 20,

1996, the PRB did not credit his pension account with the five years and two months between

1991 and 1996 that he lost as an active employee after the March 1991 termination of his

employment, depriving him of time he should have accrued and the increased pension to which

he would have been entitled (Compl. ¶¶ 23, 32, 61).  Second, when Plaintiff divorced his second

wife in 2014, the divorce judgment included a provision that fifty percent of Plaintiff's pension

from the City would go to Plaintiff's second wife (Exh. C 5, Dkt. No. 1-1 at 50).  In 2016, the

PRB accepted and implemented a domestic relations order ("DRO") that awarded a portion of

Plaintiff's pension to his second wife (Exh. C 4, Dkt. No. 1-1 at 48).[3]  Plaintiff, who refused to

sign the DRO, alleges that Lancto approved the DRO as part of a conspiracy to defraud Plaintiff

out of half of his monthly pension (Compl. ¶ 32 at 14).

Finally, Plaintiff asserts injuries arising from a letter Kerwood sent to all retired Pittsfield

police officers, including Plaintiff, who were performing outside detail work for the City,

notifying them that, instead of being paid as third party vendors, they would henceforth be paid

through the City's payroll system, making their earnings subject to certain tax deductions.  The

letter further reminded Plaintiff that "as a public sector retiree in Massachusetts [he was] subject

to hour and earning limitations on any public sector work [he] perform[ed] in Massachusetts"

(Exh. L1, Dkt. No. 1-1 at 96) and that exceeding the hour and earning allotments would result in

a reduction of his pension payment (Compl. ¶ 81 at 34-36).  On February 15, 2019, Plaintiff

---

2019 (Dkt. No. 344), all parties agreed that the exhibits attached to the first complaint were
incorporated by reference.

[3]  The DRO initially sent to the PRB by counsel for Plaintiff's former second wife was rejected
by the PRB as in conflict with an earlier DRO, endorsed in 2009 by the Massachusetts Family
and Probate Court, arising from Plaintiff's first divorce (Exh. C 3, Dkt. No. 1-1 at 45-46).
Because the provisions of the proposed 2016 DRO could not be reconciled with the 2009 DRO,
the PRB directed counsel to submit a revised DRO, which counsel did, albeit without Plaintiff's
signature (Exhs. C 3, Dkt. No. 1-1 at 45-45; C 5, Dkt. No. 1-1 at 50-51).

received a letter stating that he owed the PRB over $8,000 for exceeding the earnings limit (Compl. ¶¶ 107-08 at 54-55).

On the basis of these allegations, Plaintiff's Complaint asserts claims against Lancto, Reilly, and Kerwood under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H and I (Count II); for conspiracy in violation of 42 U.S.C. § 1985 ("§ 1985") (Count III); for deprivation of civil rights in violation of 42 U.S.C. § 1983 ("§ 1983") (Count IV); for intentional infliction of emotional distress (Count V); and, against all PRB Defendants, for violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e (Count VIII).

III.    DISCUSSION

A.  Standard of Review

To survive a motion to dismiss, a "complaint must contain enough factual material to raise a right to relief above the speculative level … and state a facially plausible legal claim." *Guerra-Delgado v. Popular, Inc*., 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true all well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's favor."  *Id*. (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)).  To assess whether a complaint meets this standard, courts employ a two-step approach.  *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  *A.G. ex. rel. Maddox v. Elsevier, Inc*., 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted). Second, [the court] "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108.  "[T]he complaint should at least set forth minimal facts as to who did what to whom, when, where and why," and "courts should … 'eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets.'"  *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)).  "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)), but a *pro se* complaint should be dismissed if "a lenient construction demonstrates beyond doubt that the plaintiff can prove no set of facts to support her claim for relief," *Rockwell v. Cape Cod Hosp*., 26 F.3d 254, 260 (1st Cir. 1994).

B.  Claims Against the PRB Defendants

    1.  Claims Against Reilly

As an initial matter, the court recommends that the claims against Reilly be dismissed pursuant to Fed. R. Civ. P. 25(a), which requires dismissal of a party after death if no motion to substitute is made within 90 days after service of a statement notifying a plaintiff of the death.  "*Pro* se parties, like all parties, must 'comply with the applicable procedural and substantive rules of law ….'"  *Brown v. Dep't of Veterans Affairs*, 451 F. Supp. 2d 273, 277 (D. Mass. 2006) (quoting *Overton v. Torruella*, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).  The court was notified of Reilly's death in April 2019 (Dkt. No. 155), the ninety-day period has long expired, and no motion to substitute his executor or administrator has been made, nor has Plaintiff requested an extension of time to do so.  The undersigned recommends dismissal of all claims against Reilly on this basis.

