UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WALTER J. POWELL, )<br>)<br>    Plaintiff, )<br>)<br>         v. )<br>)<br>KATHLEEN G. ALEXANDER, et al., )<br>    Defendants. )<br>) | Case No. 18-cv-30146-MGM |

REPORT AND RECOMMENDATION CONCERNING
DEFENDANT KATHLEEN G. ALEXANDER'S MOTION TO DISMISS
(Dkt. No. 163)

ROBERTSON, U.S.M.J.

I.  INTRODUCTION

Currently before the court is a motion to dismiss by Kathleen G. Alexander ("Alexander") seeking dismissal of the claims asserted against her in the April 8, 2019 amended complaint ("Complaint") filed by plaintiff Walter J. Powell ("Plaintiff") (Dkt. No. 158). The motion has been referred to the undersigned for report and recommendation (Dkt. No. 234). *See* 28 U.S.C. § 636(b)(1)(B). The court heard argument on Alexander's motion on November 1, 2019. For the reasons set forth below, the court recommends that Alexander's motion be GRANTED.

II.  BACKGROUND

Plaintiff was terminated from his employment as a Pittsfield police officer on March 21, 1991 (Compl. ¶ 17). He filed suit that year alleging racial discrimination against the City of Pittsfield ("the City"), which settled in September 1993 (Compl. ¶¶ 20-21). The settlement "called for a payment of $81,000 and [Plaintiff's] reinstatement to the Pittsfield police

department." *Powell v. City of Pittsfield*, 221 F. Supp. 2d 119, 121 (D. Mass. 2002). Plaintiff was finally reinstated as an officer of the Pittsfield Police Department effective May 20, 1996 (Compl. ¶ 23). In 1997, Plaintiff filed suit against the City and two of its officials, Edward Reilly and Alexander, alleging retaliation, disability discrimination, and contract violation for failing and refusing to honor the terms of the 1993 settlement agreement. *Id.* Following a bench trial, the court found Alexander and the other defendants liable to Plaintiff. The judgment included an award of punitive damages against Alexander. *Id.* While Plaintiff worked for the City until he retired in 2016, it is apparent from the Complaint that his relationship with some City officials has, at times, been strained and that those relationships have not improved since his retirement.

### III.    ALLEGATIONS AND CLAIMS IN THE 2019 COMPLAINT CONCERNING ALEXANDER

Plaintiff alleges that then City Solicitor Alexander placed barriers to his return to work after the 1993 settlement, including requiring him to divest himself of his taxi and limousine business, although several white officers were permitted to operate businesses while working as Pittsfield police officers (Compl. ¶ 21). Evidence of the so-called two-job rule was introduced in the 1997 case to show the barriers Alexander, Reilly, and the City created to delay Plaintiff's reinstatement as a Pittsfield police officer (Exh. A 2, Dkt. No. 1-1 at 7-11).

Exhibits attached to Plaintiff's initial complaint in the instant case, filed on September 6, 2018 and, by agreement of Plaintiff, incorporated by reference into the operative Complaint,[1]

---

[1] On April 2, 2019, Judge Mastroianni granted Plaintiff's motion for leave to file an amended complaint (Dkt. No. 136) and cautioned that the amended complaint would "'supersede[]' both the original and supplemental complaint" (Dkt. No. 152 (quoting *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008)). On April 8, 2019, Plaintiff filed his amended complaint (Dkt. No. 158), which included some exhibits and referenced many exhibits that were filed with the original complaint (Dkt. No. 1). At the hearing on the referred motions

show that, on April 16, 1996, Plaintiff informed the City that he had divested himself of any interest in the taxi and limousine business by August 1995 (Exh. A 1, Dkt. No. 1-1 at 5). The business was transferred to Plaintiff's wife on August 14, 1995. *See Powell*, 221 F. Supp. 2d at 137. Thereafter, a financial institution or institutions, including the Urban Initiative Fund, filed suit against Plaintiff to recover funds loaned to him to establish the business and sought to establish a lien against his wages from the City. Judgment entered against Powell in one or more of these collection cases (Exh. A 2, Dkt. No. 1-1 at 7-8); *see also Powell*, 221 F. Supp. 2d at 139. Although Plaintiff incurred losses arising from his taxi and limousine business before trial in the suit he filed in 1997, he did not seek to recover those losses as damages (Exh. A 3, Dkt. No. 1-1 at 10-11) and no such damages were awarded. *See Powell*, 221 F. Supp. 2d at 151 n.9. As City Solicitor for Pittsfield, in or around early 1998, Alexander signed an answer to a trustee process complaint against the City filed by one of Plaintiff's creditors for losses arising from the taxi and limousine business (Exh. A 4, Dkt. No. 1-4 at 13-14).

