UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WALTER J. POWELL, ) | |
|     Plaintiff, ) | Civil Action No. 18-30146-MGM |
| ) | |
|     v. ) | |
| ) | |
| RICHARD M. DOHONEY, *et al.*, ) | |
|     Defendants. ) | |

REPORT AND RECOMMENDATION ON DEFENDANT
RICHARD M. DOHONEY'S MOTION TO DISMISS
(Dkt. No. 217)

I.     INTRODUCTION

Currently before the court is a motion to dismiss by Richard M. Dohoney ("Dohoney") seeking dismissal of the claims asserted against him in the April 8, 2019 amended complaint ("Complaint") filed by plaintiff Walter J. Powell ("Plaintiff") (Dkt. No. 158). The motion has been referred to the undersigned for report and recommendation (Dkt. No. 234). *See* 28 U.S.C. § 636(b)(1)(B). The court heard argument on Dohoney's motion (and others brought by other defendants) on November 1, 2019. For the reasons set forth below, the court recommends that Dohoney's motion be GRANTED.

II.     BACKGROUND

Plaintiff was terminated from his employment as a Pittsfield police officer on March 21, 1991 (Compl. ¶ 17). He filed a suit alleging racial discrimination by the City of Pittsfield ("the City"), which settled in September 1993 (Compl. ¶¶ 20-21). The settlement "called for a payment of $81,000 and [Plaintiff's] reinstatement to the Pittsfield police department." *Powell v. City of Pittsfield*, 221 F. Supp. 2d 119, 121 (D. Mass. 2002). Plaintiff was finally reinstated as a Pittsfield police officer effective May 20, 1996 (Compl. ¶ 23). In 1997, Plaintiff filed suit

against the City and two of its officials, Edward Reilly and Kathleen Alexander, alleging retaliation, disability discrimination, and contract violation for failure and refusal to honor the terms of the 1993 settlement agreement. *Id.* Following a bench trial, the court found the defendants liable to Plaintiff and awarded damages for lost wages and emotional distress and attorneys' fees. In the case now before the court, Plaintiff does not allege that Dohoney was employed by the City at the time or involved in the events that resulted in this verdict in his favor.

Stripped of conclusory statements and allegations that are not relevant to Plaintiff's claims against Dohoney, the Complaint, with the exhibits attached to the Plaintiff's initial complaint filed on September 6, 2018, and by agreement of the parties incorporated by reference into the operative Complaint,[1] alleges that Plaintiff was injured by actions Dohoney took in his capacity as a Pittsfield city solicitor in connection with Plaintiff's lawsuit against Pittsfield Chief of Police, Michael J. Wynn ("Wynn"), by which Plaintiff sought judicial review of the denial of his application for renewal of his license to carry a firearm ("LTC"). On January 9, 2017, Plaintiff filed an application to renew his LTC which expired on March 16, 2017 (Compl. ¶ 62). Plaintiff alleges that his LTC was automatically reissued and reactivated by the Commonwealth of Massachusetts, but, on August 7, 2017, Wynn denied Plaintiff's LTC renewal application (Compl. ¶ 71). On November 3, 2017, Plaintiff filed suit in the Massachusetts District Court

---

[1] On April 2, 2019, Judge Mastroianni granted Plaintiff's motion for leave to file an amended complaint (Dkt. No. 136), cautioning that the amended complaint would "'supersede[]' both the original and supplemental complaint" (Dkt. No. 152 (quoting *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008)). On April 8, 2019, Plaintiff filed his amended complaint (Dkt. No. 158), which included some exhibits and referenced many exhibits that were filed with his initial complaint (Dkt. No. 1). At the November 1, 2019 hearing (Dkt. No. 344), all parties agreed that the exhibits attached to the first complaint would be incorporated by reference in the operative Complaint.

challenging the denial of his application to renew his LTC (Compl. ¶ 75) and naming Wynn as the defendant (Exh. G 2, Dkt. No. 1-1 at 70). On December 13, 2017, the court reversed Wynn's decision (Compl. ¶ 77). On February 20, 2018, Plaintiff filed a contempt motion in the Massachusetts District Court because he had not received his LTC (Compl. ¶ 87). In his capacity as city solicitor, Dohoney filed an affidavit with the court on March 1, 2018, in which Wynn stated that, as he was required to do, he had forwarded Plaintiff's license application to the Commonwealth's Firearms Records Bureau via the Department of Criminal Justice Information Services ("DCJIS") (Wynn Aff. ¶¶ 2-7, Dkt. No. 1-1 at 70-71).

