UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WALTER J. POWELL,                    )
          Plaintiff,                 )          Civil Action No. 18-30146-MGM
                                     )
          v.                         )
                                     )
MICHAEL GRADY and                    )
ANDREW COUTURE, *et al.*,             )
          Defendants.                )

REPORT AND RECOMMENDATION CONCERNING DEFENDANTS MICHAEL
GRADY AND ANDREW COUTURE'S MOTION TO DISMISS
(Dkt. No. 173)

I.     INTRODUCTION

Currently before the court is a motion to dismiss by Michael Grady ("Grady") and

Andrew Couture ("Couture") (together, "the Union Defendants") seeking dismissal of the claims

asserted against them in the April 8, 2019 amended complaint ("Complaint") filed by plaintiff

Walter J. Powell ("Plaintiff") (Dkt. No. 158).  The motion has been referred to the undersigned

for report and recommendation (Dkt. No. 234).  *See* 28 U.S.C. § 636(b)(1)(B).  The court heard

argument on the Union Defendants' motion (and others brought by other defendants) on

November 1, 2019.  For the reasons set forth below, the court recommends that the motion be

GRANTED.

II.    BACKGROUND

Plaintiff was terminated from his employment as a Pittsfield police officer on March 21,

1991 (Compl. ¶ 17).  He filed suit alleging racial discrimination by the City of Pittsfield ("the

City"), which settled in September 1993 (Compl. ¶¶ 20-21).  The settlement "called for a

payment of $81,000 and [Plaintiff's] reinstatement to the Pittsfield police department."  *Powell v.*

*City of Pittsfield*, 221 F. Supp. 2d 119, 121 (D. Mass. 2002). Plaintiff was finally reinstated as a Pittsfield police officer effective May 20, 1996 (Compl. ¶ 23). In 1997, Plaintiff filed suit against the City and two of its officials, Edward Reilly and Kathleen Alexander, alleging retaliation, disability discrimination, and contract violation for failure and refusal to honor the terms of the 1993 settlement agreement. *Id.* Following a bench trial, the court found the defendants liable to Plaintiff and awarded damages for lost wages, emotional distress, and attorneys' fees. Because Plaintiff "was unable to provide documentation or clear testimony about his damages from lost benefits or retirement earnings," the court did not supplement the award for lost wages "to reflect any such losses." *Id.* at 151.[1]

III.   ALLEGATIONS AND CLAIMS IN 2019 COMPLAINT CONCERNING
          GRADY AND COUTURE

Plaintiff alleges that Grady is a captain in the Pittsfield Police Department ("PPD") and vice president of the police supervisors' union, IBPO, Local 447S ("the Union"), and that Couture is a detective in the PPD and president of the Union. Stripped of conclusory statements and allegations that are not relevant to Plaintiff's claims against the Union Defendants, the Complaint, supplemented by the exhibits attached to the Plaintiff's initial complaint (filed on September 6, 2018) and by agreement of the parties incorporated by reference into the operative Complaint,[2] alleges that Grady, as Plaintiff's Union representative, did not adequately advocate

---

[1] It follows that Plaintiff's obsessively reiterated claim that Grady and others are in contempt of the court's 2002 judgment because Plaintiff was not made whole after his reinstatement as a Pittsfield police officer for the benefits he lost is wrong (e.g., Dkt. No. 190 at 7). Plaintiff sought to recover lost benefits and retirement earnings in the case he filed in 1997. The court explicitly *declined* to award any such relief in its 2002 judgment. Neither Grady nor any other individual or entity can be in contempt of the court's judgment for failing to provide relief to which Plaintiff was not entitled under that judgment.

[2] On April 2, 2019, Judge Mastroianni granted Plaintiff's motion for leave to file an amended complaint (Dkt. No. 136) and cautioned that the amended complaint would "'supersede[]' both the original and supplemental complaint" (Dkt. No. 152 (quoting *Connectu LLC v. Zuckerberg*,

for Plaintiff for the benefits he lost for the five years he was not employed as a Pittsfield police officer and that, in 2018, Grady was overheard saying that the City was reducing the number of overtime hours retired officers could work.  Plaintiff's claims against Couture are based on the allegation that Couture impermissibly delayed filing a grievance on Plaintiff's behalf seeking a determination that a knee injury he sustained in 2015 on his way to work qualified as an on-the-job injury.

Turning to the specifics, in August 2003, Grady, in his capacity as a Union representative, agreed with the City that Plaintiff would be credited with 35 sick days for the five-year period when he was not employed as a City police officer rather than the full complement of 70 days to which Plaintiff claims to be entitled (Compl. ¶ 23).  The settlement did not provide for other lost benefits or retirement earnings for the period.  On August 29, 2003, Plaintiff signed the memorandum of understanding reflecting these terms (Exh. B, Dkt. No. 1-1 at 39).  Plaintiff further alleges that the City subsequently rewarded Grady for his "questionable behavior and actions which clearly appear[ed] to have been to assist the Pittsfield Police Department and the City of Pittsfield in violation of his duties as the Union President" (Compl. ¶ 23).  Plaintiff's subsequent attempts to obtain relief from the City in December 2009 were unsuccessful (Compl. ¶¶ 25-27).

As noted above, the only other factual allegation in the Complaint of conduct by Grady is that he was overheard saying that the City was going to limit the outside overtime that retired officers could work (Compl. ¶ 80).

---

522 F.3d 82, 91 (1st Cir. 2008)).  On April 8, 2019, Plaintiff filed his amended complaint (Dkt. No. 158), which included some exhibits and referenced many exhibits that were filed with the original complaint (Dkt. No. 1).  At the November 1, 2019 hearing on the referred motions (Dkt. No. 344), all parties agreed that the exhibits attached to the first complaint were incorporated by reference into the Complaint.

As to Couture, Plaintiff alleges that he injured his left knee while on his way to work in October 2015 (Compl. ¶ 33).  Plaintiff expected this injury to qualify for "injured on duty" ("IOD") status based on a "portal to portal" rule that, he alleges, was applied to the benefit of white officers, but was not applied in his case (Compl. ¶ 36).  On October 26, 2015, Plaintiff communicated with Couture and three other union representative and requested that the Union file a grievance based on the failure to classify his injury as having occurred on the job.  Plaintiff reached out to Couture again on December 2 and 6, 2015, asking when the Union would act on his behalf (Compl. ¶¶ 38-39).

