UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WALTER J. POWELL,                     )
      Plaintiff,                    )
                                )
          v.                     )      Civil Action No. 18-30146-MGM
                                )
CITY OF PITTSFIELD, *et al.*,         )
      Defendants.                   )

---

## REPORT AND RECOMMENDATION REGARDING THE MOTION TO DISMISS BY THE CITY OF PITTSFIELD, THE PITTSFIELD POLICE DEPARTMENT, LINDA M. TYER, DANIEL BIANCHI, MICHAEL J. WYNN, SUSAN WHEELER, MATTHEW M. KERWOOD, AND JOHN DeANGELO
(Dkt. No. 171)

I.      INTRODUCTION

Before the court is a motion filed on behalf of the defendants City of Pittsfield ("the

City"), and, individually and in their official capacities, Linda M. Tyer ("Tyer") (the City's

mayor), Daniel Bianchi ("Bianchi") (a former Mayor), the Pittsfield Police Department ("PPD"),

Michael J. Wynn ("Wynn") (PPD Chief), Susan Wheeler ("Wheeler") (PPD Firearms

Administrator), Matthew M. Kerwood ("Kerwood") (in his capacity as City Treasurer), and John

M. DeAngelo ("DeAngelo") (former Personnel Director) (collectively, "the Municipal

Defendants") seeking dismissal of the claims asserted against them in *pro se* Plaintiff Walter J.

Powell's April 8, 2019 amended complaint ("Complaint") (Dkt. No. 171).  The motion has been

referred to the undersigned for report and recommendation (Dkt. No. 234).  *See* 28 U.S.C. §

636(b)(1)(B).

The court heard argument on the Municipal Defendants' motion and motions brought by

other defendants on November 1, 2019 (Dkt. No. 344).  This court has recommended dismissal

with prejudice of Plaintiff's federal-law claims against defendants Edward M. Reilly, Kathleen

Alexander, Michael Grady, Kerwood in his capacity as a member of the City's Retirement Board, the Pittsfield Retirement Board, Karen Lancto, and Richard M. Dahoney in his capacity as city solicitor, and further recommended that the court decline to exercise supplemental jurisdiction over Plaintiff's pendent state-law claims against these individuals and entities (Dkt. Nos. 367, 368, 371, 376).  For the reasons set forth below, the court now recommends that the Municipal Defendants' motion to dismiss be GRANTED on the same terms.

II.    BACKGROUND

Plaintiff was terminated from his employment as a Pittsfield police officer on March 21, 1991 (Dkt. No. 158 (hereinafter "Compl.") at ¶ 17).  He filed a suit alleging racial discrimination by the City, which settled in September 1993 (Compl. ¶¶ 20-21).  The settlement called for a payment of $81,000 and Plaintiff's reinstatement to the Pittsfield police department (Compl. ¶ 21).  Plaintiff was finally reinstated as a Pittsfield police officer effective May 20, 1996 (Compl. ¶ 23).

In 1997, Plaintiff filed suit against the City and two of its officials, Edward Reilly and Kathleen Alexander, alleging retaliation, disability discrimination, and contract violation for failure and refusal to honor the terms of the 1993 settlement agreement.  *Powell v. City of Pittsfield*, 221 F. Supp. 2d 119, 122 (D. Mass. 2002), *aff'd sub nom. Powell v. Alexander*, 391 F.3d 1 (1st Cir. 2004).  Following a bench trial, the court found Alexander liable for punitive damages and all defendants liable to Plaintiff for lost wages, emotional distress, and attorneys' fees.  *Id*. at 121-22.

On May 10, 2017, Plaintiff filed a discrimination charge with the Massachusetts Commission Against Discrimination ("MCAD") (Compl. ¶ 63).  Plaintiff alleges that he filed numerous additional charges with the MCAD after May 10, 2017 related to incidents described

in the Complaint (Compl. ¶¶ 65, 72, 83; Dkt. No. 1-1 at 80-82; Dkt. No. 1-2 at 2-4). The MCAD dismissed claims filed by Plaintiff on January 12, 2018, informing Plaintiff that if he wanted the MCAD to investigate the denial of his application for a license to carry a firearm ("LTC") or delay in paying him for outside detail work, he must file a new complaint (Dkt. No. 1-2 at 6-8). This litigation history forms part of the basis for Plaintiff's claims of retaliation against some or all the Municipal Defendants.

On April 2, 2019, the Honorable Mark G. Mastroianni granted Plaintiff's motion for leave to file an amended complaint (Dkt. No. 136), cautioning that the amended complaint would "'supersede[]' both the original and supplemental complaint" (Dkt. No. 152 (quoting *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008))). On April 8, 2019, Plaintiff filed his amended complaint (Dkt. No. 158), which included some exhibits and referenced many exhibits that were filed with his initial complaint (Dkt. Nos. 1-1 and 1-2). At the November 1, 2019 hearing (Dkt. No. 344), all parties agreed that the exhibits filed with the initial complaint would be incorporated by reference in the operative Complaint.

As the Municipal Defendants contend, the Complaint does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Stripped of conclusory and accusatory statements and allegations that do not contribute to the factual bases for Plaintiff's claims against the Municipal Defendants, the Complaint charges that one or more of the Municipal Defendants injured Plaintiff by the following acts, allegedly committed for retaliatory, discriminatory, or otherwise illegal reasons: (1) the misclassification of an injury Plaintiff suffered on October 25, 2015 on his way to work; (2) the denial of Plaintiff's LTC renewal application; and (3) delays in compensation and changes in the City's

policies and practices related to outside detail work performed by Plaintiff and other retired police officers.

A.   October 25, 2015 Injury

On October 25, 2015, Plaintiff fell and injured his left knee while on his way to work (Compl. ¶ 33).  He expected this injury to qualify for injured on duty ("IOD") status based on a "portal to portal" rule that, he alleges, was required by a collective bargaining agreement ("CBA") and that had been applied to the benefit of white officers in the PPD (Compl. ¶ 36). Plaintiff's union representatives allegedly delayed seeking relief on his behalf; DeAngelo, the City's Personnel Director, and Bianchi, then the City's Mayor, declined to intervene; and, in February 2016, Wynn denied a union grievance filed on Plaintiff's behalf (Compl. ¶¶ 36, 41, 51). Tyer, Bianchi's successor as mayor, allegedly ignored an appeal from Wynn's denial of the grievance (Compl. ¶¶ 52, 57).  On April 14, 2016, Plaintiff personally filed another grievance with Wynn alleging discriminatory treatment (Compl. at ¶ 56).  According to Plaintiff, when he went to work on April 15, 2016, he discovered that the sick and vacation time he used to recover from his October 2015 injury had been restored to him (Compl. ¶ 57).  On April 22, 2016, Plaintiff filed a grievance with Tyer about Wynn's denial to which she did not respond (Compl. ¶ 59).[1]  On April 27, 2016, the Union and the City settled Plaintiff's grievance, treating his use of sick and vacation time and holidays during his sick leave as on-duty time and reimbursing him for co-pays for treatment of the injury (Dkt. No. 1-1 at 55).  Plaintiff alleges that this settlement

---

[1] Plaintiff alleges that he filed a second grievance with Tyer at the same time concerning the City's failure to give him a five-year retirement credit for the period between the termination of his employment in 1991 and his reinstatement in 1996 (Compl. ¶ 56).  To the extent Plaintiff seeks relief from any Municipal Defendant for this alleged loss, he is too late for reasons this court explained in its February 27, 2020 Report and Recommendation Concerning Defendant Kathleen G. Alexander's Motion to Dismiss (Dkt. No. 368 at 5-12).

was a "fraud" about which he was not consulted (Compl. ¶ 54).  He claims that when he retired

on October 1, 2016, his knee injury was still classified as an off-duty injury (Compl. ¶ 61).

    B.    <u>LTC Renewal Application</u>

On January 9, 2017, Plaintiff filed an application to renew his LTC, which was set to

expire on March 16, 2017 (Compl. ¶ 62).  Confusingly, Plaintiff claims that his LTC was

automatically reissued and reactivated by the Commonwealth of Massachusetts, but that, on

August 7, 2017, Wynn denied the LTC renewal application (Compl. ¶ 71).  On November 3,

2017, Plaintiff filed suit in the Pittsfield District Court Division of the Massachusetts Trial Court

("Pittsfield District Court") challenging the denial of his application to renew his LTC (Compl. ¶

75), naming Wynn as the defendant (Dkt. No. 1-1 at 70).  On December 13, 2017, the Pittsfield

District Court reversed Wynn's decision (Compl. ¶ 77).  On December 19, 2017, Plaintiff left a

message for Wheeler, asking what steps he needed to take to get his LTC reissued and have his

personal weapon returned to him (Compl. ¶ 78).  Wheeler did not respond to Plaintiff (Compl. ¶

78).