The court now turns to Plaintiff's claims against the remaining PRB Defendants.  Lancto and Kerwood argue that Counts II (MCRA), III (§ 1985), and IV (§ 1983) should be dismissed as to them on grounds of qualified immunity, and the PRB Defendants argue that all claims against them should be dismissed for failure to state a claim upon which relief can be granted.

    2.  <u>Qualified Immunity</u>

Qualified immunity "shields Government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  "The qualified immunity inquiry proceeds with a now-familiar two-part test: '(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation.'"  *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019) (quoting *Rocket Learning, Inc. v. Rivera-Sánchez*, 715 F.3d 1, 8 (1st Cir. 2013)).  If the answer to either inquiry is negative, then qualified immunity applies and protects the government official from suit.  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) ("Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Mullenix v. Luna,* 136 S. Ct. 305, 308 (2015)); *see also Duarte v. Healy*, 537 N.E.2d 1230, 1232 (1989) (the standard of immunity for public officials developed under federal law for § 1983 actions also applies to actions under the MCRA).

Part two of the qualified immunity test has two aspects.

"One aspect of the analysis focuses on the clarity of the law at the time of the alleged civil rights violation." *Id.*  Thus, in order "[t]o overcome qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citation omitted). The second aspect "focuses more concretely on the facts of the particular case." *Id.*  Thus, a court must assess "whether a reasonable defendant

would have understood that his conduct violated the plaintiffs' constitutional rights." *Id.* Importantly, "this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (quotation marks and citation omitted). In short, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id.*

*Cosenza v. City of Worcester, Mass.*, 355 F. Supp. 3d 81, 94–95 (D. Mass. 2019) (quoting

*Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009)). "The Supreme Court has held that

when evaluating an asserted qualified immunity defense, a court may begin by examining

whether a reasonable [official] in Defendants' position would have believed his or her conduct

would violate the asserted constitutional right." *Franza v. Stanford*, No. 18-CV-10892 (KMK),

2019 WL 6729258, at *7 (S.D.N.Y. Dec. 11, 2019), *reconsideration denied*, 2020 WL 85228

(S.D.N.Y. Jan. 3, 2020) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *see Rocket*

*Learning, Inc.*, 715 F.3d at 9 ("Where the court can 'quickly and easily decide that there was no

violation of clearly established law,' it need not 'turn[ ] to the more difficult question [of]

whether the relevant facts make out a constitutional question at all.'" (quoting *Pearson*, 555 U.S.

at 239)).

Counts II, III, and IV are premised on Plaintiff's contention that Lancto and Kerwood

acted illegally by (1) failing to credit Plaintiff with the five years and two months of service he

lost when he was terminated from his employment as a Pittsfield police officer; (2) complying

with an order from the Massachusetts Family and Probate Court requiring deductions from his

pension for DRO payments to his second wife; and (3) informing him that his pension payments

would or could be reduced because he had earned over the statutory maximum for outside detail

work for which he was paid by the City.

As to the first of these contentions, Plaintiff alleges that "[his] union representative at the

time, patrolman Michael Grady worked out a deal that [he] would only get back ½ of [his] sick

7

time back with no vacation time back and again no retirement time" (Compl. ¶ 23; Exh. B, Dkt. No. 1-1 at 39).  Plaintiff signed the memorandum of understanding reflecting these terms (Exh. B, Dkt. No. 1-1 at 39).  He further alleges that the City subsequently rewarded patrolman Grady for his "questionable behavior and actions which clearly appears to have been to assist the Pittsfield Police Department and the City of Pittsfield in violation of his duties as the Union President" (Compl. ¶ 23).  "A right is considered clearly established if viewed objectively 'at the time the defendant acted, he was on clear notice that what he was doing was unconstitutional.'" *Decotiis v. Whittemore*, 635 F.3d 22, 37 (1st Cir. 2011) (quoting *Costa–Urena v. Segarra,* 590 F.3d 18, 29 (1st Cir.2009)).  Plaintiff has cited no case, and the court is aware of none, that holds or suggests that officials of a state retirement board violate an individual's constitutional rights by acting in compliance with an agreement negotiated by a union representative establishing an employee's years of service for purposes of calculating retirement benefits.[4]

To the extent that Plaintiff alleges that Lancto and/or Kerwood owed him – and violated – a fiduciary duty, this allegation does not support a claim for a deprivation of constitutional rights.  "Allegations that a breach of fiduciary duty occurred under state law are insufficient to support a section 1983 claim, which must allege a violation of the plaintiff's rights under federal law." *Hernandez v. Cate*, No. EDCV11-00627 R(AJW), 2014 WL 6473769, at *2 (C.D. Cal.