Plaintiff alleges that he "was financially harmed for 19 years, as a result of Alexander's … behavior and actions [because] the City of Pittsfield, Treasurer's Office [garnished] $150 dollars bi-weekly from [Plaintiff] until the day [he] retired, October 1, 2016" (Compl. ¶ 21). According to Plaintiff, he did not know about Alexander's role in the suit that resulted in the garnishment of a portion of his wages until 2015, when he discovered that Alexander had corresponded with one of his lenders and assisted the lender to bring Powell to court and obtain a judgment against him (Compl. ¶ 22). Plaintiff states that he was one of nine or ten individuals who received federally guaranteed loans from a particular program. He was the only person

---

held on November 1, 2019 (Dkt. No. 344), all parties agreed that the exhibits attached to the first complaint were incorporated by reference.

required to close his business. The other businesses "failed on their own mistakes," and were not forced to pay back the federally guaranteed loans (Compl. ¶ 22).

On the basis of these allegations, Plaintiff asserts claims against Alexander under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H and I (Count II); for conspiracy in violation of 42 U.S.C. § 1985 ("§ 1985") (Count III); for deprivation of civil rights in violation of 42 U.S.C. § 1983 ("§ 1983") (Count IV); for intentional infliction of emotional distress (Count V); and for violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e (Count VIII).

IV.    STANDARD OF REVIEW

To survive a motion to dismiss, a "complaint must contain enough factual material to raise a right to relief above the speculative level … and state a facially plausible legal claim." *Guerra-Delgado v. Popular, Inc*., 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true all well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's favor." *Id*. (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)). To assess whether a complaint meets this standard, courts employ a two-step approach. *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *A.G. ex. rel. Maddox v. Elsevier, Inc*., 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted). Second, [the court] "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108. "[T]he complaint should at least set forth minimal facts as to who did what to whom, when, where and why," and "courts should … 'eschew any reliance

on bald assertions, unsupportable conclusions, and opprobrious epithets.'" *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)). "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)), but a *pro se* complaint should be dismissed if "a lenient construction demonstrates beyond doubt that the plaintiff can prove no set of facts to support her claim for relief," *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 260 (1st Cir. 1994).

V. ANALYSIS

Alexander argues that Plaintiff's claims are beyond the statute of limitations, barred by res judicata, and that the Complaint fails to state claims upon which relief can be granted. Because Plaintiff's claims against Alexander are so plainly barred by the statute of limitations, this court recommends dismissal on this basis, but will also address Alexander's other arguments.

A. Plaintiff's Claims Against Alexander Are Barred by the Applicable Statutes of Limitations

Plaintiff alleges that Alexander engaged in retaliatory or discriminatory acts up to and including December 5, 1997 (Compl. ¶ 22). The Complaint and the exhibits incorporated by reference therein allege no act by Alexander after 1997 or, at the latest, early 1998. Under Massachusetts law, claims brought under the MCRA and for personal injury, including intentional infliction of emotional distress, are subject to a three-year statute of limitations. Mass. Gen. Laws ch. 260, §§ 2A, 5B; *Mellinger v. Town of W. Springfield*, 515 N.E.2d 584, 587 (Mass. 1987) (concluding that plaintiff's claims under § 1983 and for intentional infliction of emotional distress were subject to a three-year limitation period under Massachusetts law);

5

*McGunigle v. City of Quincy*, Civil Action No. 12-10852-JLT, 2013 WL 3892901, at *2 & n.15 (D. Mass. July 25, 2013). Claims brought pursuant to § 1983 and § 1985 borrow the forum state's statute of limitations for personal injury claims. *See Rodríguez–García v. Municipality of Caguas,* 354 F.3d 91, 96 (1st Cir. 2004) ("Sections 1981, 1983, and 1985 borrow the forum state's statute of limitations for personal injury claims.") (citing *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660–62 (1987); *Wilson v. Garcia,* 471 U.S. 261, 277–280 (1985); *Chappell v. Rich,* 340 F.3d 1279, 1283 (11th Cir. 2003)). For claims brought pursuant to Title VII, "a plaintiff must file a charge with the [Equal Employment Opportunity Commission ("EEOC")] 'within one hundred and eighty days after the alleged unlawful employment practice occurred,'" *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 16 (1st Cir. 2002) (quoting 42 U.S.C. § 2000e–5(e)), or with the Massachusetts Commission Against Discrimination ("MCAD") within 300 days of the date of the last allegedly discriminatory act. 42 U.S.C. § 2000e–5(e).