On March 12, 2018, Dohoney sent a letter to the DCJIS asking if it would be "processing and printing [Plaintiff's] license" and, if not, to please "advise as to how DCJIS intend[ed] to proceed" (Exh. M, Dkt. No. 1-2 at 107; Compl. ¶ 92). Dohoney also appeared on behalf of Wynn before the court on March 15, 2018, at what Plaintiff believed would be a motion hearing. Plaintiff alleges that Dohoney told the court the hearing was a status conference (Compl. ¶ 91). At an April 12, 2018 hearing, Dohoney told the court that Plaintiff's LTC renewal application had been denied (Compl. ¶ 95). Dohoney filed an emergency motion to continue a June 2018 hearing. His emergency motion was granted. Plaintiff alleges that he was never notified of the change in the hearing date (Compl. ¶ 101, Dkt. No. 158 at 49).[2]

In July 2018, Dohoney filed another affidavit (Compl. ¶ 100 at 51; Exh. N 2, Dkt. No. 1-2 at 120-21), signed by Michaela Dunne, Manager of the Commonwealth's Law Enforcement and Justice Services of the DCJIS. Ms. Dunne stated that she was the Keeper of the Records for all LTC firearm identification cards (Dunne Aff. ¶ 3, Dkt. No. 1-2 at 122-124). Ms. Dunne

---

[2] The Complaint contains two sets of paragraphs numbered 100 through 102 on pages 48 through 53 (Dkt. No. 158). As to these paragraphs, the court has supplied the page number of the relevant paragraph to which it makes reference.

attested that she had received the Massachusetts District Court's order overruling Wynn's decision. She stated that, pursuant to Mass. Gen. Laws ch. 140, § 131(d)(ii)(F), DCJIS did not activate Plaintiff's LTC because of his 1974 New York conviction for possession of a controlled substance. DCJIS could not make a final determination as to whether to activate Plaintiff's license until Plaintiff filed an affidavit disclosing the kind of controlled substance at issue and its amount (Dunne Aff. ¶¶ 8-14, Dkt. No. 1-2 at 123). Plaintiff appears to challenge the authenticity of the affidavit on the basis that it was not notarized and because he claims that Ms. Dunne told him that she "didn't do an Affidavit" (Compl. ¶ 100 at 51), but it appears that the affidavit was accepted by the Massachusetts District Court.

### III. DISCUSSION

#### A. Standard of Review

To survive a motion to dismiss, a "complaint must contain enough factual material to raise a right to relief above the speculative level … and state a facially plausible legal claim," *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true all well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's favor." *Id.* (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)). To assess whether a complaint meets this standard, courts employ a two-step approach. *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *A.G. ex. rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted). Second, [the court] "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108.  "[T]he complaint should at least set forth minimal facts as to who did what to whom, when, where and why," and "courts should … 'eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets.'" *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)).  "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)), but a *pro se* complaint should be dismissed if "a lenient construction demonstrates beyond doubt that the plaintiff can prove no set of facts to support her claim for relief," *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 260 (1st Cir. 1994).

B. <u>Federal Claims</u>[3]

    1.  Count III -- § 1985

A claim of a conspiracy to deprive an individual of his constitutional rights pursuant to 42 U.S.C. § 1985(2) requires proof of four elements: "(1) a conspiracy between two or more persons, (2) to impede, hinder, obstruct, or defeat, in any manner, the due course of justice in any State, (3) with invidiously discriminatory animus, (4) which results in injury to plaintiff." *Bolduc v. Town of Webster*, 629 F. Supp. 2d 132, 150–51 (D. Mass. 2009) (citing *Greco v. Fitzpatrick,* 1995 WL 373108, at *1 (1st Cir. June 23, 1995)).  A claim of a conspiracy to deprive an individual of his constitutional rights pursuant to 42 U.S.C. § 1985(3) also requires

---

[3] Dohoney did not seek dismissal of the federal claims on the basis of immunity for acts taken in his capacity as a lawyer.  *See Penate v. Kaczmarek*, No. CV 3:17-30119-KAR, 2018 WL 6437077, at *12 (D. Mass. Dec. 7, 2018), *aff'd on other grounds,* 928 F.3d 128 (1st Cir. 2019) (an assistant attorney general was protected by absolute immunity where she "functioned as an officer of the court and the legal representative of the [Attorney General's Office]" in opposing a subpoena).

proof of four elements. "First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right." *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008) (citing *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996)). As with a § 1985(2) claim, a § 1985(3) claim requires that "the conspiratorial conduct of which [Plaintiff] complains [be] propelled by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 178 (D. Mass. 2013) (quoting *Aulson*, 83 F.3d at 3) (internal quotations omitted). Additionally, allegations of a conspiracy under § 1985 must "be supported by material facts, not merely conclusory statements." *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980).