On January 12, 2016, Plaintiff asked Couture why, three months after his injury, the Union had yet to file a grievance on his behalf and indicated that he was being financially harmed by the delay (Compl. ¶ 41).  When, on January 14, 2016, Plaintiff renewed his demand for action, Couture allegedly admitted that he had not yet filed a grievance on Plaintiff's behalf and indicated he was seeking guidance on the issue.  Plaintiff reiterated his question to Couture on January 21 and 31, 2016 (Compl. ¶¶ 45, 49).

On February 9, 2016, some three-and a-half months after Plaintiff's injury, the Union filed a grievance on Plaintiff's behalf with PPD Chief Michael J. Wynn ("Wynn"), who denied the grievance the same day (Compl. ¶ 51).  On February 10, 2016, a union steward initiated the third step of the grievance process.  On February 22, 2016, Plaintiff received a letter from the "MIIA Senior Claims Representative" notifying Plaintiff that the portal to portal rule for covered injuries, though used in the past, was no longer in effect (Compl. ¶ 53).  On March 2, 2016, Plaintiff responded that denial of his claim constituted a violation of the collective bargaining agreement ("CBA"), was retaliatory, and that he was being discriminated against based on his race (Compl. ¶ 55).

4

On April 14, 2016, Plaintiff personally filed a grievance with Wynn (Compl. ¶ 56).  On April 15, 2016, Plaintiff went to work and discovered that all of the sick and vacation time he had used while recovering from his October 2015 knee injury had been restored to him (Compl. ¶ 57).

On April 27, 2016, the Union and the City settled Plaintiff's grievance.  Plaintiff was out of work from October 26, 2015, the date of his injury, through March 1, 2016, when he was cleared to return to work.  The settlement treated Plaintiff as having been at full pay status during his sick leave, reimbursed him for co-pays for treatment of the injury, and reimbursed him for taxes withheld from his biweekly payroll check during his absence (Exh. C 7, Dkt. No. 1-1 at 55).  Plaintiff alleges that the document memorializing this settlement, which Plaintiff did not sign, was a "fraud" and something he had never heard of or seen (Compl. ¶ 54).  Plaintiff alleges that it was the grievance he personally filed on April 14, 2016, that earned him relief (Compl. ¶ 57).

On the basis of these allegations, Plaintiff's Complaint asserts claims against the Union Defendants under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H and I (Count II); for conspiracy in violation of 42 U.S.C. § 1985 ("§ 1985") (Count III); for deprivation of civil rights in violation of 42 U.S.C. § 1983 ("§ 1983") (Count IV), and for intentional infliction of emotional distress (Count V).[3]

IV.    STANDARD OF REVIEW

---

[3] Plaintiff contends in his opposition to the Union Defendants' motion to dismiss that he asserted claims against the Union Defendants under the Massachusetts Whistleblower Act, Mass. Gen. Laws ch. 149, § 185, in Count I of the Complaint.  He is wrong; Count I only states a claim against the City (Compl. at 55).

To survive a motion to dismiss, a "complaint must contain enough factual material to raise a right to relief above the speculative level … and state a facially plausible legal claim," *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true all well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's favor." *Id*. (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)).  To assess whether a complaint meets this standard, courts employ a two-step approach.  *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *A.G. ex. rel. Maddox v. Elsevier, Inc*., 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted). Second, [the court] "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108.  "[T]he complaint should at least set forth minimal facts as to who did what to whom, when, where and why," and "courts should … 'eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets.'" *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)).  "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)), but a *pro se* complaint should be dismissed if "a lenient construction demonstrates beyond doubt that the plaintiff can prove no set of facts to support her claim for relief," *Rockwell v. Cape Cod Hosp*., 26 F.3d 254, 260 (1st Cir. 1994).

V.   <u>ANALYSIS</u>

A.  Claims Related to Plaintiff's Lost Retirement Time are Barred by
     the Statute of Limitations

Grady argues that claims based on Plaintiff's loss of retirement credit are barred by the

statute of limitations (Dkt. No. 174 at 6-9).  To the extent Plaintiff's claims are based on this loss

of retirement credit, they are plainly barred by the statute of limitations and should be dismissed.

Under Massachusetts law, claims brought under the MCRA and for personal injury, including

intentional infliction of emotional distress, are subject to a three-year statute of limitations.

Mass. Gen. Laws ch. 260, §§ 2A, 5B; *Mellinger v. Town of W. Springfield*, 515 N.E.2d 584, 587

(Mass. 1987) (claims under § 1983 and for intentional infliction of emotional distress are subject

to a three-year limitation period under Massachusetts law); *McGunigle v. City of Quincy*, Civil

Action No. 12-10852-JLT, 2013 WL 3892901, at *2 & n.15 (D. Mass. July 25, 2013).  Claims

brought pursuant to § 1983 and § 1985 borrow the forum state's statute of limitations for

personal injury claims.  *See Rodríguez–García v. Municipality of Caguas,* 354 F.3d 91, 96 (1st

Cir. 2004) ("Sections 1981, 1983, and 1985 borrow the forum state's statute of limitations for

personal injury claims." (citing *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660–62 (1987);

*Wilson v. Garcia,* 471 U.S. 261, 277–280 (1985); *Chappell v. Rich,* 340 F.3d 1279, 1283 (11th

Cir. 2003))).[4]

---

[4]  "A hybrid Section 301/fair representation claim, is 'one in which the plaintiff has a cause of
action against both the employer and the union.'"  *Mason v. Cent. Mass Transit
Mgmt./Worcester Reg'l Transit Auth.*, 394 F. Supp. 3d 166, 171 (D. Mass. 2019).  Arguably,
Plaintiff's claims against the Union Defendants are hybrid Section 301/fair representation claims,
because Plaintiff alleges that the Union Defendants failed to provide him with fair representation
and that the City violated the CBA.  *Id.*  To the extent that is the case, the claims related to events
in 2003 and 2015 would be subject to a six-month statute of limitations.  *Id.* at 172.  Because the
Union Defendants have not asserted this statute of limitations and Plaintiff has not had an
opportunity to respond on the issue, the court does not base its recommendation concerning these
claims on the Section 301/fair representation statute of limitations.