On January 17 and 30, 2018, Plaintiff wrote to Wynn asking about renewal of his LTC

and accusing Wynn of "arbitrarily, capriciously and retaliatorily" denying his application

(Compl. ¶ 85).  On February 20, 2018, Plaintiff filed a contempt motion in the Pittsfield District

Court for the City's failure to comply with the decision overruling Wynn's denial of Plaintiff's

LTC renewal application (Compl. ¶ 87).  In response, by affidavit, Wynn reported to the

Pittsfield District Court that he had forwarded Plaintiff's license application to the

Commonwealth's Department of Criminal Justice Information Services ("DCJIS") as he was

required to do (Dkt. No. 1-1 at 70-71, ¶¶ 2-7).  In July 2018, in response to another motion filed

by Plaintiff, the City filed an affidavit of Michaela Dunne, Manager of the Law Enforcement and

Justice Services of the DCJIS, stating that, pursuant to Mass. Gen. Laws ch. 140, § 131(d)(ii)(F),
DCJIS did not activate Plaintiff's LTC because of his 1974 New York conviction for possession
of a controlled substance and that he would need to inform the DCJIS about the circumstances of
the conviction before his LTC could be renewed (Compl. ¶ 100 at 51; Dkt. No. 1-2 at 122-24).[2]
While Plaintiff disputes the truthfulness of Wynn's affidavit and the authenticity of Ms. Dunne's
affidavit, he does not dispute the fact of his 1974 conviction nor does he allege that he ever filed
an affidavit with DCJIS explaining the circumstances of his New York conviction.

        C.     <u>Outside Detail Work</u>

       In mid-June 2017, the City failed to pay Plaintiff for his outside detail work on a timely
basis.  Other active and retired police officers, who were white, were paid on a timely basis (Dkt.
No. 158 at 70).  While Plaintiff alleges delay in the delivery of payments, he does not allege that
the City failed to pay him.  On or around January 10, 2018, Kerwood, as the City's Finance
Director, wrote to Plaintiff and other retired PPD officers informing them that the City was
changing the way retired PPD officers would be paid for outside detail work.  Retired officers
were directed to fill out a W-4 form and notified that, as of December 10, 2017, earnings would
be subject to state and federal taxes and Medicare deductions.  Kerwood's letter further reminded
Plaintiff (and other retired officers) of the hour and earning limitations on their outside detail
work (Dkt. No. 1-1 at 96).  Plaintiff claimed that Kerwood's actions conflicted with the CBA,
were beyond his authority, and were in retaliation for the MCAD charge Plaintiff filed against
Kerwood in 2017 (Compl. ¶ 82).  Plaintiff further alleges that he was removed from the outside

---

[2]  The Complaint contains two paragraphs numbered 100 through 102 on pages 48 through 53
(Dkt. No. 158).  As to these paragraphs, the court has supplied the page number of the paragraph
to which reference is made.  Some exhibits filed with the operative Complaint were not
separately docketed.  Where reference is made to these exhibits, the citation is to the page
number of the exhibit filed with the Complaint.

detail list in November 2018 and that Kerwood sought to recoup alleged excess earnings from Plaintiff in retaliation because he filed this lawsuit (Compl. ¶¶ 105, 107).

Based on these allegations, the Complaint states claims as follows: under the Massachusetts Whistleblower Statute, Mass. Gen. Laws ch. 149, § 185 against the City (Count One); under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and I ("MCRA") against Tyer, Kerwood, Wynn, Wheeler, Bianchi, and DeAngelo (Count Two); under 42 U.S.C. §§ 1985(2) and (3) against Tyer, Kerwood, Wynn, Wheeler, Bianchi, and DeAngelo (Count Three); under 42 U.S.C. § 1983 against the City, Tyer, Kerwood, Wynn, Wheeler, Bianchi, and DeAngelo (Count Four); intentional infliction of emotional distress against Tyer, Kerwood, Wynn, Wheeler, Bianchi, and DeAngelo (Count Five); under Mass. Gen. Laws ch. 284/Massachusetts Acts of 2014 against the City, Wynn, Wheeler, and Tyer (Count Six); under the Massachusetts Antidiscrimination Statute, Mass. Gen. Laws ch. 151B, § 4(9)(iii) ("Chapter 151B") against the City, Wynn, Wheeler, and Tyer (Count Seven); and under Title VII of the Civil Rights Act of 1964 ("Title VII") against the City, Wynn, Kerwood, Wheeler, and Tyer (Count Eight).

III. DISCUSSION

A. Standard of Review

To survive a motion to dismiss, a "complaint must contain enough factual material to raise a right to relief above the speculative level … and state a facially plausible legal claim," *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true all well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's favor." *Id.* (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)). To assess whether a complaint meets

this standard, courts employ a two-step approach. *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *A.G. ex. rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted). Second, [the court] "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108. "[T]he complaint should at least set forth minimal facts as to who did what to whom, when, where and why," and "courts should … 'eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets.'" *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)); *see also Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 32-33 (1st Cir. 2020). Furthermore, "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 557 n.5 (2007)).

"'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, a *pro se* complaint should be dismissed if "a lenient construction demonstrates beyond doubt that the plaintiff can prove no set of facts to support [his] claim for relief." *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 260 (1st Cir. 1994).

B.  Any Claims Asserted Against the PPD Should be Dismissed

To the extent Plaintiff included the PPD as a separate party – and it is not clear from the

Complaint whether he intended to do so – the court recommends that such claims be dismissed.

Under Massachusetts law, a town is not an entity separate and independent from its constituent

departments.  Thus, a suit against a department is deemed to be a suit against the Town itself and

claims against a department are deemed claims against the municipality that cannot be asserted

separately against municipal departments or divisions.  *See Wright v. Town of Southbridge*, Civil

Action No. 07-40305-FDS, 2009 WL 415506, at *3 (D. Mass. Jan. 15, 2009) (quoting *Murphy v.*

*Town of Natick,* 516 F. Supp. 2d 153, 158-59 (D. Mass. 2007)).  For this reason, the court

recommends dismissal of claims, if any, against the PPD.

C.  Federal Claims

1.  Count Three – § 1985

"Section 1985 has three subsections, each of which sets forth a distinct cause of action."

*Donahue v. City of Boston*, 304 F.3d 110, 122 n.9 (1st Cir. 2002).  Plaintiff has not specified

under which subsection of § 1985 he seeks to proceed.

Subsection (1) "protects federal officers from those conspiring to prevent (by force,

intimidation, or threat) the officer from discharging his or her duties."  *Id*.  It is plainly

inapplicable because Plaintiff is not an officer of the United States.

Subsection (2) "prohibits 'two or more persons [from] conspir[ing] for the purpose of

impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any

State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure

him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or

class of persons, to the equal protection of the laws.'"  *Bolduc v. Town of Webster*, 629 F. Supp.

2d 132, 150 (D. Mass. 2009) (quoting 42 U.S.C. § 1985(2)).  A plaintiff proceeding under

subsection (2) must allege facts supporting the following four elements: "(1) a conspiracy

between two or more persons, (2) to impede, hinder, obstruct, or defeat, in any manner, the due

course of justice in any State, (3) with invidiously discriminatory animus, (4) which results in

injury to plaintiff." *Id*. at 150–51 (citing *Greco v. Fitzpatrick,* No. 94-2248, 1995 WL 373108, at

*1 (1st Cir. June 23, 1995)).

Subsection (3) prohibits "two or more persons in any State or Territory [from]

conspire[ing to] ... depriv[e] ... any person or class of persons of the equal protection of the

laws." *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008) (quoting 42 U.S.C.

§ 1985(3)).  A claim under subsection (3) requires that "[f]irst, the plaintiff must allege a

conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal

protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and

finally, he must show either injury to person or property, or a deprivation of a constitutionally

protected right." *Id*. (citing *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996)).  With respect to

the second requirement, "[i]t has long been established that a claim under § 1985(3) requires

'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

conspirators' action.'" *Id*. (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)).