---

[4]  Plaintiff's claim for pension benefits for these five years and two months would also be barred by res judicata.  Plaintiff settled his 1991 wrongful termination lawsuit for $81,000.  In his 1997 lawsuit, he recovered damages for lost compensation from February 1, 1994, through the date of his reinstatement.  At trial, he "was unable to provide documentation or clear testimony about his damages from lost benefits or retirement earnings, so the court [did] not supplement [lost wages] to reflect any such losses." *Powell*, 221 F. Supp. 2d at 151.  "The First Circuit has described *res judicata* as a doctrine whereby an issue between identical parties that has been subject to a final judgment, or that should have been raised in the prior action, may not be litigated anew in the future." *Martinez v. P.R.*, 594 F. Supp. 2d 181, 185 (D.P.R. 2009); *see also Cichocki v. Mass. Bay Cmty. Coll.*, 199 F. Supp. 3d 431, 439 (D. Mass. 2016).  Plaintiff's claims for retirement benefits were, or should have been, raised in the prior action and cannot properly be sought from the City's retirement board in this action.

Oct. 16, 2014), *report and recommendation adopted*, No. EDCV11-00627 R(AJW), 2014 WL

6606901 (C.D. Cal. Nov. 18, 2014); *Smalley v. S.C. Elec. Coops./Aiken Cty. Elec.*, No. 1:15-CV-

04033-JFA-KDW, 2015 WL 10097523, at *3 (D.S.C. Oct. 29, 2015), *report and*

*recommendation adopted*, 2016 WL 613887 (D.S.C. Feb. 16, 2016) ("a claim of 'breach of

fiduciary duty' is a state-law-based claim, not a federal claim").

Plaintiff's claims against Lancto and Kerwood based on deductions from his pension in

reliance on a state court DRO are also unavailing.  There is no doubt that Plaintiff believes that

he was treated unfairly in the course of the divorce proceedings involving his second wife.  *See*

*generally, Powell v. Commonwealth of Mass.*, Case No. 16-cv-30004-MGM, 2016 WL 7115887

(D. Mass. Sept. 20, 2016), *report and recommendation adopted*, 2016 WL 7118260 (D. Mass.

Dec. 6, 2016).  Nonetheless, what Plaintiff's exhibits show is that the PRB implemented a DRO

approved by the Massachusetts Family and Probate Court as part of Plaintiff's divorce settlement

with his second wife (Exhs. C 2-C 5, Dkt. No. 1-1 at 42-51).  Plaintiff's bald assertion that

Lancto conspired with attorney Michael Sacco to defraud Plaintiff out of part of his pension is

"the sort of 'unadorned, the-defendant-unlawfully-harmed-me accusation[s]' that both [the First

Circuit] and the Supreme Court have found insufficient."  *Feliciano-Hernandez v. Pereira-*

*Castillo*, 663 F.3d 527, 534 (1st Cir. 2011) (quoting *Iqbal,* 556 U.S. at 678).  Members of a city

retirement board are entitled to qualified immunity from a constitutional claim when that claim is

based on their implementation of a duly presented DRO that appeared (and appears) to comply

with Massachusetts law.  *See* Mass. Gen. Laws ch. 32, § 19 (authorizing a pension or retirement

allowance to be assigned as part of an order regarding a division of marital property); *Early v.*

*State Bd. of Ret.*, 652 N.E.2d 598, 599 (Mass. 1995) (recognizing that the pension benefits of a

public employee are properly included as divisible marital property); *see also Contributory Ret.*

*Bd. of Arlington v. Mangiacotti*, 547 N.E.2d 21, 22 (Mass. 1989) (concluding that a court order assigning interest in a portion of a police officer's pension to his divorced wife on his retirement was authorized by statute).  Plaintiff has pointed to no authority, and the court is aware of none, that suggests that compliance with these state-law principles is a violation of any federal constitutional or statutory right.  *See, e.g., Eves v. LePage*, 927 F.3d 575, 583 (1st Cir. 2019) (a state official is entitled to qualified immunity unless clearly established law shows that the official's actions were in violation of federal statutory or constitutional law).