　　1.　Continuing Violation Doctrine

Apparently anticipating an argument that his claims against Alexander might be time barred, Plaintiff contends in the Complaint and his opposition to Alexander's motion to dismiss (Dkt. No. 186) that his claims survive under the continuing violations doctrine (Compl. ¶ 22). This court disagrees. "Under this continuing violation doctrine, a plaintiff who ordinarily would be unable to recover damages for discrete acts of discrimination falling outside the limitations period may avoid that bar if those acts are shown to be part of a pattern of discrimination anchored by acts that occurred within the limitations period." *Kahriman v. Wal-Mart Stores, Inc.*, 115 F. Supp. 3d 153, 161 (D. Mass. 2015) (citing *Noviello v. City of Boston,* 398 F.3d 76, 86 (1st Cir.2005)).

> Traditionally we have recognized that "[c]ontinuing violations may be serial or systemic" and have distinguished between such violations. *Id.* "Systemic

>violations occur where an employer maintains a discriminatory policy, responsible for multiple discriminatory acts that fall outside the limitations period." *Rivera–Rodriguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 21 (1st Cir. 2001) (citing *Pilgrim v. Trustees of Tufts Coll.,* 118 F.3d 864, 869 (1st Cir.1997)).  On the other hand, there is a serial violation "where the plaintiff experiences a number of discriminatory acts arising from the same discriminatory animus." *Id.* at 22.

*Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 405 (1st Cir. 2002).  "Where there are discrete acts of discrimination, the statute of limitations bars challenges to older employment practices regardless of any relationship among them." *Garcia-Ledesma v. Centro*, 916 F. Supp. 2d 161, 171 (D.P.R. 2012).  "The statute of limitations begins to accrue at the time the Plaintiff knows or should have known of the harm suffered as a result of the employer's discriminatory [or retaliatory] conduct." *MacDonald v. Town of Upton*, 297 F. Supp. 3d 209, 212 (D. Mass. 2018) (citing *Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination*, 808 N.E.2d 257, 265-66 (Mass. 2004)).  Plaintiff alleges that he had suffered a biweekly loss of $150 for nineteen years by the time he retired in 2016, meaning that he knew of the deductions from his paycheck and the alleged harm by no later than 1997 (Compl. ¶ 21).  Plaintiff had three years from Alexander's allegedly retaliatory cooperation with Plaintiff's lender to file suit as to all his claims against Alexander except those based on Title VII, where a much shorter period was dictated by the obligation to timely initiate an administrative proceeding with the EEOC or the MCAD.

Plaintiff appears to argue that he is protected as to his claims against Alexander because her alleged cooperation with his lenders in 1997 resulted in continuing deductions from his paycheck until he retired in 2016.  The United States Court of Appeals for the First Circuit has rejected the argument that Plaintiff is advancing.  In *Ayala v. Shinseki*, 780 F.3d 52 (1st Cir. 2015), the court considered the plaintiff's contention that, because the effects of the defendant's

7

allegedly discriminatory acts – stripping her of her duties and transferring her to a small windowless office – lasted until her retirement from the Veterans Administration, those acts constituted continuing violations and, therefore, her claims were timely filed. *Id.* at 56, 58. The *Ayala* court observed "[t]hat the effect of these alleged actions lasted until her retirement does not help [the plaintiff]" because the obligation to bring suit was "triggered upon the initial occurrence of the adverse [retaliatory] actions, even if their effects continued to be felt for as long as she remained employed." *Id.* at 59. Here, reading the Complaint as generously as possible in Plaintiff's favor, his claims against Alexander are premised on her alleged actions in 1997 in cooperating with Plaintiff's lenders, even if those actions had a tangible effect – deductions from Plaintiff's paycheck – that continued through 2016. *See id.*; *see also Ocean Spray Cranberries, Inc.*, 808 N.E.2d at 267-68 (rejecting the contention that the continuing effect of a discrete allegedly discriminatory or retaliatory act was a basis for invoking the continuing violation doctrine).