Plaintiff has not specified under which subsection of § 1985 he is proceeding.[4] Viewing the allegations in the light most favorable to Plaintiff, however, and drawing all reasonable inferences in his favor, Plaintiff has failed to state a claim for conspiracy against Dohoney under either subsection. The Complaint baldly alleges that Dohoney conspired with others to prevent renewal of Plaintiff's LTC and that this was part of a larger plan to retaliate against Plaintiff for his "reports, objections, complaints and speech about violations of the laws by the Defendants" (Compl. ¶ 118). But Plaintiff has "not alleged any facts to show a conspiracy" between Dohoney and any other defendant. *See Burbank v. Town of Hubbardston*, 146 F. Supp. 3d 402, 405 (D. Mass. 2015); *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) ("Without direct evidence of such

---

[4] Subsection (1) of § 1985 is plainly inapplicable, as it applies to a conspiracy directed at an officer of the United States, such as a conspiracy to prevent such an officer from performing the duties he or she is required to perform by his or her office.

an agreement – and none exists here – the plaintiff must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made. A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)." (citing *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988))).

"Although a *pro se* complaint is construed liberally, [when Plaintiff's] allegations are no more than 'bald assertions' [the Complaint] cannot survive a motion to dismiss." *Baxter v. Conte*, 190 F. Supp. 2d 123, 128 (D. Mass. 2001). "[S]ubsection 1985(2) applies to 'conspiracies,' not to individual actions." *Irizarry v. Quiros*, 722 F.2d 869, 872 (1st Cir. 1983). Additionally, "[Plaintiff's] conclusory statements that [Dohoney participated in] a vendetta against him fail to allege the essential elements of a § 1985(3) claim." *Baxter*, 190 F. Supp. 2d at 129 (citing *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34-35 (1st Cir. 1996)); *cf. Bolduc*, 629 F. Supp. 2d at 151 (facts supporting a finding that one defendant started a series of acts targeting the plaintiff did not provide a reason to believe that the defendant agreed with another to continue that conduct). It cannot be reasonably inferred from the Complaint that Dohoney's acts as an attorney for the City responding to Plaintiff's November 3, 2017 lawsuit against the police chief were part of an illicit agreement to retaliate against Plaintiff or to deprive him of his constitutional rights. *See Hayward v. Mass.*, Case No. 16-cv-30046-MGM, 2016 WL 11189805, at *13 (D. Mass. Nov. 14, 2016), *report and recommendation adopted*, 2017 WL 772323 (D. Mass. Feb. 28, 2017) ("The complaint is devoid of the requisite particular facts from which it could reasonably be inferred that any of these three officers, or any others, agreed to deprive Plaintiff of his constitutional rights or that the officers communicated or cooperated in furtherance of this goal.")

Furthermore, Plaintiff has not alleged discriminatory animus on Dohoney's part, nor do the allegations give rise to a reasonable inference that Dohoney acted with any class-based discriminatory animus. *See Knowlton v. Shaw*, 704 F.3d 1, 12 (1st Cir. 2013) (upholding dismissal of § 1985(2) claim because "it fail[ed] to allege any racial, or otherwise class-based, invidiously discriminatory animus underlying the state officials' actions"); s*ee also Unitt v. Helsel*, No. CA 13-11926-JLT, 2013 WL 5437338, at *3 (D. Mass. Sept. 24, 2013) ("viable claims under [§ 1985(2) and (3)] must include allegations that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action'" (quoting *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268 (1993))). While the Complaint includes allegations that white officers were treated differently than Plaintiff with respect to receiving pay checks on time (Compl. ¶ 71) and that Plaintiff was subject to "constant harassment and retaliation" allegedly directed towards him because he was the City's only black officer (Compl. ¶ 64), the only allegations about Dohoney relate exclusively to the proceedings before the Massachusetts District Court. Those allegations do not allege bias on Dohoney's part on the basis of Plaintiff's membership in a protected class. *See Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 14 (1st Cir. 2000) (affirming summary judgment where the plaintiff "attempted to construct a civil rights conspiracy case by superimposing general allegations of racism by a few members of the state police force not including [the defendant] on several incidents in which [the plaintiff] unquestionably was treated unfairly"); *Perkins*, 969 F. Supp. 2d at 179 (dismissing a § 1985 conspiracy claim where Plaintiff did not allege that the defendants conspired against him because of "racial or other class-based invidious discriminatory animus"); *Baxter*, 190 F. Supp. 2d at 129 (dismissing conspiracy claims where the plaintiff did "not even