Apparently anticipating an argument that his claims based on his loss of retirement credit and other benefits arising from the termination of his employment in 1991 might be time barred, Plaintiff contends in his opposition to the Union Defendants' motion to dismiss that his claims survive under the continuing violations doctrine (Dkt. No. 190 at 29-31; Compl. ¶ 22).  This court disagrees.  "Under this continuing violation doctrine, a plaintiff who ordinarily would be unable to recover damages for discrete acts of discrimination falling outside the limitations period may avoid that bar if those acts are shown to be part of a pattern of discrimination anchored by acts that occurred within the limitations period."  *Kahriman v. Wal-Mart Stores, Inc.*, 115 F. Supp. 3d 153, 161 (D. Mass. 2015) (citing *Noviello v. City of Boston,* 398 F.3d 76, 86 (1st Cir. 2005)).

> Traditionally we have recognized that "[c]ontinuing violations may be serial or systemic" and have distinguished between such violations.  *Id.*  "Systemic violations occur where an employer maintains a discriminatory policy, responsible for multiple discriminatory acts that fall outside the limitations period."  *Rivera–Rodriguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 21 (1st Cir. 2001) (citing *Pilgrim v. Trustees of Tufts Coll.,* 118 F.3d 864, 869 (1st Cir.1997)).  On the other hand, there is a serial violation "where the plaintiff experiences a number of discriminatory acts arising from the same discriminatory animus."  *Id.* at 22.

*Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 405 (1st Cir. 2002).  While Plaintiff tries to frame his claim based on lost retirement and other benefits as part of a hostile work environment claim continuing into the present, the continuing violation doctrine "applies only to claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim."  *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015).  "The continuing violation doctrine simply 'allow[s] suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought.'"  *Id.* (quoting *Morales–Tañón v. P.R. Elec. Power Auth.,* 524 F.3d 15, 19 (1st Cir. 2008)).  "Where there are discrete acts of

discrimination, the statute of limitations bars challenges to older employment practices regardless of any relationship among them." *Garcia-Ledesma v. Centro*, 916 F. Supp. 2d 161, 171 (D.P.R. 2012). Plaintiff's claimed loss of retirement benefits is such a discrete act of alleged discrimination. "The statute of limitations begins to accrue at the time the Plaintiff knows or should have known of the harm suffered as a result of the employer's discriminatory [or retaliatory] conduct," *MacDonald v. Town of Upton*, 297 F. Supp. 3d 209, 212 (D. Mass. 2018) (citing *Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination*, 808 N.E.2d 257, 265-66 (Mass. 2004)), which, as to Plaintiff's alleged lost benefits, was on or around August 29, 2003 when the Union and the City reached an agreement which Plaintiff signed (Exh. B, Dkt. No. 1-1 at 39). Plaintiff had, at most, three years from the date of the settlement agreement to file any claims he had premised on the Union's alleged failure to protect his rights adequately in 2003.

Taking as true Plaintiff's allegation about Grady's 2018 comment that the City would be limiting the overtime of retired police officers (Compl. ¶ 80), Plaintiff's reliance on this allegation to save his claims against Grady is unavailing. Plaintiff has not sufficiently alleged any connection between the Union's 2003 settlement of his claim for lost benefits and Grady's alleged statement in 2018.[5] *See Seniorlink Inc. v. Landry*, No. 19-CV-11248-DJC, 2020 WL 731172, at *4 (D. Mass. Feb. 13, 2020) (continuing violations doctrine does not apply where there is no showing that "any timely discriminatory act has a substantial relationship to an untimely discriminatory act"). The continuing violations doctrine "is not truly 'about a

---

[5] It is not clear whether Plaintiff seeks recovery against Grady based on this comment on some theory independent of what occurred in 2003. The court cannot discern a basis for a claim against Grady based on a comment overheard by a third party that was directed at all retired PPD officers and did not single out Plaintiff. Moreover, nothing about the comment suggests that Grady was responsible for the purported change in policy.

continuing [violation], but about a cumulative violation.'" *Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 205 (1st Cir. 2015) (quoting *Limestone Dev. Corp. v. Vill. of Lemont, Ill.,* 520 F.3d 797, 801 (7th Cir. 2008)). "The doctrine does not apply … to allow the late filing of a claim based on a discrete discriminatory act that occurs on a specific day, and thus does not permit a plaintiff "to avoid filing suit so long as some person continues to violate his rights[.]" *Id.* (quoting *Pérez–Sánchez v. Pub. Bldg. Auth.,* 531 F.3d 104, 107 (1st Cir. 2008)). Even if the court could draw some adverse inference from Grady's statement in 2018, which it cannot, the 2003 agreement was a discrete act, and an unrelated comment in 2018, which was not directed at Plaintiff personally, cannot rescue Plaintiff's untimely claims premised on Grady's acts in 2003.

Assuming that the continuing violation doctrine applies under §§ 1983 and 1985, the MCRA, and to claims for intentional infliction of emotional distress, when a plaintiff relies on a discrete act such as the Union's 2003 resolution of the question of the benefits owed to that individual, the same controlling case law precludes Plaintiff from invoking that doctrine as to any of his claims against Grady for the reasons set forth above.

For the foregoing reasons, the court recommends that all of Plaintiff's claims against Grady be dismissed as barred by the applicable statutes of limitations.

> B. The Complaint Fails to State Cognizable Claims Against the Union Defendants

Even if Plaintiff's claims against Grady were not barred by the applicable statutes of limitations, which they are, all of Plaintiff's claims against the Union Defendants are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

> 1. Federal Claims

>> a. Count III -- § 1985

To state a claim for a conspiracy to deprive Plaintiff of his constitutional rights pursuant to 42 U.S.C. § 1985(2), his claim must contain four elements: "(1) a conspiracy between two or more persons, (2) to impede, hinder, obstruct, or defeat, in any manner, the due course of justice in any State, (3) with invidiously discriminatory animus, (4) which results in injury to plaintiff." *Bolduc v. Town of Webster*, 629 F. Supp. 2d 132, 150–51 (D. Mass. 2009) (citing *Greco v. Fitzpatrick,* 1995 WL 373108, at *1 (1st Cir. June 23, 1995)).  To state a claim for a conspiracy to deprive Plaintiff of his constitutional rights pursuant to 42 U.S.C. § 1985(3), his claim "must contain four elements.  First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right." *Perez-Sanchez*, 531 F.3d at 107 (citing *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996)).  As with a claim brought under § 1985(2), a § 1985(3) claim also requires that "the conspiratorial conduct of which [Plaintiff] complains [be] propelled by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 178 (D. Mass. 2013) (quoting *Aulson*, 83 F.3d at 3) (internal quotations omitted).  Conspiracy allegations under § 1985 must "be supported by material facts, not merely conclusory statements." *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980).