Because conspiracy is an element under both subsections (2) and (3), a plaintiff

proceeding under either subsection must allege facts that would permit the court plausibly to

infer an agreement among the conspirators.  *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019).

"[T]he plaintiff[ ] must expressly allege an agreement or make averments of communication,

consultation, cooperation, or command from which such an agreement can be inferred."  *Rolón v.*

*Rafael Rosario & Assocs., Inc.*, 450 F. Supp. 2d 153, 160 (D.P.R. 2006).  Allegations of a § 1985

conspiracy must "be supported by material facts, not merely conclusory statements." *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980) (citing *Slotnik v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977)). "A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)." *Parker*, 935 F.3d at 18 (citing *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008)).

Viewing the allegations in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Plaintiff has not stated a claim for conspiracy against the Municipal Defendants under either subsection (2) or (3) of § 1985. The Complaint alleges baldly that the Municipal Defendants conspired with each other to harass or retaliate against Plaintiff by denying him IOD status when he injured his knee, refusing to renew his LTC, and changing his employment status and enforcing the limit on overtime hours for retired officers and that these actions were part of a larger scheme to punish Plaintiff for his "reports, objections, complaints and speech about violations of law by the Defendants" (Compl. ¶ 118). But Plaintiff "has not alleged any facts to show a conspiracy" among the Municipal Defendants or between any of the Municipal Defendants and any other defendant. *Burbank v. Town of Hubbardston*, 146 F. Supp. 3d 402, 405 (D. Mass. 2015); *see also Parker*, 935 F.3d at 18 ("Without direct evidence of such an agreement – and none exists here – the plaintiff must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." (citing *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988)).

With respect to Plaintiff's October 2015 knee injury, he alleges that DeAngelo, on behalf of the City, took the plausible position that an injury sustained by a police officer while on his way to work was not an injury on the job, *see* Mass. Gen. Laws ch. 41, § 111F ("Whenever a police officer … is incapacitated for duty because of injury *sustained in the performance of his*

*duty* without fault of his own … he shall be granted leave without loss of pay for the period of such incapacity ….") (emphasis supplied), and that Wynn, also on behalf of the City, later denied his grievance.  Plaintiff alleges that he told officials that the City had previously honored a so-called portal-to-portal rule and that white officers, whom he fails to identify in his Complaint, had benefited from the practice in the past.  He alleges that the union was tardy in filing a grievance on his behalf, but eventually did so, and that, in the end, he was successful in obtaining relief, whether through his own efforts, as he believes, or through those of the union, which ultimately signed an agreement with the City resolving the grievance filed on his behalf (Compl. ¶ 73).  These factual allegations are insufficient to give rise to a reasonable inference that DeAngelo, Wynn, and representatives of the Union conspired to injure Plaintiff.  Moreover, to the extent Plaintiff intends an inference of animus from his prior lawsuits against the City and its officials, so far as appears from the Complaint, neither Wynn nor DeAngelo were employed by the City when Plaintiff filed his 1991 and his 1997 lawsuits, and, as a matter of law, the incidents lack the temporal proximity required to raise an inference of animus or retaliatory intent.  *See Calero-Cerazo v. U.S. Dept. of Justice*, 355 F.3d 6, 25 (1st Cir. 2004) (noting that when a plaintiff relies on prior events to establish a prima facie case of retaliation, cases uniformly hold that the temporal proximity must be close) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

To establish a Fourteenth Amendment Equal Protection claim, Plaintiff would have to establish that he was treated differently than other similarly situated individuals, and that "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure" him.  *Davis v. Coakley*, 802 F.3d 128, 132-33 (1st Cir. 2015) (quoting *Rubinovitz v. Rogato*, 60

F.3d 906, 910 (1st Cir. 1995)).  Where a City has a rational basis for its different treatment of

individuals, there is no violation of the Equal Protection Clause.  *Armour v. City of Indianapolis*,

566 U.S. 673, 680 (2012).  The Complaint's allegations show that the City had a rational basis

for denying Plaintiff IOD status when he injured his knee on the way to work, that being its

intention to bring its practices into compliance with Mass. Gen. Laws ch. 41, § 111F, a state law

which, on its face, does not provide for IOD status for a police officer unless the injury happens

in the course of a police officer's performance of his or her duties (Compl. ¶ 54).  Plaintiff has

alleged that, after initial delay, the union representatives filed a grievance on his behalf and

followed through to resolution.  Again, Plaintiff has not alleged facts from which a reasonable

inference could be drawn that the City representatives conspired with each other to deprive

Plaintiff of his right to equal protection, nor has he alleged facts from which it could be inferred

that the City and the union representatives conspired with each other to deny him a constitutional

right to equal protection under the law.  *See, e.g., Enwonwu v. Drivers Staffing, Inc.*, 881 F.

Supp. 2d 238, 241 (D. Mass. 2012) (dismissing § 1985 conspiracy claim when the plaintiff did

not point to evidence of a conspiracy); *see also Burbank*, 146 F. Supp. 3d at 405.

      Plaintiff has not alleged any class-based or discriminatory animus as to the denial of his

LTC application or the change in status or hours for retired officers, nor do the allegations give

rise to a reasonable inference that the Municipal Defendants acted from any class-based

discriminatory animus.  It is questionable whether Plaintiff has plausibly alleged that Wynn was

responsible for the denial of his LTC application or whether, considering the exhibits to the

Complaint, this allegation falls into the category of an impermissibly threadbare and speculative

allegation.  *See Peñalbert-Rosa*, 631 F.3d at 595.  Leaving that question aside, the relevant

statutory provisions prohibit issuance of an LTC to an individual previously convicted of any

controlled substance violation that would have been a violation of Massachusetts law. *See* Mass. Gen. Laws ch. 140, § 131(d) (ii)(E).[3]  Plaintiff has not denied that he has a prior controlled substance conviction (Compl. ¶ 71).  There appears to be no temporal limitation on the prohibition against issuing an LTC to an individual with a prior controlled substances violation. Moreover, Plaintiff has not alleged that Wynn treated him differently than he treated any other retired police officer with respect to an LTC renewal application or that Wynn conspired with any other individual to prevent Plaintiff from obtaining an LTC.

As to the steps the City took related to outside detail work, it has a rational basis, that being a recommendation from an outside auditor that the City change its process for paying retired police officers (Dkt. No. 158-1 at 2).  Plaintiff has acknowledged that he and three other retired PPD officers, who, so far as appears from the Complaint were not members of a protected class, received similar letters from Kerwood around the same time notifying them that they were required to fill out W-4 forms to be compensated for outside detail work they had performed or would perform in the future (Dkt. 158 at 71).  Plaintiff has alleged that he was the only police officer who was not timely paid for his outside detail work in or around June 2017, but he has further alleged that when he brought this failure to Kerwood's attention, it was addressed and he has not alleged that he was not paid for outside detail work, even if payment was not timely (Compl. ¶ 71; Dkt. No. 1-1 at 75, 77-78).  Because Plaintiff has not adequately pled a conspiracy

---

[3] Under Massachusetts law, a licensing authority may issue a Class A LTC to an individual "if it appears that the applicant is not a prohibited person."  Mass. Gen. Laws ch. 140, § 131(d).  An individual who has, in any state, been convicted of "a violation of any law regulating the use, possession or sale of a controlled substance as defined in … section 1 of … chapter 94C including but not limited to, a violation of … Chapter 94C" is a "prohibited person."  Mass. Gen. Laws. ch. 140, § 131(d)(ii)(E).  The classes of illegal controlled substances are set forth in Mass. Gen. Laws ch. 94C, § 31.  That Plaintiff's prior conviction was allegedly a misdemeanor that was remote in time, does not, by the terms of the statute, appear to remove him from the definition of a prohibited person.

or class-based animus, his claims based on the denial of his LTC renewal application and

Kerwood's decisions related to outside detail work fail.  *See Knowlton v. Shaw*, 704 F.3d 1, 12

(1st Cir. 2013) (upholding dismissal of § 1985(2) claim because the complaint "fail[ed] to allege

any racial, or otherwise class-based, invidiously discriminatory animus underlying the state

officials' actions"); s*ee also Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 14 (1st Cir. 2000)

(affirming summary judgment where the plaintiff "attempted to construct a civil rights

conspiracy case by superimposing general allegations of racism by a few members of the state

police force not including [the defendant] on several incidents in which [the plaintiff]

unquestionably was treated unfairly").