Similarly, Lancto and Kerwood are entitled to qualified immunity for Plaintiff's claim that he was unconstitutionally deprived of property by a February 15, 2019 letter from attorney Michael Sacco notifying Plaintiff that he owed the PRB over $8,000 for earnings beyond the statutory limit (Compl. ¶ 107).  Plaintiff's exhibits show that here too the PRB Defendants could reasonably believe that their actions were in compliance with their obligations under state law and not in violation of any of Plaintiff's federal constitutional or statutory rights.  As the Public Employee Retirement Administration Commission explained to Plaintiff, "[a]ll Massachusetts public pension retirees who are working post-retirement in the public sector in Massachusetts, including those working paid police details, are subject to post-retirement limitations on their earnings" (Exh. K, Dkt. No. 1-2 at 88).  Not content with the answer he received from the Public Employee Retirement Administration Commission, Plaintiff apparently continues to assert that his police detail payments were not subject to the public employment limitation he acknowledged existed when he retired (Exh. L 1, Dkt. No. 1-1 at 96-98) because third parties, not the City, paid for the police details.  The Massachusetts Division of Administrative Law Appeals rejected this precise contention in a case brought by a retired City of Melrose police officer.  *See Pike v. Melrose Ret. Bd.*, 2008 WL 7557373 (Ma. DALA Apr. 14, 2008).  In the

*Pike* case, the Melrose Retirement Board informed retired Melrose police officer John Pike that there was a limit on the amount of money he could make from public employment after he retired. *Id.* at *1. When Pike was later informed that he had exceeded the statutory limit on public employment, he contended that the police details should not be subject to the statutory earnings limit because the details were paid for by third party vendors. *Id.* at *2. This argument was rejected in the *Pike* decision. *Id.* at *3 ("[T]he fact that payments made to the Petitioner were derived by or through private entities does not eliminate the statutory restrictions imposed by G.L. c. 32 § 91(a-c)."). Given this legal authority, which is directly on point, Kerwood and Lancto could reasonably believe that notifying Plaintiff of an overpayment was not in violation of Plaintiff's federally protected rights. *See Decotiis*, 635 F.3d at 37. Plaintiff's generalized allegations that the PRB Defendants were part of a conspiracy to deprive Plaintiff of federally protected rights are insufficient to state a claim for the violation of a clearly established right. *See Franza*, 2019 WL 6729258, at *8.

Because the Complaint does not allege that the PRB officials violated any of Plaintiff's clearly established constitutional rights, Lancto and Kerwood are entitled to qualified immunity. Accordingly, the court recommends dismissal of Counts II, III, and IV against Lancto and against Kerwood in his capacity as a PRB official.[5]

---

[5] The court has supplemental jurisdiction over Plaintiff's state law claims, including his claims under the MCRA, pursuant to 28 U.S.C. § 1367. If the presiding District Judge accepts the recommendation to dismiss Plaintiff's federal claims in Counts III and IV on the grounds of qualified immunity, the judge may choose to dismiss the MCRA claim (Count II) with prejudice. In the recent case of *Robinson v. Town of Marshfield*, -- F.3d --, No. 19-1155, 2020 WL 746543, at *8 (1st Cir. Feb. 14, 2020), the First Circuit stated that notwithstanding that the federal-law claims have been dismissed, a district court may nonetheless rule on state-law claims where no substantial question of state law is presented and the court's ruling on the federal-law claims applies with equal force to the state-law claims. In these circumstances, addressing the state law claims may "best serve[] 'the interests of fairness, judicial economy, convenience and comity.'" *Id.* (quoting *Desjardins v. Willard*, 777 F.3d 43, 45-46 (1st Cir. 2015)).

3.   Failure to State a Claim – Federal Law Claims

In the alternative, for the following reasons, the court recommends that Plaintiff's claims be dismissed as to the PRB Defendants pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

a.   Count III – § 1985

To state a claim for a conspiracy to deprive Plaintiff of his constitutional rights pursuant to 42 U.S.C. § 1985(2), his claim must contain four elements: "(1) a conspiracy between two or more persons, (2) to impede, hinder, obstruct, or defeat, in any manner, the due course of justice in any State, (3) with invidiously discriminatory animus, (4) which results in injury to plaintiff." *Bolduc v. Town of Webster*, 629 F. Supp. 2d 132, 150–51 (D. Mass. 2009) (citing *Greco v. Fitzpatrick,* 1995 WL 373108, at *1 (1st Cir. June 23, 1995)).  To state a claim for a conspiracy to deprive Plaintiff of his constitutional rights pursuant to 42 U.S.C. § 1985(3), his claim "must contain four elements. First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right."  *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008) (citing *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996)).  As with a claim brought under § 1985(2), a § 1985(3) claim also requires that "the conspiratorial conduct of which [Plaintiff] complains [be] propelled by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"  *Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 178 (D. Mass. 2013) (quoting *Aulson*, 83 F.3d at 3) (internal quotations omitted).