      The continuing violation doctrine is generally applied in the context of hostile work environment and other employment claims. *See, e.g., Ayala-Sepúlveda v. Municipality of San Germán*, 671 F.3d 24, 30-31 (1st Cir. 2012) (applying the continuing violation doctrine to a hostile work environment claim asserted under § 1983); *Ocean Spray Cranberries, Inc.*, 808 N.E.2d at 266-69 (discussing application of the continuing violation doctrine to a failure to accommodate claim). Assuming for the sake of argument that the continuing violation doctrine applies under §§ 1983 and 1985, the MCRA, and to claims for intentional infliction of emotional distress, when a plaintiff relies on discrete retaliatory actions like those alleged to have been committed by Alexander, the same controlling case law would preclude Plaintiff from invoking that doctrine as to any of his claims against Alexander.

2. The Discovery Rule

In the alternative, it is possible to read Plaintiff's argument as invoking the discovery rule. Viewed in this light, the court takes Plaintiff's argument to be that the court should find that the statute of limitations on Alexander's acts in 1997 and (possibly) early 1998 did not begin to run until 2015, when, he represents, he discovered her allegedly retaliatory assistance to the lender seeking to garnish a portion of his wages. Again, the court disagrees. In 2019, in *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019), the United States Supreme Court considered whether the discovery rule applied to the limitation period in the Fair Debt Collection Practices Act, which provides that a case must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1695k(d). The *Rotkiske* court directed that, in interpreting a limitations provision, the starting point is the statutory language. *Rotkiske*, 140 S. Ct. at 360. Except as to Plaintiff's Title VII claim, Massachusetts law supplies the statute of limitations for Plaintiff's claims against Alexander. "Under Massachusetts law, tort claims . . . are subject to the limitations provisions in Mass. Gen. Laws ch. 260 § 2A, which bars all claims not brought within three years of the accrual of a cause of action." *Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 9 (1st Cir. 2001). "The courts have adopted the date of injury as the date a cause of action usually accrues." *Id.* "The discovery rule prevents the cause of action … from accruing 'until the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct.'" *Id.* at 11. "In order for the statute of limitations to be tolled under the discovery rule, the basis for the action must have been 'inherently unknowable' to the plaintiff at the time of the injury." *Power Control Devices, Inc. v. Orchid Techs. Eng'g & Consulting, Inc.*, 968 F. Supp. 2d 435, 442 (D. Mass. 2013) (quoting *Latson v. Plaza Home Mortg., Inc.*, 708 F.3d 324, 327 (1st Cir. 2013); *Gonzalez v. United States*, 284 F.3d 281, 288-89 (1st Cir. 2002)). "The

9

factual basis for a cause of action is inherently unknowable if it is incapable of detection by the wronged party through the exercise of reasonable diligence." *Geo. Knight & Co. v. Watson Wyatt & Co.*, 170 F.3d 210, 213 (1st Cir. 1999) (citation and internal quotation marks omitted); *see also Gonzalez*, 284 F.3d at 288-89.

"If a defendant pleads the statute of limitations and demonstrates that the action was commenced more than three years after the date of the plaintiff's injury, the plaintiff has the burden of proving that the facts take the case outside of the statute of limitations." *Williams v. Ely*, 668 N.E.2d 799, 804 (Mass. 1996) (citing *Riley v. Presnell*, 565 N.E.2d 780 (Mass. 1991)). Plaintiff alleges that Alexander "secretly assisted and encouraged" Urban Initiative Fund to bring him to court in 1997 (Compl. ¶ 22). It is undisputed on this record that Plaintiff knew about the deductions from his paycheck and that he was aware in 1997 (or early 1998 at the latest) of the litigation filed by Urban Initiative Fund because exhibits to the Complaint show that he filed a pro se motion to dismiss the case in January 1998 (Exh. A. 2, Dkt. No. 1-1 at 7-8; Exh. A 3, Dkt. No. 1-1 at 10-11). The factual basis of Plaintiff's claims against Alexander is difficult to discern from his Complaint. Plaintiff has clarified the basis of his claims in his opposition to Alexander's motion to dismiss, explaining that he discovered Alexander's involvement in the collection action in 2015 when he asked a clerk to retrieve the relevant court file from the state district court basement and reviewed the documents therein (Dkt. No. 187 at 25). The court is entitled to consider this representation in ruling on Alexander's motion to dismiss. *See Martinez-Rivera v. Commonwealth of P.R.*, 812 F.3d 69, 74 (1st Cir. 2016) (a court ruling on a Rule 12(b)(6) motion can take into account concessions in a plaintiff's response to the dismissal motion).