8

suggest class-based animus but rather base[d] his claims on a legal theory that the defendants are particularly targeting him because of his actions *as an individual*" (emphasis in original)).

For the foregoing reasons, the court recommends dismissal with prejudice of so much of Count III as asserts claims against Dohoney.

2. Count IV – § 1983

"[S]ection 1983 authorizes suits against 'persons' but 'neither a State nor its officials acting in their official capacities are "persons" under § 1983.'" *Taite v. Bridgewater State Univ.*, 236 F. Supp. 3d 466, 481 (D. Mass. 2017) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)). Accordingly, Plaintiff's § 1983 claims should be dismissed as to Dohoney in his official capacity.

As to Dohoney's individual liability, "[t]o state a claim under Section 1983, a plaintiff must show [1] that the challenged conduct was committed by a person acting under color of state law and [2] that the conduct worked a deprivation of rights, privileges, or immunities secured by the Constitution or federal law." *Diaz v. Devlin*, 229 F. Supp. 3d 101, 109 (D. Mass. 2017) (citing 42 U.S.C. § 1983; *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)). There is no dispute that Dohoney was acting under color of state law in his role as a city solicitor. "The [next] step in the analysis of a § 1983 claim 'is to identify the specific constitutional right allegedly infringed.'" *Murphy v. Baker*, No. CV 15-30187-MGM, 2017 WL 2350246, at *2 (D. Mass. May 4, 2017), *report and recommendation adopted*, 2017 WL 2363114 (D. Mass. May 30, 2017) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

The Complaint alleges violations of Plaintiff's rights to free speech, due process, and to petition and seek redress from "Government abuse" as bases for his § 1983 claims (Compl. ¶ 120). Plaintiff has not identified the factual bases for the alleged deprivation of these rights.

Although he has used numbered paragraphs, the complaint is essentially a narrative that does not include a brief statement of his claims with respect to each defendant. Thus, "it is difficult to cull out the relevant information forming the basis of liability." *Baams v. Coakley*, Civil Action No. 13-13115-DJC, 2013 WL 6815014, at *3 (D. Mass. Dec. 23, 2013). The court has done its best to draw all reasonable inferences from the Complaint in Plaintiff's favor as to the rights that Plaintiff asserts were violated.

    a.  First Amendment Claim

"The Supreme Court has … identified 'the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation – and their ideas from suppression – at the hand of an intolerant society.'" *Powell v. Alexander*, 391 F.3d 1, 16 (1st Cir. 2004) (quoting *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357 (1995)). "[I]n the public employment context, … under the First Amendment, there is both a free speech aspect and a right to petition aspect to claims of retaliation against the filing of lawsuits." *Rosado-Quinones v. Toledo*, 528 F.3d 1, 6 (1st Cir. 2008); *Fabiano v. Hopkins*, 245 F. Supp. 2d 305, 310 (D. Mass.), *aff'd*, 352 F.3d 447 (1st Cir. 2003) ("Generally speaking, the First Amendment guarantees the fundamental right to file a lawsuit, as well as to engage in constitutionally protected speech." (citing *Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731, 741 (1983))). "Claims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." *Powell*, 391 F.3d at 16.