Plaintiff has not specified under which subsection of § 1985 he is proceeding.[6]  Viewing the allegations in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, Plaintiff has failed to state a claim for conspiracy against the Union Defendants under

---

[6]  Subsection (1) of § 1985 is inapplicable, as it prohibits a conspiracy directed at an officer of the United States, such as a conspiracy to prevent such an officer from performing the duties required to be performed as a function of his or her office.

either subsection.  The Complaint baldly alleges that the Union Defendants conspired with others to retaliate and discriminate against Plaintiff for his "reports, objections, complaints and speech about violations of the laws by the Defendants" (Compl. ¶ 118).  Plaintiff maintains that Grady's negotiation and settlement concerning Plaintiff's lost benefits in 2003 and Couture's alleged delay in 2015 and 2016 in filing a grievance challenging the denial of his injured on duty status constitute a breach of their duty of fair representation and were part of an overall conspiracy against Plaintiff based on his race (Compl. ¶¶ 23, 38, 55, 57).  "Although a *pro se* complaint is construed liberally, [when Plaintiff's] allegations are no more than 'bald assertions' [the Complaint] cannot survive a motion to dismiss." *Baxter v. Conte*, 190 F. Supp. 2d 123, 128 (D. Mass. 2001).  Here, Plaintiff has "not alleged any facts to show a conspiracy" among the two Union Defendants or among the Union Defendants and the other individuals named in the Complaint. *Burbank v. Town of Hubbardston*, 146 F. Supp. 3d 402, 405 (D. Mass. 2015). "Without direct evidence of such an agreement – and none exists here – the plaintiff must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019).  "[Plaintiff's] complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)." *Id.*  "[S]ubsection 1985(2) applies to 'conspiracies,' not to individual actions." *Irizarry v. Quiros*, 722 F.2d 869, 872 (1st Cir. 1983).  "[Plaintiff's] conclusory statements that [the Union Defendants were participating in] a vendetta against him fail to allege the essential elements of a § 1985(3) claim." *Baxter*, 190 F. Supp. 2d at 129 (citing *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34-35 (1st Cir. 1996)); *see Bolduc*, 629 F. Supp. 2d at 151 (facts supporting a finding that one defendant initiated a series of acts targeting the plaintiff

did not provide a reason to believe that the defendant agreed with another to continue that conduct).

It cannot reasonably be inferred from the Complaint that the acts Plaintiff alleges the Union Defendants committed in their capacity as Plaintiff's union representatives – even assuming that those actions were somehow deficient or ineffective – were part of an illicit agreement to retaliate against Plaintiff or deprive him of his constitutional rights.  Plaintiff's dissatisfaction with the result the Union obtained for him in 2003 is not sufficient to raise an inference of conspiracy where the only fact he has alleged to show a conspiracy is that, at some unspecified point in time after 2003, Grady was promoted (Compl. ¶ 23).  Plaintiff has not alleged any facts that connect his allegations about delay by the Union in 2015, which he lays at Couture's door, to a broader agreement with other defendants to discriminate or retaliate against him.  *See Hayward v. Mass.*, No. 16-CV-30046-MGM, 2016 WL 11189805, at *13 (D. Mass. Nov. 14, 2016), *report and recommendation adopted,* No. 16-30046-MGM, 2017 WL 772323 (D. Mass. Feb. 28, 2017) ("The complaint is devoid of the requisite particular facts from which it could reasonably be inferred that any of these three officers, or any others, agreed to deprive Plaintiff of his constitutional rights or that the officers communicated or cooperated in furtherance of this goal.")

Accordingly, the court recommends dismissal of Count III against the Union Defendants.

### b.   Count IV -- § 1983

"[S]ection 1983 authorizes suits against 'persons' but 'neither a State nor its officials acting in their official capacities are "persons" under § 1983.'"  *Taite v. Bridgewater State Univ.*, 236 F. Supp. 3d 466, 481 (D. Mass. 2017) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S.

58, 71 (1989)).  Accordingly, Plaintiff's §1983 claims should be dismissed as to the Union

Defendants in their official capacities.

"To state a claim under Section 1983, a plaintiff must show [1] that the challenged

conduct was committed by a person acting under color of state law and [2] that the conduct

worked a deprivation of rights, privileges, or immunities secured by the Constitution or federal

law."  *Diaz v. Devlin*, 229 F. Supp. 3d 101, 109 (D. Mass. 2017) (citing 42 U.S.C. § 1983; *Soto*

*v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)).

i.   State Actor

Plaintiff's claim fails at the first step because, unless an exception applies, the Union

Defendants are not state actors.  *Mason v. Cent. Mass Transit Mgmt./Worcester Reg'l Transit*

*Auth.*, 394 F. Supp. 3d 166, 173 (D. Mass. 2019).

> "To act under color of state law for [Section] 1983 purposes does not require that
> the defendant be an officer of the state." *Dennis v. Sparks*, 449 U.S. 24, 27
> (1980).  However, the alleged misconduct resulting in a deprivation of a
> plaintiff's rights must be fairly attributable to the State. *See Lugar v. Edmondson*
> *Oil Co., Inc.*, 457 U.S. 922, 937 (1982).  "Significantly, [Section] 1983 does not
> apply to merely private conduct, no matter how discriminatory or wrongful."
> *Grapentine [v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014)] (quoting
> *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) (internal
> quotations omitted).

*Quiñones v. P.R. Elec. Power Auth.*, 199 F. Supp. 3d 474, 491 (D.P.R. 2016).  "Labor Unions …

are not state actors."  *Mason*, 394 F. Supp. 3d at 173 (citing *Hovan v. United Bhd. of Carpenters*

*& Joiners,* 704 F.2d 641, 642-645 (1st Cir. 1983)).  However, "a private party [still] can be fairly

characterized as a state actor if the circumstances of the case meet one of three tests: the public

function test, the joint action/nexus test, or the state compulsion test.'" *Grapentine*, 755 F.3d at

32 (quoting *Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto,* 522 F.3d 1,

4 (1st Cir. 2008)).