   At the end of the day, "[t]he complaint is devoid of the requisite particular facts from

which it could reasonably be inferred that any of [the Municipal Defendants], or any others,

agreed to deprive Plaintiff of his constitutional rights or that [they] communicated or cooperated

in furtherance of this goal."  *Hayward v. Mass.*, Case No. 16-cv-30046-MGM, 2016 WL

11189805, at *13 (D. Mass. Nov. 14, 2016), *rec. adopted*, 2017 WL 772323 (D. Mass. Feb. 28,

2017).  According to the Complaint, the Municipal Defendants interacted with Plaintiff at

different times and for different reasons.  "[S]ubsection 1985(2) applies to 'conspiracies,' not to

individual actions."  *Irizarry v. Quiros*, 722 F.2d 869, 872 (1st Cir. 1983).  "[Plaintiff's]

conclusory statements that [the Municipal Defendants participated in] a vendetta against him fail

to allege the essential elements of a § 1985(3) claim."  *Baxter v. Conte*, 190 F. Supp. 2d 123, 129

(D. Mass. 2001) (citing *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34-35 (1st Cir.

1996)); *see also Bolduc*, 629 F. Supp. 2d at 151 (facts supporting a finding that one defendant

started a series of acts targeting the plaintiff did not provide a reason to believe that the

defendant agreed with another to continue that conduct).  "Although a *pro se* complaint is

construed liberally, [when Plaintiff's] allegations are no more than 'bald assertions' [the Complaint] cannot survive a motion to dismiss." *Baxter*, 190 F. Supp. 2d at 128.

For the foregoing reasons, the court recommends dismissal with prejudice of the claims in Count Three against the Municipal Defendants.

2. Count Four – § 1983

a. General Principles Governing Liability for Classes of Persons

"A suit against a municipal official in his or her official capacity is considered a suit against the municipality itself." *Diaz-Garcia v. Surillo-Ruiz*, Civil No. 13-1473 (FAB), 2014 WL 4403363, at *5 (D.P.R. Sept. 8, 2014) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Surprenant v. Rivas*, 424 F.3d 5, 19 (1st Cir. 2005)). "A municipality can be sued directly under section 1983 for monetary, declaratory, and injunctive relief." *Id.* (citing *Monell v. Dep't. of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)). "When a municipality is sued directly, claims against municipal employees in their official capacities are redundant and may be dismissed." *Id.  See Decotiis v. Whittemore*, 635 F.3d 22, 26, 38 (1st Cir. 2011) (affirming dismissal of official-capacity defendant as redundant of the suit against local government agency). Accordingly, Plaintiff's § 1983 claims against the Municipal Defendants in their official capacities should be dismissed.

"A city may only be held liable under § 1983 for its *own* unconstitutional action." *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 9 (1st Cir. 2005) (citing *Monell,* 436 U.S. at 691). "This means that, under § 1983, a municipal government will only be held liable when the 'execution of [the municipal] government's policy or custom ... inflicts the injury.'" *Id*. (quoting *Monell*, 436 U.S. at 694). Like municipal liability, supervisory liability cannot be predicated on a respondeat superior theory. *See, e.g., Penate v. Hanchett*, 944 F.3d 358, 367 (1st Cir. 2019)

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994)).  Liability cannot rest on the supervisor's authority, nor is it sufficient to allege negligence.  *Id.*  "[L]iability for supervisors is only triggered under § 1983 if 'a plaintiff can establish that his or her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'"  *Id.* (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 47 (1st Cir. 2012)).

      b.   Alleged Constitutional Violations

      "To state a claim under Section 1983, a plaintiff must show that the challenged conduct was committed by a person acting under color of state law and that the conduct worked a deprivation of rights, privileges, or immunities secured by the Constitution or federal law."  *Diaz v. Devlin*, 229 F. Supp. 3d 101, 109 (D. Mass. 2017) (citing 42 U.S.C. § 1983; *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997), *cert. denied*, 522 U.S. 819 (1997)).  There is no dispute that each of the individual Municipal Defendants was acting under color of state law in his or her role as a city official.  "The [next] step in the analysis of a § 1983 claim 'is to identify the specific constitutional right allegedly infringed.'"  *Murphy v. Baker*, Civil Action No. 15-30187-MGM, 2017 WL 2350246, at *2 (D. Mass. May 4, 2017), *rec. adopted*, 2017 WL 2363114 (D. Mass. May 30, 2017) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

      The Complaint alleges violations of Plaintiff's rights to free speech, due process, and to petition and seek redress from "Government abuse" as bases for his § 1983 claims (Compl. ¶ 120).  Plaintiff has not identified the events that allegedly interfered with his exercise of these rights.  Although Plaintiff has numbered the Complaint's paragraphs, the document does not set forth short statements of his claims generally, or of his claims against each defendant.  *See* Fed. R. Civ. P. 8(a)(2).  Thus, "it is difficult to cull out the relevant information forming the basis of

17

liability." *Baams v. Coakley*, Civil Action No. 13-13115-DJC, 2013 WL 6815014, at *3 (D. Mass. Dec. 23, 2013). The court has done its best to draw all reasonable inferences in Plaintiff's favor from the Complaint concerning the constitutional rights that Plaintiff asserts were violated.

> i.    First Amendment

"The Supreme Court has … identified 'the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation – and their ideas from suppression – at the hand of an intolerant society.'" *Powell*, 391 F.3d at 16 (quoting *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357 (1995)). "[I]n the public employment context, … under the First Amendment, there is both a free speech aspect and a right to petition aspect to claims of retaliation against the filing of lawsuits." *Rosado-Quiñones v. Toledo*, 528 F.3d 1, 6 (1st Cir. 2008) (citing *Powell*, 391 F.3d at 16-17); *Fabiano v. Hopkins*, 245 F. Supp. 2d 305, 310 (D. Mass.), *aff'd*, 352 F.3d 447 (1st Cir. 2003) (same). "Claims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." *Powell*, 391 F.3d at 16 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)).

"[T]o prevail on a § 1983 claim of retaliation for First Amendment activity, a plaintiff must show: (1) that his conduct was constitutionally protected, and (2) that this conduct was a substantial factor or a motivating factor for the defendant's retaliatory decision." *Rosaura Bldg. Corp. v. Municipality of Mayagüez*, 778 F.3d 55, 66 (1st Cir. 2015) (citing *Pierce v. Cotuit Fire Dist.,* 741 F.3d 295, 302-03 (1st Cir. 2014); *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 10 (1st Cir. 2005); *Powell*, 391 F.3d at 17). To make out a claim of a violation of the right to petition, "a plaintiff must allege that the defendant was responsible for or took actions that hindered the plaintiff's efforts to pursue a legal claim." *Muldoon v. Dep't of Correction*, No. 15-cv-13892-DJC, 2017 WL 506250, at *4 (D. Mass. Feb. 7, 2017) (citing

*Boivin v. Black*, 225 F.3d 36, 43 n.5 (1st Cir. 2000)).  To make out a claim for violation of his

right to free speech, Plaintiff must "establish that [he] was speaking 'as a citizen on a matter of

public concern'" and that his First Amendment right outweighed any relevant interest of the

government.  *Rosaura Bldg. Corp.*, 778 F.3d at 66-67 (quoting *Díaz–Bigio v. Santini,* 652 F.3d

45, 51 (1st Cir. 2011)).  "When … expression cannot be fairly considered as relating to any

matter of political, social, or other concern to the community, government officials should enjoy

wide latitude in managing their offices, without intrusive oversight by the judiciary in the name

of the First Amendment."  *Connick v. Myers*, 461 U.S. 138, 146 (1983).  Finally, for both free

speech and right to petition claims, "in order to meet the motivation prong, a plaintiff must

produce 'sufficient direct or circumstantial evidence' that his constitutionally protected conduct

was the driving factor that caused the retaliation."  *Rosaura Bldg. Corp.*, 778 F.3d at 67 (quoting

*Díaz–Bigio,* 652 F.3d at 51).

First, Plaintiff's protests about the denial of IOD status and of his LTC renewal

application are not entitled to First Amendment protection because the protests were obviously

directed "*solely* [at] resolv[ing] Plaintiff's personal concerns," *Vickowski v. Hukowicz*, 201 F.