Plaintiff has not specified under which subsection of § 1985 he is proceeding.  Viewing the allegations in the light most favorable to Plaintiff, and drawing all reasonable inferences in

his favor, Plaintiff has failed to state a claim for conspiracy against the PRB Defendants under either subsection.  The Complaint alleges baldly that the PRB Defendants conspired with others to defraud him of part of his pension (Compl. ¶ 32) and joined in the "constant harassment and retaliation" allegedly directed towards Plaintiff under each "Mayoral Administration[] from 1988, until [he] retired on October 1, 2016" (Compl. ¶ 6).  But Plaintiff has "not alleged any facts to show a conspiracy" among the PRB Defendants or between the PRB Defendants and other defendants.  *Burbank v. Town of Hubbardston*, 146 F. Supp. 3d 402, 405 (D. Mass. 2015). "Although a *pro se* complaint is construed liberally, [when Plaintiff's] allegations are no more than 'bald assertions' [the Complaint] cannot survive a motion to dismiss."  *Baxter v. Conte*, 190 F. Supp. 2d 123, 128 (D. Mass. 2001).  "[S]ubsection 1985(2) applies to 'conspiracies,' not to individual actions."  *Irizarry v. Quiros*, 722 F.2d 869, 872 (1st Cir. 1983).  Additionally, "[Plaintiff's] conclusory statements that the [PRB Defendants are participating in] a vendetta against him fail to allege the essential elements of a § 1985(3) claim."  *Id.* (citing *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34-35 (1st Cir. 1996)).  Accordingly, the undersigned recommends dismissal of Count III against the PRB Defendants for failure to state a claim.

b.  Count IV – § 1983

"[S]ection 1983 authorizes suits against 'persons' but 'neither a State nor its officials acting in their official capacities are "persons" under § 1983.'"  *Taite v. Bridgewater State Univ.*, 236 F. Supp. 3d 466, 481 (D. Mass. 2017) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)).  Accordingly, Plaintiff's §1983 claims should be dismissed as to Lancto and Kerwood in their official capacities.

"To state a claim under Section 1983, a plaintiff must show [1] that the challenged conduct was committed by a person acting under color of state law and [2] that the conduct

worked a deprivation of rights, privileges, or immunities secured by the Constitution or federal law." *Diaz v. Devlin*, 229 F. Supp. 3d 101, 109 (D. Mass. 2017) (citing 42 U.S.C. § 1983; *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)).  There is no dispute that Lancto and Kerwood acted under color of state law (Dkt. No. 162-1 at 13).  "The [next] step in the analysis of a § 1983 claim 'is to identify the specific constitutional right allegedly infringed.'"  *Murphy v. Baker*, No. CV 15-30187-MGM, 2017 WL 2350246, at *2 (D. Mass. May 4, 2017), *report and recommendation adopted*, 2017 WL 2363114 (D. Mass. May 30, 2017) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

The Complaint alleges violations of Plaintiff's rights to free speech, due process, and to petition and seek redress from "Government abuse" as bases for his § 1983 claims (Compl. ¶ 120).  Plaintiff has not identified the factual bases for the alleged deprivation of these rights.  Although he has used numbered paragraphs, the complaint is essentially a narrative that does not contain a brief statement of his claims with respect to each defendant.  Thus, "it is difficult to cull out the relevant information forming the basis of liability."  *Baams v. Coakley*, Civil Action No. 13-13115-DJC, 2013 WL 6815014, at *3 (D. Mass. Dec. 23, 2013).  The court has done its best to draw all reasonable inferences from the Complaint in Plaintiff's favor as to the rights that Plaintiff asserts were violated.

     i.    First Amendment

"The Supreme Court has … identified 'the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation – and their ideas from suppression – at the hand of an intolerant society.'"  *Powell v. Alexander*, 391 F.3d 1, 16 (1st Cir. 2004) (quoting *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357 (1995)).  "[I]n the public employment context, … under the First Amendment, there is both a free speech aspect

and a right to petition aspect to claims of retaliation against the filing of lawsuits." *Rosado-Quinones v. Toledo*, 528 F.3d 1, 6 (1st Cir. 2008); *Fabiano v. Hopkins*, 245 F. Supp. 2d 305, 310 (D. Mass.), *aff'd*, 352 F.3d 447 (1st Cir. 2003) ("Generally speaking, the First Amendment guarantees the fundamental right to file a lawsuit, as well as to engage in constitutionally protected speech." (citing *Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731, 741 (1983))). "Claims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." *Powell*, 391 F.3d at 16.