Taking into account Plaintiff's representation about the factual basis of his claims against Alexander, this court concludes that Alexander's role in the collection case filed by the Urban Initiative Fund was not, as a matter of law, inherently unknowable to Plaintiff within the limitations period. He knew about and participated in the state court collection case in 1997 and 1998. He has not alleged, nor is it reasonable to infer, that the court file he reviewed in 2015 was unavailable for review in 1998. Where Plaintiff relies on documents from 1997 or 1998 that he found in the court file as a basis for his claims against Alexander, he cannot plausibly contend that Alexander's conduct was unknowable on a timely basis. Rather, he is contending that it was unknown to him prior to 2015, when he found the documents. The discovery rule does not apply in these circumstances. *See Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc.*, 119 F.3d 55, 65 (1st Cir. 1997) (concluding that, because the counterclaim plaintiff did "not contend that the facts he discovered in April 1992 were somehow inherently unknowable to him so much as he argues they were unknown to him," … [his] state law counterclaims [were] all time-barred on the basis of the undisputed facts and the applicable Massachusetts law").

As to Plaintiff's Title VII claim, he was required to file with the MCAD no later than 300 days after the alleged unlawful discriminatory or retaliatory act occurred. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Poirer v. Mass. Dep't of Corrs.*, 186 F. Supp. 3d 66, 68 (D. Mass. 2016). "Under the federal rules, accrual commences when a plaintiff knows, or has reason to know, of the discriminatory act that underpins his cause of action." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748-49 (1st Cir. 1994); *Poirer*, 186 F. Supp. 3d at 69. The First Circuit has rejected the contention that the statute of limitations should be suspended until the claimant becomes aware of all of the facts, including the wrongdoer's allegedly discriminatory or retaliatory intent, relevant to his claims. *Morris*, 27 F.3d at 749-50. Plaintiff knew in 1996 that Alexander played

11

a role in requiring him to shut down his business (Exh. A 1, Dkt. No. 1-1 at 5), he contended to the Berkshire District Court in late 1997 that this decision by the City and its agents was discriminatory and retaliatory (Exh. A 2, Dkt. No. 1-1 at 7-8), and he has alleged that the deductions from his paycheck began in 1997 (Compl. ¶ 21). It is a reasonable inference from his representation about the document(s) that are the basis of his claims against Alexander that they existed and were available for review in a court file in 1997 or 1998. The statute of limitations for Title VII claims based on Alexander's alleged retaliatory cooperation with Plaintiff's lender began to run at that time. Plaintiff has not shown that he timely filed with the MCAD or the EEOC as to retaliation claims against Alexander that would entitle him to recover at this time on the deductions from his paychecks that, according to Complaint, began in 1997. *See Poirier*, 186 F. Supp. 3d at 69 (the statute of limitations begins to run from the date of the adverse action, regardless of whether the employee had reason to know of any discriminatory animus at that time).[2]

B. <u>Plaintiff's Complaint Fails to State Cognizable Claims Against Alexander</u>

Even if Plaintiff's claims against Alexander were not barred by the applicable statutes of limitations, which they are, the claims would be subject to dismissal pursuant to Fed. R. Civ. P.

---

[2] The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. If the presiding District Judge accepts the recommendation to dismiss Plaintiff's federal claims as untimely, the judge may choose to dismiss the state law claims without prejudice. In the recent case of *Robinson v. Town of Marshfield*, -- F.3d --, No. 19-1155, 2020 WL 746543, at *8 (1st Cir. Feb. 14, 2020), the First Circuit stated that notwithstanding that federal-law claims have been dismissed, a district court may nonetheless rule on state-law claims where no substantial question of state law is presented and the court's ruling on the federal-law claims applies with equal force to the state-law claims. In these circumstances, addressing the state law claims may "best serve[] 'the interests of fairness, judicial economy, convenience, and comity.'" *Id.* (quoting *Desjardins v. Willard*, 777 F.3d 43, 45-46 (1st Cir. 2015)). Thus, because Plaintiff's federal-law claims are time barred and should be dismissed, the court could also dismiss the state-law claims on the same basis.