"[T]o prevail on a § 1983 claim of retaliation for First Amendment activity, a plaintiff must show: (1) that his conduct was constitutionally protected, and (2) that this conduct was a substantial factor or a motivating factor for the defendant's retaliatory decision." *Rosaura Bldg. Corp. v. Municipality of Mayaguez,* 778 F.3d 55, 66 (1st Cir. 2015) (citing *Pierce v. Cotuit Fire*

*Dist.,* 741 F.3d 295, 302–03 (1st Cir.2014)).  To make out a claim of a violation of the right to petition, "a plaintiff must allege that the defendant was responsible for or took actions that hindered the plaintiff's efforts to pursue a legal claim." *Muldoon v. Dep't of Correction*, No. 15-CV-13892-DJC, 2017 WL 506250, at *4 (D. Mass. Feb. 7, 2017) (citing *Boivin v. Black*, 225 F.3d 36, 43 n.5 (1st Cir. 2000)).  To make out a claim for violation of his right to free speech, Plaintiff must "establish that [he] was speaking 'as a citizen on a matter of public concern'" and that his First Amendment right outweighed the government's interest, here in being represented in court.  *Rosaura Bldg. Corp.*, 778 F.3d at 66-67 (quoting *Díaz–Bigio v. Santini,* 652 F.3d 45, 51 (1st Cir. 2011)).  "When … expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Myers*, 461 U.S. 138, 146 (1983).  Finally, for both the free speech and right to petition claims, "in order to meet the motivation prong, a plaintiff must produce 'sufficient direct or circumstantial evidence' that his constitutionally protected conduct was the driving factor that caused the retaliation." *Rosaura Bldg. Corp.*, 778 F.3d at 67 (quoting *Díaz–Bigio,* 652 F.3d at 51).

     Plaintiff appears to contend that his filing of a discrimination charge with the Massachusetts Commission Against Discrimination ("MCAD") and the complaint against Wynn in the Massachusetts District Court, along with his letter protesting the change in employment status for retired police officers working details, constitute constitutionally protected conduct.  Based on the Complaint, these events seem to be directed "solely [at] resolv[ing] Plaintiff's personal concerns," *Vickowski v. Hukowicz*, 201 F. Supp. 2d 195, 207 (D. Mass. 2002), including, so far as Dohoney was involved, the renewal of Plaintiff's LTC.  While the Complaint

11

alleges that Plaintiff vigorously – and unsuccessfully – pursued reinstatement of his LTC, nowhere does Plaintiff allege acts by Dohoney that "hindered the plaintiff's efforts to pursue a legal claim." *Muldoon*, 2017 WL 506250, at *4. *See Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649, 660 (1st Cir. 1997) ("[W]hile there is a constitutional right to court access, there is no complementary constitutional right to receive or be eligible for a particular form of relief.").

Assuming for the sake of argument that Plaintiff has adequately alleged speech on a matter of public concern, *see Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 141–42 (1st Cir. 2016) (assuming that "the plaintiffs' petitioning and speech were constitutionally protected" where it was clear that the plaintiffs could not "satisfy the second prong of the test – establish[ing] a causal connection between the protected conduct and the alleged retaliatory response"), Plaintiff's § 1983 claim for retaliation for the exercise of his First Amendment rights fails because his Complaint does not "support a fact-based inference" that Dohoney's actions were anything other than routine actions undertaken in his role as city solicitor. *See Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (affirming dismissal of the plaintiff's First Amendment retaliation claim for failure to state a claim because a court does not credit "bald assertions, unsupportable conclusions, and opprobrious epithets" as adequately pleading that the adverse action taken against the plaintiff was undertaken with a retaliatory motive). Stripping the Complaint of its conclusory statements, Plaintiff has alleged that Dohoney, in his capacity as city solicitor, appeared in the Massachusetts District Court to represent Wynn, who was the City's police chief, corresponded with or was otherwise in contact with individuals for purposes of representing Wynn, and filed documents with the court in the course of that representation. Plaintiff has not credibly alleged, and no reasonable inference can be drawn, that Dohoney's actions as city solicitor in defending Wynn were causally connected to

complaints Plaintiff raised about matters unrelated to Plaintiff's suit against Wynn, or that Dohoney's routine acts as a lawyer were in retaliation for Plaintiff's speaking out or filing complaints in the Massachusetts District Court or the MCAD. Attorneys must file motions and related documents and communicate with opposing parties and other individuals as part of their role in the litigation process. *See Powell v. Commonwealth of Mass.*, Civil Action No. 16-30004-MGM, 2016 WL 7115887, at *9 (D. Mass. Sept. 20, 2016), *report and recommendation adopted*, 2016 WL 7118260 (D. Mass. Dec. 6, 2016). *See also Najas Realty, LLC,* 821 F.3d at 143 (affirming judgment on the pleadings where the allegations led to the conclusion that the public official the plaintiffs alleged had retaliated was doing nothing more than fulfilling his duty); *Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 534 (1st Cir. 2011) (recognizing that the Supreme Court has found insufficient for purposes of stating a claim "'unadorned, the-defendant-unlawfully-harmed-me accusation[s]'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))). The Complaint does not adequately state a claim against Dohoney for violation of Plaintiff's First Amendment rights.