"An actual conspiracy between a state [official] and a party attempting a plainly

prohibited act would constitute 'state action.'" *Casa Marie, Inc. v. Superior Court of P.R. for

Dist. of Arecibo*, 988 F.2d 252, 259 (1st Cir. 1993).  "The public function [test] is designed to

flush out a State's attempt to evade its responsibilities by delegating them to private entities."

*Perkins v. Londonderry Basketball Club,* 196 F.3d 13, 18–19 (1st Cir. 1999).  "With respect to a

claim of joint action with state officials, it is sufficient if the defendant 'is a willful participant in

joint activity with the State or its agents.'" *Perkins*, 969 F. Supp. 2d at 182 (citing *Casa Marie,

Inc.,* 988 F.2d at 259).  "[U]nder the state compulsion test … the state action requirement has

been satisfied when a plaintiff demonstrates that 'the state has exercised coercive power or has

provided such significant encouragement, either overt or covert, that the [challenged conduct]'

must be attributed to the state."  *Grapentine*, 755 F.3d at 33 (quoting *Alberto San, Inc.*, 522 F.3d

at 4).

> A plaintiff may demonstrate state action by showing that a private party has
> conspired with state actors to deprive him of a civil right. *See Dennis v. Sparks*,
> 449 U.S. 24, 27 (1980). To plead such a conspiracy under § 1983, however, a
> plaintiff must allege "the relationship or nature of cooperation between the state
> and a private individual ... in some detail." *McGillicuddy v. Clements*, 746 F.2d
> 76, 77 (1st Cir. 1984) (internal quotation marks omitted). That includes alleging
> "the essential allegation of an agreement among" the alleged conspirators.
> *Tavares v. Gelb*, 15–cv–130000–FDS, 2016 WL 6518428, at *9 (D. Mass. Nov.
> 2, 2016).

*Carney v. Town of Weare*, No. 15-CV-291-LM, 2017 WL 680384, at *14 (D.N.H. Feb. 21,

2017).

While Plaintiff has alleged his dissatisfaction with the Union Defendants' actions on his

behalf, he has not alleged details in the Complaint about a cooperative relationship between the

Union Defendants and city officials sufficient to permit an inference of state action by the Union

Defendants.  In other words, he has not alleged facts from which a reasonable inference could be

drawn that the Union Defendants were doing the City's bidding in their actions vis-à-vis Plaintiff's employment benefits and IOD status.  He has included a speculative assertion about a promotion for Grady subsequent to the agreement about restoration of some of his sick time. This vague and conclusory assertion does not pass muster.  Additionally, he has pointed to no reason why the alleged delay by Couture in filing a grievance would have been in cooperation with the City.  *See Grapentine*, 755 F.3d at 32 (concluding that the plaintiff "fail[ed] to carry her burden here, as her complaint does not set forth any allegations of state action"); *see also Storlazzi v. Bakey*, 894 F. Supp. 494, 501 (D. Mass.), *aff'd,* 68 F.3d 455 (1st Cir. 1995) (holding that, because the plaintiff "failed to show the required nexus between the private actors and the state actors, his claim for relief against the Union defendants must fail").  For the foregoing reasons, the court recommends dismissal of Count IV as to the Union Defendants on the further basis that they are not state actors.  The analysis could end here.  There are, however, as is addressed below, other deficiencies in the claims Plaintiff seeks to assert against the Union Defendants

"The [next] step in the analysis of a § 1983 claim 'is to identify the specific constitutional right allegedly infringed.'"  *Murphy v. Baker*, Civil Action No. 15-30187-MGM, 2017 WL 2350246, at *2 (D. Mass. May 4, 2017), *report and recommendation adopted*, 2017 WL 2363114 (D. Mass. May 30, 2017) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).  The Complaint alleges violations of Plaintiff's rights to free speech, due process, and to petition and seek redress from "Government abuse" as bases for his § 1983 claims (Compl. ¶ 120).  Plaintiff has not identified the factual bases for the alleged deprivation of these rights and "it is difficult to cull out the relevant information forming the basis of liability."  *Baams v. Coakley*, Civil Action No. 13-13115-DJC, 2013 WL 6815014, at *3 (D. Mass. Dec. 23, 2013).  The court has done its

best to draw all reasonable inferences in Plaintiff's favor as to the rights that Plaintiff asserts were violated.

ii.   Deprivation of Right: First Amendment Claim

"The Supreme Court has … identified 'the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation – and their ideas from suppression – at the hand of an intolerant society.'" *Powell v. Alexander*, 391 F.3d 1, 16 (1st Cir. 2004) (quoting *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357 (1995)). "[I]n the public employment context, … under the First Amendment, there is both a free speech aspect and a right to petition aspect to claims of retaliation against the filing of lawsuits." *Rosado-Quinones v. Toledo*, 528 F.3d 1, 6 (1st Cir. 2008); *Fabiano v. Hopkins*, 245 F. Supp. 2d 305, 310 (D. Mass.), *aff'd*, 352 F.3d 447 (1st Cir. 2003) ("Generally speaking, the First Amendment guarantees the fundamental right to file a lawsuit, as well as to engage in constitutionally protected speech." (citing *Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731, 741 (1983))). The Supreme Court has further recognized that the right to petition all branches of government is protected by the First Amendment. *Powell*, 391 F.3d at 16. "Claims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." *Id.*

"[T]o prevail on a § 1983 claim of retaliation for First Amendment activity, a plaintiff must show: (1) that his conduct was constitutionally protected, and (2) that this conduct was a substantial factor or a motivating factor for the defendant's retaliatory decision." *Rosaura Bldg. Corp. v. Municipality of Mayaguez*, 778 F.3d 55, 66 (1st Cir. 2015) (citing *Pierce v. Cotuit Fire Dist.,* 741 F.3d 295, 302–03 (1st Cir. 2014)). To make out a claim of a violation of the right to petition, "a plaintiff must allege that the defendant was responsible for or took actions that hindered the plaintiff's efforts to pursue a legal claim." *Muldoon v. Dep't of Correction*, No. 15-