Supp. 2d 195, 207 (D. Mass. 2002), as were the protests about delays in paying him for outside

detail work.  Plaintiff's complaints about the reclassification of retired police officers as

employees, while applicable to a broader class of individuals, were prompted by his personal

objections to the change, apparently based on the belief that the change would limit the hours a

retired officer could work and the amount the officer could earn.  Again, this is a matter of

personal rather than public concern (Compl. at 84-88).

Second, while the Complaint alleges that Plaintiff vigorously – and successfully –

pursued relief from the City following his October 2015 injury, persistently litigated the denial of

19

his LTC renewal application, and protested the change in employment status for retired officers working outside details, nowhere does Plaintiff allege acts by the Municipal Defendants that "hindered the plaintiff's efforts to pursue a legal claim." *Muldoon*, 2017 WL 506250, at *4 (citing *Boivan*, 225 F.3d at 43 n.5). Instead, the Complaint is replete with allegations that Plaintiff filed grievances when he felt compelled to do so (Compl. ¶¶ 56, 63, 65, 72, 83), culminating in the filing of this lawsuit.

Third, Plaintiff has not been specific in identifying the constitutionally protected conduct in which he engaged and the retaliatory actions the Municipal Defendants allegedly took in retaliation for such conduct. Assuming solely for the sake of argument that Plaintiff adequately alleged speech on a matter of public concern, *see Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 141-42 (1st Cir. 2016) (assuming that "the plaintiffs' petitioning and speech were constitutionally protected" where it was clear that the plaintiffs could not "satisfy the second prong of the test – establish[ing] a causal connection between the protected conduct and the alleged retaliatory response"), the Complaint does not satisfy the second prong of the test. To the extent Plaintiff relies on his 1991 and 1997 lawsuits against the City as the constitutionally protected conduct at issue, he has not adequately alleged that this litigation was a motivating factor in the retaliatory acts by any of the Municipal Defendants alleged in the Complaint, nor can any such inference reasonably be drawn. The fundamental shortcoming is that the Complaint does not "support a fact-based inference" that the Municipal Defendants' actions were anything other than routine actions undertaken by city officials in the exercise of their responsibilities. *See Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (affirming dismissal of the plaintiff's First Amendment retaliation claim for failure to state a claim because a court does not credit "bald assertions, unsupportable conclusions, and

opprobrious epithets" as adequately pleading that the adverse action taken against the plaintiff was undertaken with a retaliatory motive); *see also Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 36 (1st Cir. 2011) (dismissing complaint where it "provide[d] no factual basis plausibly to infer that [the defendant's] later actions were motivated by" a conversation in which the plaintiffs were critical of the defendant's colleague and friend). Plaintiff has failed to allege facts that "bridge the gap" between his petitioning conduct and the Municipal Defendants' allegedly retaliatory actions. *Campagna*, 334 F.3d at 156.

Stripping the Complaint of its conclusory accusations, Plaintiff has alleged that DeAngelo and Wynn denied Plaintiff IOD status for his 2015 knee injury; Wynn and Wheeler refused to renew Plaintiff's LTC; Kerwood notified Plaintiff and other retired officers of the change in their employment status and reminded them of the statutory limits on hours they could work and income they could earn; and Kerwood told Plaintiff that he owed the retirement board money because he exceeded the earning limit; and that these actions, considered together, raise an inference that each of the Municipal Defendants harassed or retaliated against Plaintiff because of his petitioning activity. The City's response to Plaintiff's 2015 knee injury took place years after Plaintiff's 1991 and 1997 lawsuits were resolved and was consistent with the relevant statutory provision and thus cannot support the inference that the decision was in retaliation for Plaintiff's earlier petitioning activities. *Campagna*, 334 F.3d at 155. Plaintiff's conclusory allegations that the denial of his LTC renewal application and the change in the employment status of retired police officers were retaliatory is not a plausible inference where, again, the actions of the involved Municipal Defendants as set forth in the Complaint are routine acts City officials could reasonably believe were permitted or required in their official capacities. *See Najas Realty, LLC,* 821 F.3d at 143 (affirming judgment on the pleadings where the pleadings

supported the inference that the public official the plaintiffs alleged had retaliated was doing nothing more than fulfilling his duty); *Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 534 (1st Cir. 2011) (recognizing that the Supreme Court has found insufficient for purposes of stating a claim "'unadorned, the-defendant-unlawfully-harmed-me accusation[s]'" (quoting *Iqbal*, 556 U.S. at 678 (2009)); *Campagna*, 334 F.3d at 155.  For the foregoing reasons, the Complaint does not adequately state a claim against the Municipal Defendants for violation of Plaintiff's First Amendment rights.

    ii.  Due Process Violation

 "For Plaintiff[] to make out a claim for procedural due process, [he] must establish that [he] enjoyed a protected property interest and that Defendants acted under color of state law in depriving [him] of this interest without constitutionally adequate process." *S. Commons Condominium Ass'n v. City of Springfield*, 967 F. Supp. 2d 457, 463 (D. Mass. 2013) (citing *San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 478 (1st Cir. 2012); *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 13 (1st Cir. 2011); *Gallant v. City of Fitchburg*, 739 F. Supp. 2d 39, 46 (D. Mass. 2010)).  "[I]t is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990)).

  In complaining about the denial of IOD status for his knee injury, it is not clear that Plaintiff has alleged a constitutional deprivation.  "As a general principle, there is no constitutional right to overtime pay or similar benefits." *MacFall v. City of Rochester*, 746 F. Supp. 2d 474, 482 (W.D.N.Y. 2010), *aff'd*, 495 F. App'x 158 (2d Cir. 2012) (collecting cases). Assuming nonetheless that Plaintiff had a property interest in the financial benefits of IOD

status, his "complaint makes no allegation that the … remedies available to him are
constitutionally inadequate," *Lambert v. Fiorentini*, 949 F.3d 22, 28 (1st Cir. 2020), given that he
successfully grieved the denial of these financial benefits.  The same is true with respect to
Plaintiff's claims about the denial of his renewal application for his LTC.  *See Hayward*, 2016
WL 11189805, at *9 ("'neither a "property" nor a "liberty" interest is implicated by the ... initial
denial of an [LTC]'" (citing *Costerus v. Neal*, No. Civ. A 00-12156-MEL, 2001 WL 267456, at
*4 (D. Mass. Mar. 9, 2001))).  If Plaintiff had a property interest in renewal of his LTC, he
"cannot show that he lacked an adequate postdeprivation remedy."  *Gonzalez v. Dooling*, 98 F.
Supp. 3d 135, 144 (D. Mass. 2015) (citing *Cronin v. Town of Amesbury*, 81 F.3d 257, 260 (1st
Cir.1996)).  The First Circuit recently held "as a matter of first impression, that Massachusetts
has, in its state certiorari procedure, Mass. Gen. Laws ch. 249, § 4, provided a constitutionally
adequate remedy [for denial of an LTC] which precludes assertion of a federal due process claim
…."  *Lambert*, 949 F.3d at 25.

Plaintiff's allegations about the change in employment status for retired officers and the
City's intention to recoup excess earnings are also plainly deficient.  As an initial matter,
Plaintiff has alleged that these actions were inconsistent with the CBA, not a violation of his
federal statutory or constitutional rights.  The circumstances in which an alleged violation of a
CBA amounts to a constitutional deprivation of property are very limited.  *See MacFall*, 746 F.
Supp. 2d at 482-83.  But even if Plaintiff has adequately alleged a deprivation of a property
interest, he has not alleged "that the state remedies available to him are constitutionally
inadequate."  *Lambert*, 949 F.3d at 28.  The relevant state statute provides for an administrative
appeal when a city or town seeks to recoup excess earnings.  *See Pike v. Melrose Ret. Bd.*, CR-
07-116, 2008 WL 7557373, at *3 (Ma. DALA Apr. 14, 2008) (denying the plaintiff retired police

officer's appeal from the municipality's action to recoup excess earnings).  In short, "[t]he amended complaint is devoid of any information about the process afforded to the [Plaintiff] at the time any adverse actions were taken" by the Municipal Defendants, *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006), and why it was inadequate.  "Without this rudimentary factual underpinning, no cognizable due process claim can be culled from the meanderings of the amended complaint."  *Id.* (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).