"[T]o prevail on a § 1983 claim of retaliation for First Amendment activity, a plaintiff must show: (1) that his conduct was constitutionally protected, and (2) that this conduct was a substantial factor or a motivating factor for the defendant's retaliatory decision." *Rosaura Bldg. Corp. v. Municipality of Mayaguez*, 778 F.3d 55, 66 (1st Cir. 2015) (citing *Pierce v. Cotuit Fire Dist.,* 741 F.3d 295, 302–03 (1st Cir.2014)). To make out a claim of a violation of the right to petition, "a plaintiff must allege that the defendant was responsible for or took actions that hindered the plaintiff's efforts to pursue a legal claim." *Muldoon v. Dep't of Correction*, No. 15-CV-13892-DJC, 2017 WL 506250, at *4 (D. Mass. Feb. 7, 2017) (citing *Boivin v. Black*, 225 F.3d 36, 43 n.5 (1st Cir. 2000)). To make out a claim for violation of his right to free speech, Plaintiff must "establish that [he] was speaking 'as a citizen on a matter of public concern'" and that his First Amendment right outweighed the government's interest, here as Plaintiff's employer or former employer. *Rosaura Bldg. Corp.*, 778 F.3d at 66-67 (quoting *Díaz–Bigio v. Santini,* 652 F.3d 45, 51 (1st Cir. 2011)). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Myers*, 461 U.S.

138, 146 (1983).  Finally, for both the free speech and right to petition claims, "in order to meet

the motivation prong, a plaintiff must produce 'sufficient direct or circumstantial evidence' that

his constitutionally protected conduct was the driving factor that caused the retaliation."

*Rosaura Bldg. Corp.*, 778 F.3d at 67 (quoting *Díaz–Bigio,* 652 F.3d at 51).

First, Plaintiff has not alleged that he engaged in speech that would be constitutionally

protected as to his claims against the PRB Defendants.  He appears to allege retaliation for his

filing of an MCAD complaint, which claimed bias and retaliation in decisions relating to his

injured-on-duty status and renewal of his license to carry a firearm.  These allegations do not

appear connected to the PRB Defendants and they seem to be directed "*solely* [at] resolv[ing]

Plaintiff's personal concerns."  *Vickowski v. Hukowicz*, 201 F. Supp. 2d 195, 207 (D. Mass.

2002).  While it is clear from the Complaint that Plaintiff has consistently protested the decisions

made against his interest – not receiving the retirement credit he expected, splitting his pension

among his ex-wives pursuant to DROs, and being informed that his pension payments would be

reduced because his detail work earnings exceeded the statutory maximum – Plaintiff does not

allege how the PRB Defendants "hindered the plaintiff's efforts to pursue a legal claim."

*Muldoon*, 2017 WL 506250, at *4.  *See Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649, 660

(1st Cir. 1997) ("[W]hile there is a constitutional right to court access, there is no complementary

constitutional right to receive or be eligible for a particular form of relief.").

Second, assuming for sake of argument that Plaintiff has adequately alleged speech on a

matter of public concern, *see Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 141–42

(1st Cir. 2016) (assuming that "the plaintiffs' petitioning and speech were constitutionally

protected" where it was clear that the plaintiffs could not "satisfy the second prong of the test –

establish[ing] a causal connection between the protected conduct and the alleged retaliatory

response"), Plaintiff's § 1983 claim for retaliation for the exercise of his First Amendment rights fails because, as is set forth above, his Complaint does not "support a fact-based inference" that the actions taken by the PRB Defendants were anything other than routine and legally authorized actions taken as part of their responsibilities as PRB officials.  *See Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (affirming dismissal of the plaintiff's First Amendment retaliation claim for failure to state a claim because a court does not credit "bald assertions, unsupportable conclusions, and opprobrious epithets" as adequately pleading that the adverse action taken against the plaintiff was undertaken with a retaliatory motive).  Here, Plaintiff has not credibly alleged, and the court cannot reasonably infer, that the failure to credit Plaintiff's retirement account with the five years and two months he lost when he was dismissed from his employment with the City was causally connected to complaints he raised about matters outside of the jurisdiction of the PRB, nor can the court draw a reasonable inference that implementing the DRO or informing Plaintiff an overpayment of pension benefits was in retaliation for Plaintiff's speaking out or filing with MCAD.  *See Najas Realty, LLC,* 821 F.3d at 143 (affirming judgment on the pleadings where the allegations led to the conclusion that the public official the plaintiffs alleged had retaliated was doing nothing more than fulfilling his duty).

      ii.     Due Process

"To establish a procedural due process claim under 42 U.S.C. § 1983, Plaintiff[] 'must identify a protected liberty or property interest ... and allege that the defendants, acting under color of state law, deprived him of that ... interest without constitutionally adequate process.'" *I.U. by Roy v. Pioneer Valley Chinese Immersion Charter Sch.*, No. 14-CV-12709-MAP, 2016 WL 8679257, at *7 (D. Mass. June 10, 2016), *report and recommendation adopted*, 2016 WL

4792182 (D. Mass. Sept. 14, 2016) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006)).  "[I]t is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Gedeon v. City of Springfield*, No. 16-CV-30054-MGM, 2017 WL 4212334, at *5 (D. Mass. Feb. 24, 2017) (quoting *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010)).