12(b)(6) for failure to state a claim on which relief can be granted, or barred by the doctrine of res judicata.

1. Federal-law Claims

   a. Section 1985 (Count III)

To state a claim for a conspiracy to deprive Plaintiff of his constitutional rights pursuant to 42 U.S.C. § 1985(2), his claim must contain four elements: "(1) a conspiracy between two or more persons, (2) to impede, hinder, obstruct, or defeat, in any manner, the due course of justice in any State, (3) with invidiously discriminatory animus, (4) which results in injury to plaintiff." *Bolduc v. Town of Webster*, 629 F. Supp. 2d 132, 150–51 (D. Mass. 2009) (citing *Greco v. Fitzpatrick,* 1995 WL 373108, at *1 (1st Cir. June 23, 1995)).  To state a claim for a conspiracy to deprive Plaintiff of his constitutional rights pursuant to 42 U.S.C. § 1985(3), his claim "must contain four elements. First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right."  *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008) (citing *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996)).  As with a claim brought under § 1985(2), a § 1985(3) claim also requires that "the conspiratorial conduct of which [Plaintiff] complains [be] propelled by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"  *Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 178 (D. Mass. 2013) (quoting *Aulson*, 83 F.3d at 3) (internal quotations omitted). Additionally, allegations of a conspiracy under § 1985 must "be supported by material facts, not merely conclusory statements."  *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980).

13

Plaintiff has not specified under which subsection of § 1985 he is proceeding. Viewing the allegations in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, Plaintiff has failed to state a claim for conspiracy against the PRB Defendants under either subsection. Plaintiff has alleged as the only overt act committed by Alexander that she secretly assisted the attorney for a private lender to garnish Plaintiff's wages to repay a loan on which he had defaulted. Stripped of conclusory allegations, there is nothing in the Complaint to suggest that the attorney for the Urban Initiative Fund agreed to act in concert with Alexander to inflict a constitutional injury on Plaintiff or did anything other than represent his client in a collection action. Disregarding Plaintiff's conclusory statements, Plaintiff has not alleged – in this case – that Alexander engaged in any overt act other than communicating with the attorney for the Urban Initiative Fund. Thus, the complaint fails to allege adequately a civil conspiracy claim against Alexander.

      b.   Section 1983 (Count IV)

In *Powell v. Alexander*, 391 F.3d 1 (1st Cir. 2004), the United States Court of Appeals "upheld an award against a public employer found to have retaliated against an employee who filed lawsuits alleging race discrimination." *Rosado-Quinones v. Toledo*, 528 F.3d 1, 7 (1st Cir. 2008). Powell's speech about racial discrimination and his right to petition by filing a lawsuit are protected by the First Amendment and the allegation that Alexander retaliated against him for such speech and for exercising his right to petition states a claim under § 1983. *Id.* Alexander argues that Plaintiff's § 1983 claim is barred by the judgment entered on August 21, 2002, in his prior case against the City, Reilly, and Alexander, which was affirmed on appeal. This court agrees.

"The First Circuit has described *res judicata* as a doctrine whereby an issue between identical parties that has been subject to a final judgment, or that should have been raised in the prior action, may not be litigated anew in the future." *Martinez v. P.R.*, 594 F. Supp. 2d 181, 185 (D.P.R. 2009); *see also Cichocki v. Mass. Bay Cmty. Coll.*, 199 F. Supp. 3d 431, 439 (D. Mass. 2016). "[T]hree elements must exist for claim preclusion to apply: (1) a final judgment on the merits in an earlier suit; (2) sufficient identity between the causes of action asserted in the earlier and later suits; and (3) sufficient identity between the parties in the earlier and later suits." *Cichocki*, 199 F. Supp. 3d at 439 (citing *Havercombe v. Dep't of Educ. of P.R.*, 250 F.3d 1, 3 (1st Cir. 2001)).