    b. Due Process

 "To establish a procedural due process claim under 42 U.S.C. § 1983, Plaintiff[] 'must identify a protected liberty or property interest ... and allege that the defendants, acting under color of state law, deprived him of that ... interest without constitutionally adequate process.'" *I.U. by Roy v. Pioneer Valley Chinese Immersion Charter Sch.*, No. 14-CV-12709-MAP, 2016 WL 8679257, at *7 (D. Mass. June 10, 2016), *report and recommendation adopted*, 2016 WL 4792182 (D. Mass. Sept. 14, 2016) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006)). "[I]t is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful

13

manner.'" *Gedeon v. City of Springfield*, No. 16-CV-30054-MGM, 2017 WL 4212334, at *5 (D. Mass. Feb. 24, 2017) (quoting *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010)).

Plaintiff's allegations fail to make out a due process claim at the outset "because 'neither a "property" nor a "liberty" interest is implicated by the ... initial denial of an [LTC].'" *Hayward v. Mass.*, No. 16-CV-30046-MGM, 2016 WL 11189805, at *9 (D. Mass. Nov. 14, 2016), *report and recommendation adopted,* No. 16-30046-MGM, 2017 WL 772323 (D. Mass. Feb. 28, 2017) (citing *Costerus v. Neal*, No. Civ. A 00-12156-MEL, 2001 WL 267456, at *4 (D. Mass. Mar. 9, 2001)); *cf. Lambert v. Fiorentini*, 949 F.3d 22, 28 (1st Cir. 2020) (assuming without deciding that plaintiff, a retired police officer, might have a property interest in an identification card permitting him to carry a concealed weapon across state lines).

Following the First Circuit's lead and assuming without deciding that Plaintiff had a property interest in renewal of his LTC, his "complaint makes no allegation that the state remedies available to him are constitutionally inadequate." *Lambert*, 949 F.3d at 28. "A procedural due process claim that does not 'allege the unavailability of constitutionally-adequate remedies under state law' fails." *Id.* (quoting *Rumford Pharmacy, Inc. v. City of E. Providence*, 970 F.2d 996, 999 (1st Cir. 1992)); *see also Gedeon v. City of Springfield*, 2017 WL 4212334, at *5 (recommending dismissal where the complaint "contain[ed] no allegations of any shortcomings in the provision of notice or an opportunity to be heard"). Here, "Plaintiff cannot show that he lacked an adequate postdeprivation remedy. *Gonzalez v. Dooling*, 98 F. Supp. 3d 135, 144 (D. Mass. 2015) (citing *Cronin v. Town of Amesbury,* 81 F.3d 257, 260 (1st Cir.1996)). Under Massachusetts law, "[a]n applicant aggrieved by a denial of an application for a license to carry or an FID or by its suspension or revocation may within ninety days seek review in the District Court having jurisdiction over the Town where the applicant resides." *Wesson v. Town*

14

*of Salisbury*, 13 F. Supp. 3d 171, 175 (D. Mass. 2014). "An appeal of a District Court judge's decision may be taken to the Superior Court by way of an action in the nature of certiorari pursuant to Mass. Gen. Laws ch. 249, § 4." *Id.* (citing *Godfrey v. Chief of Police of Wellesley*, 616 N.E.2d 485 (Mass. App. Ct. 1993)). The First Circuit recently held "as a matter of first impression, that Massachusetts has, in its state certiorari procedure, Mass. Gen. Laws ch. 249, § 4, provided a constitutionally adequate remedy which precludes assertion of a federal due process claim." *Lambert*, 949 F.3d at 25.