17

CV-13892-DJC, 2017 WL 506250, at *4 (D. Mass. Feb. 7, 2017) (citing *Boivin v. Black*, 225 F.3d 36, 43 n.5 (1st Cir. 2000)).  To make out a claim for violation of his right to free speech, Plaintiff must "establish that [he] was speaking 'as a citizen on a matter of public concern'" and that his First Amendment right outweighed the government's interest in the matter at issue. *Rosaura Bldg. Corp.*, 778 F.3d at 66-67 (quoting *Díaz–Bigio v. Santini,* 652 F.3d 45, 51 (1st Cir. 2011)).  "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."  *Connick v. Myers*, 461 U.S. 138, 146 (1983).  Finally, for both the free speech and right to petition claims, "in order to meet the motivation prong, a plaintiff must produce 'sufficient direct or circumstantial evidence' that his constitutionally protected conduct was the driving factor that caused the retaliation."  *Rosaura Bldg. Corp.*, 778 F.3d at 67 (quoting *Díaz–Bigio,* 652 F.3d at 51).

Plaintiff has not connected the acts of the Union Defendants about which he complains to constitutionally protected conduct.  Plaintiff appears to argue that his 1997 lawsuit against the City and his complaints about Wynn's denial of his IOD status constitute the necessary constitutionally protected conduct.  But he has not alleged facts from which an inference could be drawn that the Union Defendants were retaliating against him for this conduct.  Moreover, this speech is directed "*solely* [at] resolv[ing] Plaintiff's personal concerns."  *Vickowski v. Hukowicz*, 201 F. Supp. 2d 195, 207 (D. Mass. 2002).  It appears from the Complaint that Plaintiff aggressively challenged the position that the portal-to-portal rule might no longer apply for IOD status and believed that such a position violated the CBA (Compl. ¶ 55), but this was not an issue of "inherent public concern" such that his speech about this matter would be protected

by the First Amendment. *Perkins*, 969 F. Supp. 2d at 172 (whether speech is a matter of public concern is an issue of law to be decided by the court; a plaintiff's letter about exempting a fire chief from mandatory retirement laws was not a matter of public concern, in part because the plaintiff did not express his view in a public forum). *See also Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 593 F.3d 196, 204 (2d Cir. 2010) (concluding that, because the "lodging of a union grievance is not a form or channel of discourse available to non-employee citizens," the plaintiff's "grievance filing … lacked a relevant analogue to citizen speech and "retain[ed no] possibility" of constitutional protection" (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006))). The question of Plaintiff's entitlement to sick pay is similarly a matter of purely personal concern.

Plaintiff also has not alleged that he was denied the ability to pursue a legal claim or seek redress from the government. It is apparent from the Complaint that, notwithstanding his signature on the 2003 agreement, Plaintiff now feels strongly that the Union should have obtained a better result for him and that he persistently pursued the Union to file a grievance on his behalf in 2015. But, Plaintiff has not alleged that the Union Defendants' actions "hindered the plaintiff's efforts to pursue a legal claim." *Muldoon*, 2017 WL 506250, at *4. *See Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649, 660 (1st Cir. 1997) ("[W]hile there is a constitutional right to court access, there is no complementary constitutional right to receive or be eligible for a particular form of relief."). Plaintiff has not alleged that the Union interfered with his access to the state or federal court or the Massachusetts Commission Against Discrimination, nor, according to the Complaint, did the union interfere with his personally filing a grievance with Wynn in 2016 concerning his IOD status (Compl. ¶¶ 56-57).

Even if Plaintiff had adequately alleged speech on a matter of public concern, which he has not, *cf. Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 141–42 (1st Cir. 2016) (assuming that "the plaintiffs' petitioning and speech were constitutionally protected" where it was clear that the plaintiffs could not "satisfy the second prong of the test – establish[ing] a causal connection between the protected conduct and the alleged retaliatory response"), Plaintiff's § 1983 claim for retaliation for the exercise of his First Amendment rights fails because his Complaint does not support a fact-based inference that the actions taken by the Union Defendants were anything other than routine actions taken as part of their responsibilities as union representatives. *See Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (affirming dismissal of the plaintiff's First Amendment retaliation claim for failure to state a claim because a court does not credit "bald assertions, unsupportable conclusions, and opprobrious epithets" as adequately pleading that the adverse action taken against the plaintiff was undertaken with a retaliatory motive). Stripping the Complaint of its conclusory statements, Plaintiff has alleged that Grady, in his capacity as a Union negotiator, worked out a deal with the City to award Plaintiff 35 sick days for the period when he was not employed at a City police officer. Plaintiff has not alleged any facts to support an inference that the settlement Grady negotiated – which Plaintiff signed – was in retaliation for Plaintiff's suit against the City. Plaintiff has alleged that Couture, in his capacity as Union president, failed to act promptly on Plaintiff's request that a grievance be filed. Again, Plaintiff has not alleged facts that would support an inference that the delay was causally connected to Wynn's decision to reject the grievance, nor can the court draw a reasonable inference that Couture's actions were retaliatory because Plaintiff spoke out against the possible discontinuation of the portal-to-portal rule. *See Najas Realty, LLC,* 821 F.3d at 143 (affirming judgment on the pleadings where the allegations

led to the conclusion that the public official the plaintiffs alleged had retaliated was doing nothing more than fulfilling his duty); s*ee also Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 534 (1st Cir. 2011) (the Supreme Court has found insufficient for purposes of stating a claim "'unadorned, the-defendant-unlawfully-harmed-me accusation[s]'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

In this court's view, the Complaint fails to state a claim against the Union Defendants for violation of Plaintiff's First Amendment rights.

### iii.  Deprivation of Due Process

"To establish a procedural due process claim under 42 U.S.C. § 1983, Plaintiff[] 'must identify a protected liberty or property interest ... and allege that the defendants, acting under color of state law, deprived him of that ... interest without constitutionally adequate process.'" *I.U. by Roy v. Pioneer Valley Chinese Immersion Charter Sch.*, No. 14-CV-12709-MAP, 2016 WL 8679257, at *7 (D. Mass. June 10, 2016), *report and recommendation adopted*, 2016 WL 4792182 (D. Mass. Sept. 14, 2016) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006)).  "[I]t is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Gedeon v. City of Springfield*, No. 16-CV-30054-MGM, 2017 WL 4212334, at *5 (D. Mass. Feb. 24, 2017) (quoting *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010)).