To the extent that Plaintiff seeks to assert a substantive due process violation, here too the Complaint fails to state a claim.  Even if Plaintiff has alleged the deprivation of a property right, "'[t]he touchstone of [substantive] due process is protection of the individual against arbitrary action of government.'"  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).  "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  *Id.* at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)).  Crediting Plaintiff's allegations about the conduct at which he takes offense, the acts alleged are "not 'egregiously unacceptable, outrageous, or conscience-shocking.'"  *Lambert*, 949 F.3d at 28 (quoting *Licari v. Ferruzzi*, 22 F.3d 344, 347 (1st Cir. 1994)).  Accordingly, the court recommends dismissal of the claims in Count Four that are asserted against the individual Municipal Defendants.

     iii.  The City – *Monell* Liability

"[M]unicipal liability for civil rights claims can only rest on actions committed by the municipality itself, not on respondeat superior or vicarious liability for acts committed by employees of the Town."  *Palermo v. Town of N. Reading*, 370 F. App'x 128, 129–30 (1st Cir. 2010) (citing *Monell,* 436 U.S. at 694–95).  Where the allegations in the complaint premise "municipal civil rights liability under § 1983 … solely on the actions of municipal employees or

representatives … liability does not attach." *Palermo*, 370 F. App'x at 130 (citing *Monell,* 436 U.S. at 694).  Reading the Complaint in the light most favorable to Plaintiff, he has identified two municipal policies or practices by which he claims to have been injured.  First, he complains about the City's plan to abandon the portal to portal rule for purposes of IOD status.  Second, he complains about the change to employment status for retired police officers working outside detail work.  As is set forth above, however, Plaintiff has not sufficiently alleged a constitutional violation resulting from these policies or practices.  "If a person has suffered no constitutional injury at the hands of the individual [defendants], the fact that [a city policy] might have *authorized* [a constitutional violation] is quite beside the point."  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  Because Plaintiff has not adequately alleged that he suffered an injury of constitutional dimension at the hands of any of the individual Municipal Defendants, the court recommends dismissal of Plaintiff's claims in Count IV against the City.

      iv.    Claims Against Bianchi and Tyer

"Like municipal liability, supervisory liability cannot be predicated on a respondeat superior theory." *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 14 (1st Cir. 2005) (citing *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 48 (1st Cir. 1999)).  Rather, "[a] plaintiff must allege a strong causal connection, or 'an "affirmative link between the behavior of a subordinate and the action or inaction of his supervisor … such that the supervisor's conduct led inexorably to the constitutional violation."'" *Penate*, 944 F.3d at 367 (quoting *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (omission in original)).  The test for supervisory liability "draws on the long-established principle that '[*n]otice* is a salient consideration in determining the existence of supervisory liability.'"  *Id.* (quoting *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998) (emphasis added).

Plaintiff's complaint about Bianchi's conduct is limited to the claim that, when Plaintiff was denied IOD status for his knee injury, Bianchi was the mayor and "did absolutely nothing to correct the retaliatory and unlawful behavior of his Personnel Director" (Compl. ¶ 36).  This is a quintessential attempt to premise liability solely on the basis of Bianchi's position and authority, and, as such, is plainly barred by controlling case law.  *See Ocasio-Hernández*, 640 F.3d at 490. Plaintiff alleges that he filed two grievances with Tyer's office and sent her two letters stating his long-standing grievances with each mayoral administration of the City dating back to 1988 (Compl. ¶¶ 59-60).  These allegations of notice after the fact do not support a reasonable inference that Tyer's conduct "led inexorably" to a violation of Plaintiff's constitutional rights. *Feliciano-Hernández*, 663 F.3d at 533.  For these reasons, Bianchi and Tyer are entitled to dismissal of Plaintiff's federal claims against them.

       3.   Count Eight – Title VII

"[T]here is no individual employee liability under Title VII."  *Fantini v. Salem State Coll.*, 557 F.3d 22, 31 (1st Cir. 2009).  Because the individual Municipal Defendants cannot be personally liable to Plaintiff under Title VII, the court recommends dismissal of so much of Count Eight as alleges claims against any individual Municipal Defendant.

Plaintiff bases his Title VII claim against the City in Count Eight on the ground that Kerwood could not enforce the statutory hours and earnings limitations in Mass. Gen. Laws ch. 32, § 91(a) against him because he was paid with money from outside contractors rather than with municipal funds (Compl. ¶ 136).  While Plaintiff may be claiming that this enforcement action is retaliatory, he has not alleged that it was directed solely at him.  Fairly read, this is an allegation that the City's act violated state law governing pension benefits or the terms of a CBA.

Accordingly, Count Eight fails to allege retaliation based on conduct protected under Title VII, an essential component of a claim under the statute.  *See, e.g., Fantini*, 557 F.3d at 32.

For the foregoing reason, the court recommends dismissal of so much of Count Eight as seeks to state a Title VII claim against the City.

D.      State-law Claims

1.  Supplemental Jurisdiction

If the court accepts the recommendation to dismiss Plaintiff's federal-law claims, that dismissal will set the stage for the court's exercise of informed discretion to decline to adjudicate the remaining state law claims.  "'Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'"  *Robinson v. Town of Marshfield*, 950 F.3d 21, 32 (1st Cir. 2020) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966)).  The First Circuit has directed that, when federal-law claims are dismissed, particularly when dismissal occurs before discovery starts, the better course is dismissal of the state-law claims without prejudice.  If this court accepts the recommendation that the federal-law claims in Counts III, IV, and VIII should be dismissed, the undersigned recommends that the court decline to exercise supplemental jurisdiction over the remaining state-law claims in Counts I, II, V, VI, and VII.  *See Robinson*, 950 F.3d at 32.  If, however, the court exercises supplemental jurisdiction over Plaintiff's state law claims, the undersigned recommends dismissal of those claims for the reasons set forth below.

2.  Count One – Whistleblower Statute

"The Massachusetts Whistleblower Statute gives a municipal employee a civil claim for damages against a city or town that takes 'retaliatory action' against him 'because' he engages in

certain protected conduct." *Wagner v. City of Holyoke*, 241 F. Supp. 2d 78, 97 (D. Mass. 2003), *aff'd*, 404 F.3d 504 (1st Cir. 2005). Plaintiff has not specified under which subsection of ch. 149, § 185(b) he is proceeding. He appears to be pressing claims under subsection (1), which prohibits retaliation against an employee who "[d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, … that the employee reasonably believes is in violation of a law" (Compl. ¶ 110), and subsection (3), which prohibits retaliation against an employee who "[o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law" (Compl. ¶ 111). *See* Mass. Gen. Laws. ch. 149, §§ 185(b)(1), (3).

Viewing the Complaint in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, Plaintiff has not adequately alleged a whistleblower claim. While denial of IOD status might constitute a retaliatory action, Plaintiff has not alleged precipitating protected activity. "Only certain acts are protected by § 185, including, as relevant in this case, disclosures (or threatened disclosures) to a supervisor of and objections to an employer's activity, policy, or practice that the employee reasonably believes violates the law or poses a risk for public health or safety." *Trychon v. Mass. Bay Transp. Auth.*, 59 N.E.3d 404, 410 (Mass. App. Ct. 2016). There are no allegations in the complaint that Plaintiff disclosed or threatened to disclose an activity, policy, or practice that he reasonably believed was unlawful, or that he refused to participate in an activity in the reasonable belief that it was unlawful, and that as a result he was denied IOD status. Instead, Plaintiff alleges in the Complaint that the denial of IOD status preceded and was the reason for his complaints about the subject (Compl. ¶¶ 33-38). *See Trychon*, 59 N.E.3d at 411-12 ("[T]hese sparse facts do not support an inference that before his layoff, [the plaintiff] engaged in any protected activity as to the suspected time fraud."). The

denial of his LTC renewal application, to the extent it can be attributed to the City, also does not

qualify as retaliatory action under the statute, which is defined as "'the discharge, suspension or

demotion of an employee, or other adverse employment action taken against an employee in the

terms and conditions of employment.'" *Amirault v. City of Malden*, 335 F. Supp. 3d 111, 120

(D. Mass. 2018) (quoting Mass. Gen. Laws ch. 149, § 185(a)(5)). Plaintiff's LTC renewal

application was denied after he retired, and the denial was not a change in the terms or conditions

of his employment.