Plaintiff does not allege that the PRB Defendants failed or refused to provide him with notice or an opportunity to be heard.  *See id.* ("… Plaintiff's complaint contains no allegations that the City failed or refused to provide him with notice or an opportunity to be heard.").  "The amended complaint is devoid of any information about the process afforded to the [Plaintiff] at the time any adverse actions were taken [by the PRB Defendants]."  *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006).  "Without this rudimentary factual underpinning, no cognizable due process claim can be culled from the meanderings of the amended complaint."  *Id.*

To the extent that Plaintiff seeks to assert a substantive due process violation, his allegations also fail to make out such a claim.  Assuming that Plaintiff has alleged the deprivation of a property right in reductions to his state pension, "[t]he touchstone of [substantive] due process is protection of the individual against arbitrary action of government."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).  It is well-settled that "'only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  *Id.* at 846 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)).  "'Executive branch action that sinks to the depths of shocking the contemporary conscience is much more likely to find its roots in 'conduct intended to injure in some way unjustifiable by any government interest.'"  *Pimentel v. City of Methuen*, 323 F. Supp. 3d 255, 268 (D. Mass. 2018) (quoting

*Depoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005)).  None of the allegations in Plaintiff's

Complaint, which alludes to conduct that a state official could reasonably believe was required

under state law, constitutes conduct that could be reasonably characterized as "'violations of

personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice

or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and

inhumane abuse of official power literally shocking to the conscience.'"  *Harron v. Town of

Franklin*, 660 F.3d 531, 536 (1st Cir. 2011) (quoting *González–Fuentes v. Molina*, 607 F.3d 864,

881 (1st Cir. 2010)).  The PRB Defendants have a legitimate government interest in running the

PRB in compliance with the requirements of state law as they reasonably understood those

requirements.  Accordingly, the court recommends dismissal of Count IV against Lancto and

against Kerwood in his capacity as a PRB member.

       c.  Count VIII – Title VII

"[T]here is no individual employee liability under Title VII."  *Fantini v. Salem State

Coll.*, 557 F.3d 22, 30 (1st Cir. 2009).  The court recommends dismissal of the Title VII

retaliation claims against Lancto and Kerwood on this basis.  Additionally, Title VII "'addresses

the conduct of employers only.'"  *Id.* (quoting *Powell v. Yellow Book U.S.A., Inc.,* 445 F.3d

1074, 1079 (8th Cir. 2006)).  Plaintiff was not a PRB employee.  For this reason, the Title VII

claim against the PRB should also be dismissed.

       4.  <u>Failure to State a Claim - State-law Claims</u>

       a.  Supplemental Jurisdiction

The termination of Plaintiff's federal claims sets the stage for the court's exercise of

informed discretion to decline to adjudicate the remaining state law claims for intentional

infliction of emotional distress and violation of the MCRA.  "Needless decisions of state law

should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" *Robinson*, 2020 WL 746543, at *8 (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966)).  There are no analogues to these state-law claims in the federal-law claims that are addressed above.  In these circumstances, the First Circuit has directed that the better course is dismissal of the state-law claims without prejudice.  If this court has declined to dismiss the MCRA claim on the grounds of qualified immunity, the undersigned recommends that the court decline to exercise supplemental jurisdiction over the intentional infliction of emotional distress and MCRA claims and dismiss them without prejudice.  *See id.* at 24-25.  However, the undersigned proceeds to analyze the state law claims in the event the court decides to exercise supplemental jurisdiction.

> b.  Count II – MCRA

To make out a claim under the MCRA, Plaintiff must "'prove that (1) the exercise or enjoyment of some [federal or state] constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion.'"  *Doe v. Amherst Coll.*, 238 F. Supp. 195, 224–25 (D. Mass. 2017) (quoting *Glovsky v. Roche Bros. Supermarkets, Inc.*, 17 N.E.3d 1026, 1035 (Mass. 2014)).  "The Legislature intended that even a direct deprivation of a plaintiff's secured rights would not be actionable under the act unless it were accomplished by means of one of these three constraining elements."  *Buster v. George W. Moore, Inc.*, 783 N.E.2d 399, 409 (Mass. 2003).  Where Plaintiff has not adequately alleged threats, intimidation, or coercion by the PRB Defendants, the MCRA claims should be dismissed.  *See Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 88 (D. Mass. 2012).

"Massachusetts courts apply an objective 'reasonable person' standard to determine whether conduct constituted threats, intimidation, or coercion." *Spencer v. Roche*, 755 F. Supp. 2d 250, 265 (D. Mass. 2010).