As to the first element, a final judgment entered in Powell's prior lawsuit in which Alexander was named as a defendant and the judgment was affirmed on appeal. *Powell*, 391 F.3d at 1. Second, in his prior case, Powell asserted a claim that Alexander retaliated against him "for his successful 1991 lawsuit, in violation of 42 U.S.C. § 1983." *Powell*, 221 F. Supp. 2d at 122. "The First Circuit applies a 'transactional approach' to determine whether the causes of action in the earlier and later suits are identical." *Cichocki*, 199 F. Supp. 3d at 440 (citing *Breneman v. U.S. ex rel. F.A.A.*, 381 F.3d 33, 38 (1st Cir. 2004)). "[I]f the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action." *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 583-84 (1st Cir. 1995). Plaintiff's § 1983 claim against Alexander in the instant litigation is premised on his contention that her assistance in the 1997 collection lawsuit was part of her campaign of retaliation against him for his successful 1991 lawsuit. The claim, therefore, arises out of the same nucleus of operative facts as his earlier lawsuit (Compl. ¶¶ 21-22). *See Cichocki*, 199 F. Supp. 3d at 440.

Plaintiff did not attempt to recover from Alexander and the other defendants for his business losses in his 1997 lawsuit. *Powell*, 221 F. Supp. 3d at 151 n.9. On May 17, 2016, Plaintiff filed a motion in his 1997 lawsuit seeking to reopen the judgment, premising his motion, in part, on Alexander's assistance to the lender's attorney in the collection action (No. Civ. Action 3:97-cv-30189-MAP, Dkt. No. 145). District Judge Michael Ponsor denied the motion, stating that "[t]he court is without authority to reopen a judgment in these circumstances," and observing that "Judgment entered almost fourteen years ago" (No. Civ. Action 3:97-cv-30189-MAP, Dkt. No. 146). Plaintiff's present dissatisfaction with the relief he obtained in the 2002 judgment does not justify him in initiating a new lawsuit based on events that were or could have been addressed in the earlier litigation. *See Martinez v. Commonwealth of P.R.*, 594 F. Supp. 2d 181, 185-86 (D.P.R. 2009) (finding that res judicata barred the plaintiff from presenting claims that occurred before entry of final judgment in her prior lawsuit against the same parties).

    c. Title VII claims

Plaintiff's Title VII claims against Alexander should be dismissed. Alexander was not Plaintiff's employer. He and she were employed by the City. It is well-settled that "[t]here is no individual employee liability under Title VII," *Fantini v. Salem State Coll.*, 557 F.3d 22, 31 (1st Cir. 2009) (citing *Powell v. Yellow Book U.S.A, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006)), and thus no basis for a Title VII claim against Alexander. Plaintiff's Title VII claims against Alexander should be dismissed because she is not amenable to suit under Title VII.

  2. State-law Claims

    a. Supplemental Jurisdiction

The termination of Plaintiff's federal claims sets the stage for the court's exercise of informed discretion to decline to adjudicate the remaining state-law claims for intentional infliction of emotional distress and violation of the MCRA. "'Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" *Robinson*, 2020 WL 746543, at *8 (quoting *United Mine Workers of Am.,* 383 U.S. at 726). There are no analogues to these state-law claims in the federal-law claims that are addressed above. In these circumstances, the First Circuit has directed that the better course is dismissal of the state-law claims without prejudice. If the court has determined that these state law claims are or may be timely, this court recommends that the court decline to exercise supplemental jurisdiction over the intentional infliction of emotional distress and MCRA claims and dismiss them without prejudice. *See id.* at *9. However, the undersigned proceeds to analyze the state law claims in the event the court decides to exercise supplemental jurisdiction.

      b. MCRA

To state a claim under the MCRA, a plaintiff must allege that the defendant interfered or attempted to interfere with the plaintiff's exercise of a constitutional or statutory right by threats, intimidation, or coercion. *See, e.g., Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 224-25 (D. Mass. 2017).