Finally, even if Plaintiff had adequately alleged a protected property interest and a constitutionally defective process, which he has not, Plaintiff has not alleged a plausible claim against Dohoney. When the Complaint is stripped to the facts that are fairly alleged, Plaintiff has claimed only that Dohoney represented Wynn in the lawsuit filed by Plaintiff to challenge the denial of the renewal of his LTC. Plaintiff has not alleged that Dohoney played any direct role in denying his renewal application. Thus, the Complaint does not state a plausible claim that Dohoney deprived Plaintiff of a property interest. *Cf. Miller v. Hamm*, Civil No. CCB-10-243, 2011 WL 9185, at *10 (D. Md. Jan. 3, 2011) (finding that the plaintiff "failed to allege sufficient facts regarding [the] City Solicitor['s] … involvement in the improper denial" of the hearing and so it was not "plausible" that the City Solicitor would "be liable in his individual capacity for depriving [the plaintiff] of a liberty interest without due process").

To the extent that Plaintiff seeks to assert a substantive due process violation, his allegations also fail to make out such a claim. Even if Plaintiff had alleged the deprivation of a property right in the denial of his LTC renewal application, which he did not, "[t]he touchstone of [substantive] due process is protection of the individual against arbitrary action of government." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). It is well-settled that

"only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). "On these pleadings, as to substantive due process, the denial of [Plaintiff's LTC] is not 'egregiously unacceptable, outrageous, or conscience-shocking.'" *Lambert*, 949 F.3d at 28 (quoting *Licari v. Ferruzzi*, 22 F.3d 344, 347 (1st Cir. 1994)).[5] Accordingly, the court recommends dismissal of Count IV against Dohoney.

      3. Count VIII – Retaliation

"[T]here is no individual employee liability under Title VII." *Fantini v. Salem State Coll.*, 557 F.3d 22, 31 (1st Cir. 2009). Because Dohoney cannot be personally liable to Plaintiff under Title VII, the court recommends dismissal of Count VIII against Dohoney.

C. State-law Claims

      1. Supplemental Jurisdiction

The termination of Plaintiff's federal claims sets the stage for the court's exercise of informed discretion to decline to adjudicate the remaining state law claims. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Robinson v. Town of Marshfield*, 950 F.3d 21, 32 (1st Cir. 2020) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966)). There are no analogues to the state-law claims in the federal-law claims that are addressed above. In these circumstances, the First Circuit has directed that the better course is dismissal of the state-law claims without prejudice. If this court has determined that

---

[5] Plaintiff alleges that Dohoney violated the Massachusetts rules of professional conduct by submitting affidavits that gave "false statements" and that were not "sworn notarized affidavits" (Compl. ¶¶ 90, 102 at 52). "[T]he Rules of Professional Conduct do not create an independent cause of action." *Melville v. Town of Adams*, 9 F. Supp. 3d 77, 85 (D. Mass. 2014) (citing *Fishman v. Brooks*, 487 N.E.2d 1377 (Mass. 1986)).

16

the federal-law claims, Counts II, III, and VIII should be dismissed, the undersigned recommends that the court decline to exercise supplemental jurisdiction over the state-law claims in Count II for violation of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H and I; Count V for intentional infliction of emotional distress; Count VI for interference with Plaintiff's rights under Mass. Gen. Laws ch. 284;[6] and Count VII for retaliation for relying on a misdemeanor conviction judgment which entered more than five years ago under Mass. Gen. Laws ch. 151B, § 4(9)(iii).  In the view of the undersigned, these claims should be dismissed without prejudice.  *See Robinson*, 950 F.3d at 32.  If the court chooses to exercise supplemental jurisdiction, the undersigned nonetheless recommends dismissal in toto based on the state-law litigation privilege.

2. Litigation Privilege

"Under Massachusetts law, an attorney's statements are absolutely privileged 'where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.'"  *Blanchette v. Cataldo*, 734 F.2d 869, 877 (1st Cir. 1984) (quoting *Sriberg v. Raymond*, 345 N.E.2d 882, 884 (Mass. 1976)).  "The privilege applies as a general bar to all civil liability based upon an attorney's statements, and it applies even if the offensive statements were uttered maliciously or in bad faith."  *Giardiello v. Marcus, Errico, Emmer & Brooks, P.C.*, 261

---

[6] Plaintiff's Complaint states that Count VI is brought pursuant to chapter 284.  However, chapter 284 was part of the 2014 Massachusetts Acts and amended the Gun Control Act, Mass. Gen. Laws ch. 140, § 121 *et seq.,* which was "[c]omprehensive new state legislation amending a variety of firearms regulations … enacted by the Commonwealth in August 2014." *Powell v. Tompkins*, 783 F.3d 332, 338 n.2 (1st Cir. 2015) ("Chapter 140 of Massachusetts General Laws requires licensing for many activities in the Commonwealth, and the regulatory scheme for firearms within that chapter is fairly extensive, incorporating various requirements for lawful possession and carrying relating to the applicant, the setting, and the usage.").  Any error by Plaintiff on this point is immaterial.