"A procedural due process claim that does not 'allege the unavailability of constitutionally-adequate remedies under state law' fails."  *Lambert v. Fiorentini*, 949 F.3d 22, 28 (1st Cir. 2020) (quoting *Rumford Pharmacy, Inc. v. City of E. Providence*, 970 F.2d 996, 999 (1st Cir. 1992)); *see also Gedeon*, 2017 WL 4212334, at *5 (recommending dismissal where the complaint "contain[ed] no allegations of any shortcomings in the provision of notice or an

opportunity to be heard").  Because Plaintiff did not allege "that the grievance/arbitration procedure under the CBA was inadequate or that the [defendant] did not follow it," he has failed adequately to allege a due process claim under § 1983.  *Weber v. Potter*, 338 F. Supp. 2d 600, 608 (E.D. Pa. 2004).  As to Grady, Plaintiff has provided no information as to whether he, or the union on his behalf, invoked the grievance procedure under the CBA regarding the benefits he lost for the period during which he was unemployed.  Nor has Plaintiff alleged a plausible claim as to Couture.  While a "sufficiently egregious delay in processing or awarding an entitlement may constitute a remediable constitutional violation," *Machado v. Leavitt*, 542 F. Supp. 2d 185, 194 (D. Mass. 2008) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 547 (1985)), Plaintiff has not alleged that the delay "worked a deprivation of rights, privileges, or immunities secured by the Constitution or federal law." *Diaz*, 229 F. Supp. 3d at 109.  Union members do not have a right to the grievance process they envision, as unions are "accorded considerable discretion in dealing with grievance matters." *Ayala v. Union de Tronquistas de P.R., Local 901*, 74 F.3d 344, 346 (1st Cir. 1996).  The delay in filing a grievance on behalf of Plaintiff cannot itself be the deprivation, and Plaintiff must allege some other right or privilege of which he was deprived.  Even crediting Plaintiff's assertion that his sick and vacation time was restored because of his own advocacy, the allegations in the complaint do not plausibly state a claim that Couture's actions deprived Plaintiff of a property interest.[7] *Cf. Weber v. Potter*, 338 F. Supp. 2d 600, 608 (E.D. Pa. 2004) ("[I]n a case against a public employer 'where an adequate

---

[7] Moreover, sick leave and other comparable contractual benefits addressed in a CBA are not generally subject to constitutional protection. *Dohrmann-Gallik v. Lakeland Cent. Sch. Dist.*, No. 14-CV-4397 NSR, 2015 WL 4557373, at *5 (S.D.N.Y. July 27, 2015) (collecting cases). *Contra Hairston v. D.C.*, 638 F. Supp. 198, 202 (D.D.C. 1986) ("the District of Columbia's statutory administrative sick leave scheme has been found to create a property interest in the continued receipt of administrative sick leave").

grievance/arbitration procedure is in place and is followed, a plaintiff has received the due process to which he is entitled.'" (citing *Dykes v. Se. Pa. Transp. Auth.,* 68 F.3d 1564, 1565 (3d Cir.1995))).  In sum, the Complaint does not adequately state a claim against the Union Defendants for deprivation of due process.[8]

To the extent that Plaintiff seeks to assert a substantive due process violation, his allegations also fail to make out such a claim.  "The touchstone of [substantive] due process is protection of the individual against arbitrary action of government."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).  It is well-settled that "'only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  *Id.* at 846 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)).  "'Executive branch action that sinks to the depths of shocking the contemporary conscience is much more likely to find its roots in 'conduct intended to injure in some way unjustifiable by any government interest.'"  *Pimentel v. City of Methuen*, 323 F. Supp. 3d 255, 268 (D. Mass. 2018) (quoting *Depoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005)).  None of the allegations in Plaintiff's Complaint concerning the Union Defendants constitutes conduct that could be reasonably characterized as "'violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'"  *Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011) (quoting *González–Fuentes v. Molina,* 607 F.3d 864,

---

[8]  Under Massachusetts law, the Union Defendants cannot be personally liable for actions taken on behalf of the union.  *Best v. Rome*, 858 F. Supp. 271, 275-76 (D. Mass. 1994).  Actions under federal labor law for the breach of duty of fair representation lie only against the Union itself. *Forbes v. R.I. Bhd. of Corr. Officers*, 923 F. Supp. 315, 328 (D.R.I. 1996).

881 (1st Cir. 2010)).  Accordingly, the court recommends dismissal with prejudice of Count V

against the Union Defendants.

2.  <u>State Claims</u>

a.  Supplemental Jurisdiction

If the court accepts the recommendation to dismiss Plaintiff's federal-law claims with

prejudice, that dismissal will set the stage for the court's exercise of informed discretion to

decline to adjudicate the remaining state law claims for intentional infliction of emotional

distress and violation of the MCRA on the ground that "'[n]eedless decisions of state law should

be avoided both as a matter of comity and to promote justice between the parties, by procuring

for them a surer-footed reading of applicable law.'"  *Robinson v. Town of Marshfield*, 950 F.3d

21, 32 (1st Cir. 2020) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966)

(alteration in original).  There are no analogues to these state-law claims in the federal-law

claims that are addressed above.  In these circumstances, the First Circuit has directed that the

better course is dismissal of the state-law claims without prejudice.  *Id.*  If this court has

determined that the federal-law claims in Counts III and IV should be dismissed, the undersigned

recommends that the court decline to exercise supplemental jurisdiction over the claims in

Counts II and V against the Union Defendants for violation of MCRA and intentional infliction

of emotional distress and dismiss them without prejudice.  *See id.* at 24-25.  If the court decides

to exercise supplemental jurisdiction, the undersigned nonetheless recommends dismissal

because the Complaint does not adequately state such claims against the Union Defendants.

b.  Count II – MCRA

To make out a claim under the MCRA, Plaintiff must "'prove that (1) the exercise or

enjoyment of some [federal or state] constitutional or statutory right; (2) has been interfered

with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion.'" *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 224-25 (D. Mass. 2017) (quoting *Glovsky v. Roche Bros. Supermarkets, Inc.*, 17 N.E.3d 1026, 1035 (Mass. 2014)). "The Legislature intended that even a direct deprivation of a plaintiff's secured rights would not be actionable under the act unless it were accomplished by means of one of these three constraining elements." *Buster v. George W. Moore, Inc.*, 783 N.E.2d 399, 409 (Mass. 2003). Where Plaintiff has not adequately alleged threats, intimidation, or coercion by the Union Defendants, the MCRA claims should be dismissed. *See Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 88 (D. Mass. 2012).