Finally, Plaintiff may be alleging that Kerwood's letter informing Plaintiff that he owed

the Pittsfield Retirement Board $8,000 because he had exceeded the statutory earnings limit was

an adverse employment action taken by the City in retaliation for Plaintiff's objections to

Kerwood's January 2018 letter notifying Plaintiff about the change in employment status of

retired police officers and reminding him about the limits on outside detail work that a retired

officer could perform (Compl. ¶¶ 80-81). Plaintiff had previously written to Kerwood and Tyer

questioning Kerwood's legal authority for this decision when Kerwood announced it (Compl. ¶

82). Thus, Plaintiff has alleged that he complained to the mayor about a policy that he

apparently believed to be a violation of law or regulation (Compl. ¶¶ 82-86). But the statute

requires that the belief be reasonable. *Larch v. Mansfield Mun. Elec. Dep't*, 272 F.3d 63, 68 (1st

Cir. 2001) (upholding the jury verdict because the plaintiff "only had to establish that he

reasonably believed that hiring [that person] would have violated one of the statutes he cited").

Here, Plaintiff's belief that the City's actions were a violation of law is objectively unreasonable

because the limit on earnings for a retired municipal employee is set by a state statute. Pursuant

to Mass. Gen. Laws ch. 32, § 91(a-c),

> a retiree who is receiving a retirement allowance from the commonwealth or any
> county, city, town, or district may be employed in the service of the

> commonwealth, county, city, town, or district for not more than nine hundred and sixty hours in the aggregate, provided that the earnings there from when added to any pension or retirement allowance he is receiving do not exceed the salary that is being paid for the position from which he is retired. … If the hours exceed 960, or the earnings, when added to the pension being paid to the retiree, exceeds the amount allowable, he shall return all earnings that are in excess of said allowable amount to the appropriate treasurer or other person(s) responsible for the payment of compensation.

*Pike*, 2008 WL 7557373, at *3.  "[T]he fact that payments made to the [Plaintiff] were derived by or through private entities does not eliminate the statutory restrictions imposed by G.L. c. 32 § 91(a-c)."  *Id.*  Where Kerwood's January 8, 2018 letters to retired police officers, including Plaintiff, simply reminded them of relevant state law provisions, Plaintiff's belief that Kerwood's actions were in violation of law was not reasonable.  *See Delaney v. Town of Abington*, 211 F. Supp. 3d 397, 403 (D. Mass. 2016), *aff'd*, 890 F.3d 1 (1st Cir. 2018) (dismissing whistleblower claim because "[n]o reasonable person could believe that the payment of legitimately earned overtime could constitute a bribe, or that a factual explanation of a longstanding Town policy regarding the allocation of ticket revenues could amount to a culpable admission to a bribery scheme").  Moreover, Plaintiff objected to the City's actions not because those actions were in violation of a law, rule, or regulation, but because, he claimed, they contravened the CBA (Dkt. No. 1-1 at 100-01).  The terms of a CBA, however, are not a "law, rule or regulation promulgated pursuant to law."  Mass. Gen. Law ch. 149, § 185(b)(1) & (3).  *See Service v. Newburyport Hous. Auth.*, 825 N.E.2d 567, 571 (Mass. App. Ct. 2005) (holding that a whistleblower claim based on a complaint about a violation of a personnel policy "fail[ed] as matter of law because the manual could not reasonably be construed as a 'rule or regulation promulgated pursuant to law'"); *see also Day v. Staples, Inc.*, 555 F.3d 42, 60 (1st Cir. 2009) ("The Massachusetts public policy exception for whistleblowing does not protect 'an employee's

internal complaint about company policies.'" (quoting *Shea v. Emmanuel Coll.*, 682 N.E.2d 1348, 1350 (Mass. 1997)).

If the court retains supplemental jurisdiction over the claim in Count I, the undersigned recommends that the claim be dismissed with prejudice.

3. Count Two – MCRA

To make out a claim under the MCRA, Plaintiff must "'"prove that (1) the exercise or enjoyment of some [federal or state] constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion."'" *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 224-25 (D. Mass. 2017) (quoting *Glovsky v. Roche Bros. Supermarkets, Inc.*, 17 N.E.3d 1026, 1035 (Mass. 2014)). When a plaintiff has not adequately alleged threats, intimidation, or coercion by a defendant, claims under the MCRA are subject to dismissal. *See Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 88 (D. Mass. 2012).

"Massachusetts courts apply an objective 'reasonable person' standard to determine whether conduct constituted threats, intimidation, or coercion." *Spencer v. Roche*, 755 F. Supp. 2d 250, 265 (D. Mass. 2010) (quoting *Haufler v. Zotos*, 845 N.E.2d 322, 335 (Mass. 2006)).

> "A 'threat' means 'the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.'" *Goddard [v. Kelley]*, 629 F. Supp. 2d [115, 128 (D. Mass. 2009)] (quoting *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 631 N.E.2d 985, 990 (1994)). "'Intimidation' means putting a person in fear for the purpose of compelling or deterring his or her conduct." *Id.* "'Coercion' means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do." *Id.*

*Damon v. Hukowicz*, 964 F. Supp. 2d 120, 149 (D. Mass. 2013). "[E]nforcement of the law does not constitute threats, intimidation or coercion." *Walsh v. Town of Lakeville*, 431 F. Supp. 2d 134, 150 (D. Mass. 2006) (citing *Sena v. Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994)).

Viewed in light of these principles, Plaintiff's complaint fails to allege acts by the Municipal Defendants that meet the criteria for threats, intimidation, or coercion. "The elements of 'threats' and 'intimidation' under the MCRA usually require actual or threatened physical force." *Spencer*, 755 F. Supp. 2d at 265. Plaintiff has not alleged any act or statement by any Municipal Defendant that approaches a threat of physical force. Indeed, a majority of the statements about which Plaintiff complains were delivered from a distance in written form. None includes a threat of physical force, explicit or implicit. "Coercion … is a broader category that may rely on physical, moral, or economic coercion." *Id.* The exception for claims based on coercion that does not involve a threat of physical force, however, remains narrow. *Thomas v. Harrington*, 909 F.3d 483, 492 (1st Cir. 2018) ("It is rare for a MCRA claim to involve no physical threat of harm."); *Mason v. Cent. Mass. Transit Mgmt./Worcester Reg'l Transit Auth.*, 394 F. Supp. 3d 166, 174 (D. Mass. 2019) (citing *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 519 (1st Cir. 2009)). Plaintiff's claims against the Municipal Defendants are premised on acts that, as set forth above, either fall within their regular duties as city officials or are authorized or required under state law. Such acts do not amount to threats, intimidation, or coercion and cannot be a basis of liability under the MCRA. *See Walsh*, 431 F. Supp. 2d at 150-51; *Sena*, 629 N.E.2d at 993-94.

Because Plaintiff has not adequately alleged threats, intimidation, or coercion as those terms have been interpreted, if the court retains supplemental jurisdiction over Plaintiff's state-law claims, this court recommends dismissal with prejudice of Plaintiff's MCRA claims against the Municipal Defendants.

4.   Count Five – Intentional Infliction of Emotional Distress

The bar for sustaining a claim for intentional infliction of emotional distress is "very high." *Polay v. McMahon*, 10 N.E.3d 1122, 1128 (Mass. 2014) (citing *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996)).  To sustain such a claim a plaintiff must show:

> (1) that the defendant "intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct[,]" (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community[,]" (3) that the defendant's actions caused the plaintiff distress, and (4) that the plaintiff's emotional distress was severe.

*Wilmot v. Tracey*, 938 F. Supp. 2d 116, 144 (D. Mass. 2013) (quoting *Howell v. Enter. Publ'g Co., LLC,* 920 N.E.2d 1, 28 (Mass. 2010) (citations omitted)).

> Liability for "extreme and outrageous" conduct "cannot be predicated upon 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' nor even is it enough 'that the defendant ... has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort'; rather, '[l]iability [may be] found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"

*Roman v. Trs. of Tufts Coll.*, 964 N.E.2d 331, 341 (Mass. 2012) (quoting *Foley v. Polaroid Corp.,* 508 N.E.2d 72, 82 (Mass. 1987) (quoting Restatement (Second) of Torts § 46 cmt d (1965))) (internal citations omitted).  "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'"  *Hayes v. Mirick*, 378 F. Supp. 3d 109, 117 (D. Mass. 2019) (quoting *Caputo v. Boston Edison, Co.*, 924 F.2d 11, 14 (1st Cir. 1991) (quoting Restatement (Second) of Torts §46 cmt h)).