> "A 'threat' means 'the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.'" *Goddard[v. Kelley], 629 F. Supp. 2d [115, 128 (D. Mass. 2009)]* (quoting *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 631 N.E.2d 985, 990 (1994)). "'Intimidation' means putting a person in fear for the purpose of compelling or deterring his or her conduct." *Id.* "'Coercion' means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do." *Id.*

*Damon v. Hukowicz*, 964 F. Supp. 2d 120, 149 (D. Mass. 2013). "[E]nforcement of the law does not constitute threats, intimidation or coercion." *Walsh v. Town of Lakeville*, 431 F. Supp. 2d 134, 150 (D. Mass. 2006) (citing *Sena v. Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994)).

Viewed in light of these principles, Plaintiff's complaint fails to allege acts by the PRB Defendants that could reasonably be considered to meet the criteria for threats, intimidation, or coercion. "The elements of 'threats' and 'intimidation' under the MCRA usually require actual or threatened physical force." *Spencer*, 755 F. Supp. 2d at 265. Plaintiff has not alleged any act by any PRB defendant that approached a threat of physical force. Indeed, a fair reading of the Complaint and its exhibits shows that most, if not all, of Plaintiff's communications with the PRB Defendants have been in writing. None of the PRB letters to Plaintiff contain any threat or hint of a threat of physical force directed at Plaintiff. "Coercion … is a broader category that may rely on physical, moral, or economic coercion." *Id.* The exception for claims based on non-physical coercion, however, remains narrow. *See Thomas v. Harrington*, 909 F.3d 483, 492 (1st Cir. 2018) ("It is rare for a MCRA claim to involve no physical threat of harm."); *Mason v. Cent. Mass. Transit Mgmt./Worcester Reg'l Transit Auth.*, 394 F. Supp. 3d 166, 174 (D. Mass. 2019) (citing *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 519 (1st Cir. 2009). Plaintiff's claims

against the PRB Defendants are premised on acts that, as set forth above, are authorized or required under state law. These acts cannot be a basis of liability under the MCRA. *See Walsh*, 431 F. Supp. 2d at 150–51; *Sena*, 629 N.E.2d at 993-94.

      c.   Count V – Intentional Infliction of Emotional Distress

The bar for sustaining a claim for the intentional infliction of emotional distress is also "very high." *Polay v. McMahon*, 10 N.E.3d 1122, 1128 (Mass. 2014) (citing *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996)). There are four elements to sustain this claim. Plaintiff must show:

> (1) that the defendant "intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct[,]" (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community[,]" (3) that the defendant's actions caused the plaintiff distress, and (4) that the plaintiff's emotional distress was severe.

*Wilmot v. Tracey*, 938 F. Supp. 2d 116, 144 (D. Mass. 2013) (quoting *Howell v. Enter. Publ'g Co., LLC,* 920 N.E.2d 1, 28 (Mass. 2010) (citations omitted)).

> Liability for "extreme and outrageous" conduct "cannot be predicated upon 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' nor even is it enough 'that the defendant ... has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort'; rather, '[l]iability [may be] found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"

*Roman v. Trs. of Tufts Coll.*, 964 N.E.2d 331, 341 (2012) (quoting *Foley v. Polaroid Corp.,* 508 N.E.2d 72, 82 (1987)). "In addition, '[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'" *Hayes v. Mirick*, 378 F. Supp. 3d 109, 117 (D. Mass. 2019) (quoting *Caputo v. Bos. Edison, Co.*, 924 F.2d 11, 14 (1st Cir. 1991)).

Putting "'as harsh a face on [the defendants' actions]'" as the alleged facts would reasonably allow, Plaintiff has alleged nothing more than that the PRB Defendants took actions they could reasonably believe were required or permitted by state law, albeit actions with which Plaintiff vociferously disagreed. *Roman*, 964 N.E.2d at 341-42 (quoting *Foley*, 508 N.E.2d at 72). These kinds of allegations do not rise to the level of "extreme and outrageous" conduct that warrants the imposition of liability. For this reason, the court recommends dismissal of count V against Lancto and against Kerwood in his capacity as a PRB member.

IV.     CONCLUSION

For the foregoing reasons, the undersigned recommends that the motion to dismiss by the PRB Defendants be GRANTED as to Counts III, IV, and VIII and that the court decline to exercise supplemental jurisdiction over the remaining state-law claims in Counts II and V that these claims be dismissed without prejudice. In the alternative, the court recommends that the motion to dismiss by the PRB Defendants be GRANTED in its entirety, and that all claims against the PRB, Reilly, and Lancto be dismissed with prejudice and that claims as to Kerwood in his capacity as a PRB member be dismissed with prejudice.[6]

---

[6] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of service of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Dated: February 27, 2020                         /s/ Katherine A. Robertson
                                                 KATHERINE A. ROBERTSON
                                                 UNITED STATES MAGISTRATE JUDGE