> "A 'threat' means 'the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.'" *Goddard [v. Kelley],* 629 F. Supp. 2d [115, 128 (D. Mass. 2009)] (quoting *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 631 N.E.2d 985, 990 (1994)). "'Intimidation' means putting a person in fear for the purpose of compelling or deterring his or her conduct." *Id.* "'Coercion' means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do." *Id.*

*Damon v. Hukowicz*, 964 F. Supp. 2d 120, 149 (D. Mass. 2013).  Plaintiff's MCRA claims against Alexander are based on the allegation that she proceeded surreptitiously, behind his back, without his knowledge (Compl. ¶ 22).  Plaintiff's allegations about Alexander's conduct are devoid of anything resembling the sort of physical, moral, or economic pressure that courts have found necessary, particularly where the exception for claims based on non-physical coercion remains narrow.  *See Meuser v. Fed. Express Corp.*, 564 F.3d 507, 519 (1st Cir. 2009); *see also Fletcher v. Szostkiewicz*, 190 F. Supp. 2d 217, 231-32 (D. Mass. 2002) (stating that MCRA generally requires a plaintiff to show a face-to-face or physical confrontation with the alleged wrongdoer).  Moreover, Plaintiff has not alleged that Alexander's allegedly retaliatory cooperation with his lender was aimed at persuading him to do something he would not otherwise have done.  *See Damon*, 964 F. Supp. 2d at 149.

        c.   Intentional Infliction of Emotional Distress

For the reasons set forth above, Plaintiff's claim for intentional infliction of emotional distress is barred by res judicata.  Even if it was not so barred, in *this* case Plaintiff has not alleged conduct by Alexander that rises to the level of extreme and outrageous that is required to state a claim for intentional infliction of emotional distress.  The bar for sustaining a claim for the intentional infliction of emotional distress is "very high."  *Polay v. McMahon*, 10 N.E.3d 1122, 1128 (Mass. 2014) (citing *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996)).  There are four elements to sustain this claim.  Plaintiff must show:

> (1) that the defendant "intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct[,]" (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community[,]" (3) that the defendant's actions caused the plaintiff distress, and (4) that the plaintiff's emotional distress was severe.

*Wilmot v. Tracey*, 938 F. Supp. 2d 116, 144 (D. Mass. 2013) (quoting *Howell v. Enter. Publ'g Co., LLC,* 920 N.E.2d 1, 28 (Mass. 2010)). "In addition, '[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'" *Hayes v. Mirick*, 378 F. Supp. 3d 109, 117 (D. Mass. 2019) (quoting *Caputo v. Bos. Edison, Co.*, 924 F.2d 11, 14 (1st Cir. 1991)).

Judge Ponsor found Alexander's conduct in connection with Plaintiff's reinstatement as a Pittsfield police officer to be "'outrageous and worthy of condemnation.'" *Powell*, 221 F. Supp. 2d at 152 (quoting *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 84 (1st Cir. 2001)). Powell has recovered for that misconduct. *See id.* Here, Plaintiff's allegations against Alexander are more limited. He has alleged that Alexander, in her capacity as City Solicitor for Pittsfield, cooperated with and assisted a lender in filing a collection action that resulted in the garnishment of a portion of his wages to repay a loan he had taken out to start a taxi and limousine business and that she did so after requiring him to give up his business as a condition of returning to his position as a police officer for retaliatory reasons. Out of the numerous exhibits submitted by Powell, the only document that shows Alexander's involvement in the collection action is an answer by the City as Trustee signed by Alexander in her capacity as City Solicitor. On its face, there is nothing improper about this document (Exh. 4, Dkt. No 1-1 at 13-14). Reading the Complaint in the light most favorable to Plaintiff and drawing reasonable inferences in his favor concerning Alexander's alleged motives, this is not a sufficient factual basis to state a claim of intentional infliction of emotional distress. *See Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423, 454-55 (D. Mass. 2013) (concluding that, even though the plaintiffs had suffered emotional distress in their dispute with town officials, plaintiffs' complaints about the

19

officials' performance of their duties did not state a claim for intentional infliction of emotional distress).

IV.   CONCLUSION

Because all of Plaintiff's claims against Alexander are barred by the applicable statutes of limitations, the undersigned recommends that the claims be dismissed with prejudice. If the court does not agree that the claims are time-barred, the undersigned recommends that the court dismiss the federal-law claims against Alexander in Counts III, IV, and VIII with prejudice, and dismiss the state-law claims in Counts II and V without prejudice. For the foregoing reasons, the court recommends that Alexander's motion to dismiss be GRANTED.[3]

Dated: February 27, 2020         /s/ Katherine A. Robertson
                                 KATHERINE A. ROBERTSON
                                 UNITED STATES MAGISTRATE JUDGE

---

[3] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of service of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.