17

F. Supp. 3d 86, 99 (D. Mass. 2017) (citing *Doe v. Nutter, McClennen & Fish*, 668 N.E.2d 1329, 1332 (Mass. App. Ct. 1996)). "The litigation privilege applies to communications made preliminary to proposed judicial proceedings if judicial proceedings are contemplated in good faith and under serious consideration." *Id.* "If judicial proceedings are already underway, the privilege applies if the statements are 'pertinent' to the litigation." *Shirokov v. Dunlap, Grubb & Weaver, PLLC*, No. CIV.A. 10-12043-GAO, 2012 WL 1065578, at *22 (D. Mass. Mar. 27, 2012) (quoting *Meltzer v. Grant,* 193 F. Supp. 2d 373, 378 (D. Mass. 2002)).

"Although where the privilege attaches it is 'absolute,' whether it applies 'is determined on a case-by-case basis, after a fact-specific analysis' that considers the attorney's statements or conduct and their relationship with the underlying judicial proceeding." *Quincy Mut. Fire Ins. Co. v. Atl. Specialty Ins. Co.*, No. 18-CV-11868-ADB, 2019 WL 3409980, at *6 (D. Mass. July 29, 2019) (citing *Nutter, McClennen & Fish*, 668 N.E.2d at 1332; *Giuffrida v. High Country Inv'r, Inc.*, 897 N.E.2d 82, 98 (Mass. App. Ct. 2008)). "[A] motion to dismiss on the basis of the litigation privilege only succeeds when the entitlement to the privilege is demonstrated by the complaint itself." *Shirokov*, 2012 WL 1065578, at *23.

Here, Dohoney's entitlement to the privilege is demonstrated by the Complaint itself. Plaintiff's allegations about Dohoney's conduct are all about Dohoney's statements, in person or in correspondence, made in the course of defending the case Plaintiff filed against Wynn seeking renewal of his LTC (*see* Dkt. No. 221 at 4 (describing the allegations against Dohoney as arising from "acts and behavior in [Plaintiff's] LTC appeal in Central Berkshire District Court")). Statements made "in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding." *Sriberg*, 345 N.E.2d 883; *see also Nutter, McClennen & Fish*, 668 N.E.2d at 1333 ("the absolute privilege which

18

attaches to those statements protects the maker from any civil liability based thereon"). Stripping the complaint of conclusory and inflammatory statements, the allegations on which Plaintiff bases his claims against Dohoney are all statements made in the course of litigation. Dohoney is, therefore, entitled to the protection of the litigation privilege and the privilege applies even if the statements at issue are uttered with malice or in bad faith. *Harihar v. U.S. Bank Nat'l Ass'n*, No. 15-CV-11880-ADB, 2017 WL 1227924, at *13 (D. Mass. Mar. 31, 2017), *aff'd sub nom Harihar v. US Bank N.A.*, No. 17-1381, 2018 WL 7360636 (1st Cir. Aug. 7, 2018) (citing *Visnick v. Caulfield*, 901 N.E.2d 1261, 1264 (Mass. App. Ct. 2009)). Accepting as true Plaintiff's claims that Dohoney's statements were false and made with malice, Dohoney is still shielded from liability because Plaintiff alleges that the statements at issue were made by Dohoney in the context of defending Wynn in Plaintiff's appeal from the denial of his LTC renewal application. Accordingly, if the court exercises supplemental jurisdiction and reaches the merits of Plaintiff's state-law claims, the court recommends that those claims be dismissed as to Dohoney.

IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that the motion to dismiss by Dohoney be GRANTED as to Counts III, IV, and VIII, that these claims be dismissed with prejudice, and that the court decline to exercise supplemental jurisdiction over the remaining state-law claims in Counts II, V, VI, and VII, which should be dismissed without prejudice. In the alternative, the court recommends that Dohoney's motion to dismiss be GRANTED in its entirety.[7]

---

[7] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of service of this Report and

Dated: March 4, 2020 /s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

---

Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.