"Massachusetts courts apply an objective 'reasonable person' standard to determine whether conduct constituted threats, intimidation, or coercion." *Spencer v. Roche*, 755 F. Supp. 2d 250, 265 (D. Mass. 2010). "A 'threat' means 'the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.'" *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009) (quoting *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 631 N.E.2d 985, 990 (1994)). "'Intimidation' means putting a person in fear for the purpose of compelling or deterring his or her conduct." *Id.* "'Coercion' means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do." *Id.*; *see also Damon v. Hukowicz*, 964 F. Supp. 2d 120, 149 (D. Mass. 2013). The exception for claims based on non-physical coercion, however, remains narrow. *See Thomas v. Harrington*, 909 F.3d 483, 492 (1st Cir. 2018) ("It is rare for a MCRA claim to involve no physical threat of harm."); *Mason*, 394 F. Supp. 3d at 174 (citing *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 519 (1st Cir. 2009)).

Viewed in light of these principles, Plaintiff's complaint fails to allege acts by the Union Defendants that could reasonably be considered to meet the criteria for threats, intimidation, or coercion. "The elements of 'threats' and 'intimidation' under the MCRA usually require actual or threatened physical force." *Spencer*, 755 F. Supp. 2d at 265. Plaintiff has not alleged any act or statement by any Union Defendant that approached a threat of physical force or that sought to coerce the Plaintiff into taking or refraining from taking a particular action. First, Plaintiff has not alleged *any* direct communications with Grady concerning the agreement about restoration of sick days (Compl. ¶ 23). The agreement, which Plaintiff signed, is not, on its face, threatening, intimidating, or coercive (Exh. B, Dkt. No. 1-1 at 39), nor has Plaintiff alleged that he signed the agreement as a result of any threat or coercion (Compl. ¶ 23). Second, as alleged in the Complaint, Couture's communications with Plaintiff do not contain any threat of physical force, nor has Plaintiff suggested that Couture sought to coerce him to do something he would not otherwise have done. Plaintiff's allegations against the Union Defendants, interpreted liberally, fall well short of the MCRA's requirement of "'the sort of physical, moral, or economic pressure that courts have found sufficient to support a claim under this statute.'" *Thomas*, 909 F.3d at 493 (quoting *Meuser*, 564 F.3d at 519). If the court reaches the question substantively, I recommend dismissal with prejudice of the MCRA claims against Grady and Couture.

c. Count V – Intentional Infliction of Emotional Distress

The bar for sustaining a claim for the intentional infliction of emotional distress is also "very high." *Polay v. McMahon*, 10 N.E.3d 1122, 1128 (Mass. 2014) (citing *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996)). There are four elements to this claim. Plaintiff must show:

> (1) that the defendant "intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct[,]"

26

(2) that the conduct was "extreme and outrageous," was "beyond all possible
bounds of decency" and was "utterly intolerable in a civilized community[,]" (3)
that the defendant's actions caused the plaintiff distress, and (4) that the plaintiff's
emotional distress was severe.

*Wilmot v. Tracey*, 938 F. Supp. 2d 116, 144 (D. Mass. 2013) (quoting *Howell v. Enter. Publ'g*

*Co., LLC,* 920 N.E.2d 1, 28 (Mass. 2010) (citations omitted)).

Liability for "extreme and outrageous" conduct "cannot be predicated upon 'mere
insults, indignities, threats, annoyances, petty oppressions, or other trivialities,'
nor even is it enough 'that the defendant ... has intended to inflict emotional
distress, or even that his conduct has been characterized by "malice," or a degree
of aggravation which would entitle the plaintiff to punitive damages for another
tort'; rather, '[l]iability [may be] found only where the conduct has been so
outrageous in character, and so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly intolerable in a
civilized community.'"

*Roman v. Trs. of Tufts Coll.*, 964 N.E.2d 331, 341 (Mass. 2012) (quoting *Foley v. Polaroid*

*Corp.,* 508 N.E.2d 72, 82 (Mass. 1987)).  "In addition, '[i]t is for the court to determine, in the

first instance, whether the defendant's conduct may reasonably be regarded as so extreme and

outrageous as to permit recovery.'" *Hayes v. Mirick*, 378 F. Supp. 3d 109, 117 (D. Mass. 2019)

(quoting *Caputo v. Bos. Edison, Co.*, 924 F.2d 11, 14 (1st Cir. 1991)).

"A union is accorded considerable discretion in dealing with grievance matters…."

*Ayala*, 74 F.3d at 346.  Putting "'as harsh a face on [the defendants' actions]'" as the alleged

facts would reasonably allow, *Roman*, 964 N.E.2d at 341-42, Plaintiff has alleged that the Union

Defendants acted inadequately on his behalf in their role as Union officials.  Such contentions do

not rise to the level of "extreme and outrageous" conduct that warrants the imposition of liability.

*See, e.g., Gindi v. Norton*, 216 F. Supp. 3d 199, 205 (D. Mass. 2016) (claims that the defendants

yelled at, insulted, and threatened the plaintiff did not meet the "rigorous prerequisite for a prima

facie case of intentional infliction of emotional distress").  For the foregoing reason, if the court

reaches this issue substantively, I recommend dismissal with prejudice of Count V against the Union Defendants.

VI.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the motion to dismiss by the Union Defendants be GRANTED to the extent that Counts III and IV be dismissed with prejudice and that the court decline to exercise supplemental jurisdiction over the remaining state-law claims in Counts II and V, which should be dismissed without prejudice.  In the alternative, the court recommends that the motion to dismiss by the Union Defendants be GRANTED in its entirety and that all claims be dismissed with prejudice.[9]

Dated: March 24, 2020                          /s/ Katherine A. Robertson
                                               KATHERINE A. ROBERTSON
                                               UNITED STATES MAGISTRATE JUDGE

---

[9] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of service of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.