Putting "'as harsh a face on [the defendants' actions]'" as the alleged facts would reasonably allow, Plaintiff has alleged that the individual Municipal Defendants took actions

they could reasonably believe were required or permitted by state law.  *See Roman*, 964 N.E.2d at 341-42 (quoting *Foley*, 508 N.E.2d at 72).  These kinds of allegations do not rise to the level of "extreme and outrageous" conduct that warrants the imposition of liability.  For this reason, if the court exercises supplemental jurisdiction over Plaintiff's state-law claims, the court recommends dismissal with prejudice of the claims in Count Five of the Complaint against the Municipal Defendants.

> 5.   Count Six – Mass. Gen. Laws 140, §§ 121 *et seq.*

Chapter 284 was part of the 2014 Acts of Massachusetts, which amended the Gun Control Act, Mass. Gen. Laws ch. 140, §§ 121 *et seq.,* and was "[c]omprehensive new state legislation amending a variety of firearms regulations."  *Powell v. Tompkins*, 783 F.3d 332, 338 n.2 (1st Cir. 2015).  "Chapter 140 of Massachusetts General Laws requires licensing for many activities in the Commonwealth, and the regulatory scheme for firearms within that chapter is fairly extensive, incorporating various requirements for lawful possession and carrying relating to the applicant, the setting, and the usage."  *Id.* (citing Mass. Gen. Laws ch. 140, §§ 121-131P; 2014 Mass. Acts ch. 284, § 70).

Under Massachusetts law, "[a]n applicant aggrieved by a denial of an application for a license to carry … or by its suspension or revocation may within ninety days seek review in the District Court having jurisdiction over the Town where the applicant resides."  *Wesson v. Town of Salisbury*, 13 F. Supp. 3d 171, 175 (D. Mass. 2014).  "An appeal of a District Court judge's decision may be taken to the Superior Court by way of an action in the nature of certiorari pursuant to Mass. Gen. Laws ch. 249, § 4."  *Id.* (citing *Godfrey v. Chief of Police of Wellesley*, 616 N.E.2d 485, 486 (Mass. App. Ct. 1993)).  The Supreme Judicial Court has found that the Massachusetts firearms licensing statue does not infringe on a right protected by the Second

Amendment.  *Chardin v. Police Comm'r of Boston*, 989 N.E.2d 392, 394 (Mass. 2013) (holding

that the statute was consistent with *Dist. of Columbia v. Heller,* 554 U.S. 570 (2008), and

*McDonald v. Chicago,* 561 U.S. 742 (2010)).  The First Circuit recently held "as a matter of first

impression, that Massachusetts has, in its state certiorari procedure, Mass. Gen. Laws ch. 249, §

4, provided a constitutionally adequate remedy which precludes assertion of a federal due

process claim" when a municipality denies a retired police officer a license to carry a firearm.

*Lambert*, 949 F.3d at 25.

It does not appear that Plaintiff challenges the constitutionality of the Gun Control Act.

Rather, it appears that Plaintiff seeks to challenge the Municipal Defendants' denial of his

application for renewal of his LTC as beyond their authority under Chapter 140.  In *Plouffe v.*

*Town of Dighton*, 984 F. Supp. 2d 1, 5 (D. Mass. 2013), another session of this court denied a

motion to dismiss a complaint that it construed as seeking a "declaration that the assumption by a

licensing authority of the discretionary right to suspend an FID for a reason that is not

enumerated in Mass. Gen. Laws ch. 140, § 131(d), and further is not charged or adjudicated

under the Safe Storage Act, Mass. Gen. Laws ch. 140, § 131L, violates both due process and a

person's Second Amendment right to bear arms."

This case is distinguishable from *Plouffe* for at least two reasons.  First, as the exhibits

incorporated into the Complaint demonstrate, Plaintiff's LTC renewal application was denied

because he was prohibited person within the meaning of the statute.  Plaintiff has not plausibly

alleged that Municipal Defendants exercised discretion and denied his LTC renewal application

for a reason that was not set forth in the statute.  Second, the court in *Plouffe* ruled that, where

the plaintiff had proceeded directly to federal court, he was not required to exhaust

administrative remedies.  The court further noted, however, that "[h]ad Plouffe sought relief in

the state courts, it [was] unlikely that [the] court would have [had] the jurisdiction to intervene [because] '[a]s courts of *original* jurisdiction, federal district courts sitting in diversity jurisdiction do not have the appellate power, nor the right to exercise supplementary equitable control over original proceedings in the state's administrative tribunals.'" *Id.* at 4 n.5 (quoting *Armistead v. C & M Transp. Inc.*, 49 F.3d 43, 47 (1st Cir. 1995); citing *Rooker v. Fid. Tr. Co.* 263 U.S. 413, 416 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983)).  Here, Plaintiff – in compliance with the state statute – initiated his challenge to the denial of his LTC renewal application in the Pittsfield District Court.  According to his Complaint, Plaintiff went directly from the Pittsfield District Court to this court.  He did not avail himself of the certiorari procedure pursuant to Mass. Gen. Laws ch. 249, § 4, nor, so far as appears from the Complaint, did he file the affidavit requested by the DCJIS describing the circumstances of his controlled substance conviction.  Where Plaintiff invoked his remedies in state court but failed to exhaust them, this court lacks jurisdiction to afford him relief.

Accordingly, if the court exercises supplemental jurisdiction over Plaintiff's state-law claims, the court recommends dismissal of the claims against the Municipal Defendants in Count Six.

6.   Count Seven – Mass. Gen. Laws ch. 151 B, § 4(9)(iii)

Plaintiff's claim in Count VII is very specific: he alleges that the City, Wynn, Wheeler, and others violated Chapter 151B § 4(9)(iii) by seeking, or relying on, information about a misdemeanor conviction which occurred more than three years prior to his LTC renewal application.  Chapter 151B makes it an unlawful practice:

> [f]or an employer, himself or through his agent, in connection with an application for employment, or the terms, conditions, or privileges of employment, or the transfer, promotion, bonding, or discharge of any person, or in any other matter relating to the employment of any person, to request any information, to make or

> keep a record of such information … or to exclude, limit or otherwise
> discriminate against any person by reason of his or her failure to furnish such
> information through a written application or oral inquiry or otherwise regarding:
> … (iii) any conviction of a misdemeanor where the date of such conviction or the
> completion of any period of incarceration resulting therefrom, whichever date is
> later, occurred 3 or more years prior to the date of such application for
> employment or such request for information.

Mass. Gen. Laws ch. 151B, § 4(9)(iii).  Accepting the allegations in the complaint as true,

Plaintiff alleges that Wheeler asked him about a 1974 conviction on a misdemeanor charge when

Plaintiff inquired about the status of his LTC renewal application (Compl. ¶ 71) and that Plaintiff

informed Wynn that he believed that Wynn's refusal to issue the LTC based on a 1974

misdemeanor conviction was a violation of Chapter 151B (Compl. ¶ 86).  As is set forth above,

the statutory provision that prohibits issuance of an LTC to an individual previously convicted of

a violation of a law regulating the use, possession, or sale of a controlled substance is set forth in

Chapter 140 of the Massachusetts General Laws and has no time limit.  *See* Mass. Gen. Laws ch.

140, § 131(d)(ii)(E).  Further, Plaintiff has not alleged that he was asked about his misdemeanor

conviction "in connection with an application for employment, or the terms, conditions, or

privileges of employment, … or in any other matter relating to the employment of any person, to

request any information."  Mass. Gen. Laws ch. 151B, § 4(9)(iii).  Because Plaintiff has failed to

allege that the information about his 1974 conviction was used in connection with any aspect of

his employment, he has failed to state a claim under Mass. Gen. Laws ch. 151B, § 4(9)(iii).

For the foregoing reasons, if the court exercises supplemental jurisdiction over Plaintiff's

claims under Chapter 151B, this court recommends dismissal with prejudice of any such claims

asserted against the Municipal Defendants.

IV.    C<small>ONCLUSION</small>

For the foregoing reasons, the undersigned recommends that the motion to dismiss by the

Municipal Defendants be GRANTED with prejudice as to Counts Three, Four, and Eight and

that the court decline to exercise supplemental jurisdiction over the remaining state-law claims in

Counts One, Two, Five, Six, and Seven and that these claims be dismissed without prejudice.  In

the alternative, the court recommends that the motion to dismiss by the Municipal Defendants be

GRANTED in its entirety, and that all claims against them be dismissed with prejudice.[4]

Dated:  June 29, 2020                                   /s/ Katherine A. Robertson
                                                       KATHERINE A. ROBERTSON
                                                       UNITED STATES MAGISTRATE JUDGE

---

[4] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of service of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.