UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WALTER J. POWELL, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *   Civil Action No. 18-30146-MGM |
| CITY OF PITTSFIELD, et al., | * |
| | * |
| Defendant. | * |

MEMORANDUM AND ORDER RE: REPORTS AND
RECOMMENDATIONS REGARDING DEFENDANTS'
MOTIONS TO DISMISS AND PLAINTIFFS' MOTIONS
(Dkt. Nos. 162, 163, 171, 173, 217, 276, 294, 322, 329, 367, 368, 371,
376, 407, 411, 415, 417, 424, 426, 429, 435, 442, 449, 451, 452, and 456)

December 14, 2020

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Walter J. Powell ("Plaintiff"), proceeding *pro se*, brought this action asserting a mix of federal

and state-law claims against various defendants in relation to events surrounding his employment

with Defendant City of Pittsfield as a police officer.[1] After Plaintiff twice amended his complaint,

---

[1] In particular, Plaintiff's operative complaint names the following Defendants: the City of Pittsfield, Linda Tyer, Daniel Bianchi, the Pittsfield Police Department, Michael Wynn, Susan Wheeler, Matthew Kerwood, and John DeAngelo (together, "Municipal Defendants"); the Pittsfield Retirement Board, Edward Reilly, and Karen Lancto (together, "Pittsfield Retirement Board Defendants"); Michael Grady; Andrew Couture; Kathleen Alexander; and Richard Dohoney. (Dkt. No. 158.) Plaintiff asserts the following claims in his operative complaint: violation of Massachusetts Whistleblower statute, Mass. Gen. Laws ch. 149, § 185 (Count I); violation of Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§ 11H, 11I (Count II); conspiracy under 42 U.S.C. § 1985 (Count III); violation of civil rights under 42 U.S.C. § 1983 (Count IV); intentional infliction of emotional distress (Count V); violation of Mass. Gen. Laws ch. 284 (Count VI); violation of Mass. Gen. Laws ch. 151B § 4(9)(iii) (Count VII); and violation of Title VII of the Civil Rights Act of 1964 (Count VIII). (*Id.* at 55-61.)

Defendants filed motions to dismiss, which this court referred to Magistrate Judge Katherine A. Robertson for report and recommendation. (Dkt. No. 234.) Thereafter, Plaintiff filed a motion for judgment on the pleadings, two additional motions for leave to file amended complaints, and a motion for a protective order, which were also referred to Judge Robertson. (Dkt. Nos. 301, 326, and 339.) After holding a hearing, Judge Robertson issued seven reports and recommendations addressing these pending motions. (Dkt. Nos. 367, 368, 371, 376, 407, 411, and 417.) Thereafter, Plaintiff filed a number of objections, but only some raised substantive arguments addressing the merits of the reports and recommendations. Plaintiff also filed motions to recuse, for reconsideration, and numerous other filings requesting no specific relief (as had become a recurring practice throughout this litigation). For the following reasons, the court will ADOPT the reports and recommendations and DENY Plaintiff's pending motions for recusal and reconsideration.

## II. BACKGROUND[2]

Plaintiff's claims stretch back to 1991, when he was terminated from his employment as a police officer for the City of Pittsfield. That same year, he filed his first lawsuit against the city, alleging racial discrimination and retaliation. In 1993, Plaintiff and the City of Pittsfield entered a settlement agreement which provided for payment of $81,000 and Plaintiff's reinstatement to the police department. It was not until 1996, however, that Plaintiff was finally reinstated, and in 1997 Plaintiff again sued the City of Pittsfield (along with Edward Reilly and Kathleen Alexander) for

---

[2] The following facts are a summary of the non-conclusory, relevant factual allegations in Plaintiff's operative April 8, 2019 complaint (Dkt. No. 158), as well as the facts contained in the exhibits attached thereto and the exhibits attached to Plaintiff's original complaint, which the parties agreed are also incorporated into the April 8, 2019 complaint. (*See, e.g.,* Dkt. No. 367 at 2 n.2.) *See Yacubian v. United States,* 750 F.3d 100, 108 (1st Cir. 2014) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (quoting *Young v. Wells Fargo Bank, N.A.,* 717 F.3d 224, 229 n. 1 (1st Cir.2013))). In addition, where appropriate, the court also considers "documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; . . . documents sufficiently referred to in the complaint"; and official public records. *Foley v. Wells Fargo Bank, N.A.,* 772 F.3d 63, 74 (1st Cir. 2014); *Watterson v. Page,* 787 F.2d 1, 3 (1st Cir. 1993). For a more detailed recitation of the facts, see Judge Robertson's Reports and Recommendations on the motions to dismiss (Dkt. Nos. 367, 368, 371, 376, and 407.)

refusing to honor the terms of the 1993 settlement agreement. In 2002, after a bench trial, Judge

Michael A. Ponsor found in favor of Plaintiff; the judgment included an award of punitive damages

against Alexander. *See Powell v. City of Pittsfield*, 221 F. Supp. 2d 119 (D. Mass. 2002).

Plaintiff alleges Alexander obstructed and delayed his return to work following the 1993

settlement. One such barrier was a requirement that Plaintiff divest from a taxi and limousine

business. After Plaintiff transferred the business to his wife in 1995, two financial institutions filed

suit against Plaintiff to recover loaned funds related to the business. Judgment entered against

Plaintiff in these collection cases in 1996 and 1997, respectively. *See Powell*, 221 F. Supp. 2d at 139.

As part of the court's holding in his 2002 bench trial, it was found that Plaintiff did "not show[], or

attempt[] to show, that he should recover against defendants for the losses he suffered with his

business." *Id.* at 151 n. 9. Judge Ponsor also explained that Plaintiff "was unable to provide

documentation or clear testimony about his damages from lost benefits or retirement earnings" and,

thus, declined to award damages reflecting "any such losses." *Id.* at 151.

In 1998, Alexander, in her capacity as City Solicitor for Pittsfield, signed an answer to a

trustee process complaint against the city filed by one of Plaintiff's creditors related to losses from

the taxi and limousine business. Plaintiff alleges that, due to Alexander's conduct, he was financially

harmed for 19 years because of a garnishment on his wages stemming from the trustee process

action. Plaintiff alleges he learned about Alexander's role in the garnishment in 2015.

In 2003, Michael Grady, in his capacity as a union representative, secured an agreement with

the City of Pittsfield to credit Plaintiff with 35 of the 70 sick days he would have earned had he been

employed continuously from 1991 to 1996. The agreement, which Plaintiff signed, did not provide

for other lost benefits or retirement earnings for that time period. (Dkt. No. 1-1, Ex. B at 39.) In

2009, Plaintiff requested that the City of Pittsfield restore the other 35 sick days, his vacation time,

and retirement benefits for that five-year period, but he was unsuccessful.

In 2014, Plaintiff and his second wife began a two-year divorce, culminating in a Domestic Relations Order ("DRO") awarding a portion of Plaintiff's pension to his second wife.[3] In 2016, the Pittsfield Retirement Board accepted and implemented the DRO.

On October 25, 2015, Plaintiff slipped and injured his knee while leaving his house on the way to work. (Dkt. No. 1-2, Ex. N at 110.) Plaintiff expected this injury to qualify for injury on duty ("IOD") status, but the City of Pittsfield determined it did not. Plaintiff thereafter requested that his union file a grievance on his behalf, but the union representatives along with union president Andrew Couture delayed in doing so. After Chief Michael Wynn denied a grievance filed by the union on Plaintiff's behalf, and Plaintiff filed additional grievances, the City of Pittsfield in April of 2016 restored all of the sick and vacation time Plaintiff used to recover from his knee injury, treated Plaintiff as having been at full pay status during his sick leave, reimbursed him for co-pays for treatment of the injury, and reimbursed him for taxes withheld from his paychecks during his leave. (Dkt. No. 1-1, Ex. C7 at 55.)

Plaintiff retired from the Pittsfield Police Department on October 1, 2016. On January 9, 2017, Plaintiff filed an application to renew his license to carry a firearm ("LTC"), which was set to expire on March 16, 2017. On August 7, 2017, Chief Wynn denied Plaintiff's LTC renewal application on the grounds that Plaintiff was statutorily barred under Mass. Gen. Laws ch. 140, § 131(d) as having "been convicted as an adult, or . . . adjudicated a youthful offender or delinquent child . . . in the Commonwealth, or in another state or federal jurisdiction, for the commission of . . . a violation of any law regulating the use, possession, or sale of controlled substances, as defined in M.G.L. c. 94C, § 1." (Dkt. No. 1-1, Ex. G-1 at 68.) On November 3, 2017, Plaintiff filed suit in Pittsfield District Court challenging the denial of his LTC renewal application. The Pittsfield District Court, on December 13, 2017, reversed Chief Wynn's decision. Thereafter, Plaintiff attempted

---

[3] Pursuant to a separate DRO, a portion of Plaintiff's pension also was assigned to his first wife.

unsuccessfully to get his LTC reissued. On February 20, 2018, Plaintiff filed a contempt motion in

Pittsfield District Court arguing the city failed to comply with the decision overruling Wynn's denial

of the LTC application. Wynn, represented by Richard Dohoney as Pittsfield City Solicitor,

responded to the Pittsfield District Court with an affidavit explaining that he had forwarded

Plaintiff's application to the Commonwealth Department of Criminal Justice Information Services

("DCJIS") for approval and printing. (Dkt. No. 1-2, Ex. G at 70.) The Pittsfield District Court

denied Plaintiff's motion for contempt on March 5, 2018. (Dkt. No. 172-10.)

Thereafter, Plaintiff filed a Motion to Compel Order of Compliance, seeking enforcement of

the Pittsfield District Court's reversal order. Wynn in response filed an affidavit of Michaela Dunne,

Manager of the Law Enforcement and Justice Services of the DCJIS, explaining that DCJIS did not

activate Plaintiff's LTC because of a 1974 New York conviction for possession of a controlled

substance, which barred the LTC under Mass. Gen. Laws ch. 140, § 131(d)(ii)(F).[4] Plaintiff alleges

the Dunne affidavit was fabricated, but the Pittsfield District Court apparently accepted the affidavit,

as it denied Plaintiff's Motion to Compel Order of Compliance. (Dkt. No. 1-2 at 118; Dkt. No. 172-

10.)

After his retirement, Plaintiff continued to perform outside detail work for the City of

Pittsfield.[5] In January of 2018, Matthew Kerwood, Pittsfield's Finance Director and Treasurer, wrote

to Plaintiff and other retired Pittsfield police officers informing them that the city was changing the

---

[4] Ms. Dunne's affidavit explained, however, that because the possession of less than one ounce of marijuana has been decriminalized in Massachusetts, "individuals that were previously convicted of marijuana possession of less than one ounce in Massachusetts or another state are eligible for possession of a firearms license." (Dkt. No. 1-2, Ex. N-2 at 123.) Thus, Ms. Dunne explained, Plaintiff would have to complete an affidavit "attesting to the type and amount of the substance that was the basis for the 1974 New York conviction" and, if he attests the substance was marijuana as decriminalized under Massachusetts law, "DCJIS will proceed to activate the firearms license." (Id.) If, however, the affidavit attests to a different substance or an amount of marijuana greater than one ounce, Ms. Dunne explained that Plaintiff is statutorily barred under Mass. Gen. Laws ch. 140, § 131(d)(ii)(F) and "DCJIS will not activate a license found to be in violation of state firearms licensing laws." (Id. at 123-24.)

[5] Plaintiff alleges that in June of 2017, there was a five-day delay between the date he received checks for outside detail work and the date other retired officers received them. (Dkt. No. 1-1, Ex. F, at 64.) Given the brief nature of the delay and the lack of information surrounding its circumstances, the court does not consider this allegation further.

way retired officers would be paid for outside detail work. The letter explained that the retired

officers would no longer be paid as vendors, based on a recommendation from an outside auditor;

their earnings would be subject to state and federal taxes and Medicare tax deductions; and they

would need to complete a W-4 form. (Dkt. No. 1-1, Ex. L-1 at 96.) The letter also reminded the

retired officers that, as public sector retirees, their public sector hours and earnings were subject to

limits under Massachusetts law, which they acknowledged in a signed notice upon retirement (and

which Kerwood attached to his letter), and that failure to comply with the limitations "will result in

the reduction of your pension." (*Id.*) Plaintiff alleges that this change to his outside detail work

reduced the number of hours retired officers could work and their earnings, but as the signed

acknowledgement attached to Kerwood's letter makes clear (and as discussed below), the hour and

earnings limitations applied prior to the January of 2018 change. (*See* Dkt. No. 1-2 at 88 (letter

responding to Plaintiff from Joseph Connarton, Executive Director of the Public Employee

Retirement Administration Commission, explaining that the public sector retiree limitations under

Massachusetts law "apply regardless of whether a retiree is paid as an employee or as a contractor,

consultant or vendor").) In November of 2018, Plaintiff was removed from the outside detail list for

the remainder of 2018, and in February of 2019, the Pittsfield Retirement Board, through counsel,

notified Plaintiff that he had exceeded his earnings and hour limitations for 2018 and the board

sought to recoup the excess funds.[6]

## III. PROCEDURAL ISSUES

The court first addresses two preliminary procedural matters before turning to the merits of

Plaintiff's claims. Plaintiff complains in various filings that Defendants have not filed answers but,

---

[6] Plaintiff alleges, in his proposed amended complaint, that although the Pittsfield Retirement Board initially sought to recoup $8,074 for alleged overearnings in 2018, it subsequently sought to recoup $1,940 for that year. (Dkt. No. 294-1 at 58; *see also* Dkt. No. 309-1, Exs. 1-4.)

instead, have been permitted to file multiple motions to dismiss. As both the undersigned and Judge Robertson have explained, however, Defendants' motions to dismiss are responsive to Plaintiff's amended complaints. (Dkt. No. 160; Dkt. No. 417 at 4.) That is, Defendants are entitled to respond to each iteration of Plaintiff's complaint by filing either a motion to dismiss under Fed. R. Civ. P. 12(b) or an answer. Because Defendants filed motions to dismiss, they are not yet required to file answers. *See* Fed. R. Civ. P. 12(a)(4).

In addition, because no answers have been filed, Plaintiff's motion for judgment on the pleadings, which "implicates the pleadings as a whole," *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 55 (1st Cir. 2006), is premature. *See* Fed. R. Civ. P. 12(c); *Rezende v. Ocwen Loan Servicing, LLC*, 869 F.3d 40, 42 n.3 (1st Cir. 2017). Accordingly, the court ADOPTS Judge Robertson's Report and Recommendation Concerning Plaintiff's Rule 12(c) Request for Judgment on the Pleadings (Dkt. No. 411) and, therefore, DENIES Plaintiff's motion for judgment on the pleadings (Dkt. No. 276). The court also DENIES AS MOOT Plaintiff's September 17, 2020 Motion for Reconsideration (Dkt. No. 451) and Plaintiff's October 1, 2020 Motion to Re-assert Relief from Judgment (Dkt. No. 456), both of which seek reconsideration of Judge Robertson's Report and Recommendation regarding the motion for judgment on the pleadings.

## IV. MOTIONS TO DISMISS

A.      Untimely Claims

Plaintiff's claims against Alexander, which arise out of her conduct in 1998 in filing an answer to a trustee process complaint, are barred by the applicable statutes of limitations. Moreover, as Judge Robertson explained, neither the continuing violations doctrine nor the discovery rule render his claims timely. Contrary to Plaintiff's argument, the fact that he continued to feel the effect of Alexander's discrete action until 2016 does not make it a continuing violation under federal or

state law. *See Ayala v. Shinseki*, 780 F.3d 52, 57-59 (1st Cir. 2015); *Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination*, 808 N.E.2d 257, 266-68 (Mass. 2004). In addition, Plaintiff was on notice as to the alleged harm given that his wages were garnished for 19 years, and he reasonably could have discovered Alexander's role had he reviewed, in 1998, the court files he read in 2015. Accordingly, under these circumstances, the discovery rule does not toll the accrual of the statutes of limitations until Plaintiff's actual discovery of Alexander's involvement in the collection action. *See Ouellette v. Beaupre*, 977 F.3d 127, 138 (1st Cir. 2020); *Bowen v. Eli Lilly & Co.*, 557 N.E.2d 739, 741-43 (Mass. 1990). The court therefore ADOPTS Judge Robertson's Report and Recommendation Concerning Defendant Kathleen G. Alexander's Motion to Dismiss (Dkt. No. 368) and ALLOWS Alexander's Motion to Dismiss (Dkt. No. 163) in its entirety.

Similarly, Plaintiff's claims against Grady, which are based on the 2003 settlement agreement that credited Plaintiff with 35 sick days, are barred by the statutes of limitations. As Judge Robertson explained, Plaintiff—who signed the 2003 agreement—"had, at most, three years from the date of the settlement agreement to file any claims he had premised on the Union's alleged failure to protect his rights adequately in 2003" by not securing additional benefits on his behalf. (Dkt. No. 376 at 9.) The court will therefore dismiss all of Plaintiff's claims against Grady.[7]

B.  <u>Res Judicata</u>

Plaintiff has made clear that his "main complaint and charge [is] the City of Pittsfield's refusal to be in compliance with Judge Michael A. Ponsor's 2002" Memorandum of Decision, in that it has not fully credited his retirement and other benefits for the five years during which he was not

---

[7] In addition to Plaintiff's federal claims, which this court has jurisdiction over pursuant to 28 U.S.C. § 1331, the court has supplemental jurisdiction over his state-law claims pursuant to 28 U.S.C. § 1367. As to the state-law claims against Alexander and Grady, the court exercises supplemental jurisdiction and dismisses those claims because they are time barred on the same basis as the federal claims. Under these circumstances, therefore, dismissal of the state-law claims asserted against Alexander and Grady "best serves the interests of fairness, judicial economy, convenience, and comity," as "no substantial question of state law is presented." *Robinson v. Town of Marshfield*, 950 F.3d 21, 31 (1st Cir. 2020) (internal question marks omitted).

employed. (*See, e.g.*, Dkt. No. 422 at 19.) But, aside from being untimely, this contention is barred by *res judicata. See Breneman v. U.S. ex rel. F.A.A.*, 381 F.3d 33, 38 (1st Cir. 2004) ("Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." (internal quotation marks omitted)). Judge Ponsor explicitly declined to award "damages from lost benefits or retirement earnings" because Plaintiff failed "to provide documentation or clear testimony about" such damages at the 2002 bench trial. *Powell*, 221 F. Supp. 2d at 151. Thus, because Plaintiff's opportunity to demonstrate those losses was in his 1997 action, he cannot seek recovery in this case many years later. *See Breneman*, 381 F.3d at 38 ("Res judicata relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and . . . encourage[s] reliance on adjudication." (internal quotation marks omitted)). In fact, Plaintiff filed, in 2016, a motion to reopen the judgment in the 1997 case based, in part, on the city's refusal to fully credit benefits to him for those five years. (*See* 97-cv-30189, Dkt. No. 145.) Judge Ponsor denied Plaintiff's motion to reopen, explaining that he lacked authority to do so, as judgment entered "almost fourteen years ago." (97-cv-30189, Dkt. No. 146.) Accordingly, as Judge Robertson explained, Plaintiff's claims based on lost retirement and other benefits from 1991 to 1996 are barred by *res judicata*, and his contention that Defendants are in contempt of the 2002 judgment is without merit. (*See* Dkt. No. 367 at 8 n.4; Dkt. No. 376 at 2 n.1.)

C.    DRO

Plaintiff's federal claims based on the Pittsfield Retirement Board's implementation of the DRO, following his second divorce, are similarly without merit. The Supreme Judicial Court has held that "the pension benefits of . . . a public employee [are] properly included as [divisible] marital property" under Massachusetts law. *Early v. State Bd. of Ret.*, 652 N.E.2d 598, 599 (Mass. 1995); *see also id.* at 600 ("General Laws c. 32, § 19, specifically authorizes assignment of a member's interests

in the retirement system in the division of marital property under G.L. c. 208."). As Judge Robertson

explained, "Plaintiff has pointed to no authority, and the court is aware of none, that suggests that

compliance with these state-law principles is a violation of any federal constitutional or statutory

right." (Dkt. No. 367 at 10.) Accordingly, the court rejects Plaintiff's arguments in support of his

federal claims against the Pittsfield Retirement Board regarding the DRO.

D.      Retiree Earnings Limitations and Pension Recoupment

        Plaintiff's final set of allegations supporting his federal claims against the Pittsfield

Retirement Board relate to the recoupment of excess retirement earnings. Under Mass. Gen. Laws

ch. 32, § 91(a), "individuals collecting benefits via a State or local retirement program may generally

not be paid for services rendered to the State or locality." *Pellegrino v. Springfield Parking Auth.*, 866

N.E.2d 924, 927 (Mass. App. Ct. 2007).[8] This general prohibition "is of long standing, having

existed in Massachusetts," in some form, "at least since 1913." *Bristol Cty. Ret. Bd. v. Contributory Ret.

Appeal Bd.*, 841 N.E.2d 274, 277 (Mass. App. Ct. 2006). However, "the general prohibition contained

in G.L. c. 32, § 91(*a*) is inapplicable," *Pellegrino*, 866 N.E.2d at 927, if the retiree is "employed in the

service of" a municipality ("including as a consultant or independent contractor") and (1) his hours

are limited to "not more than nine hundred and sixty hours in the aggregate, in any calendar year";

and (2) the combined total of his earnings from that post-retirement employment and the pension or

retirement allowance "do[es] not exceed the salary that is being paid for the position from which he

was retired'" plus an additional $15,000 after the first 12 months of retirement, Mass. Gen. Laws ch.

32, § 91(b); *see Bristol Cty. Ret. Bd.*, 841 N.E.2d at 278 ("The statute reflects a clear policy that an

employee of a governmental unit in Massachusetts generally may not retire, receive a pension, accept

---

[8] Specifically, section 91(a) states that "no person while receiving a pension, disability pension or retirement allowance from the commonwealth, or from any county, city, town, district or authority shall, after the date of his retirement be paid for any service rendered to the commonwealth or any county, city, town or district," subject to a number of listed exceptions. Mass. Gen. Laws ch. 32, § 91(a).

employment elsewhere in the government, and, by combining her pension and her new compensation, make more money than if she had not retired.").

Moreover, under section 91(c), "if the earnings therefrom exceed the amount allowable under paragraph (b), [the retiree] shall return to the appropriate treasurer or other person responsible for the payment of compensation all such earnings as are in excess of said allowable amount." Mass. Gen. Laws ch. 32, § 91(c). The Massachusetts Appeals Court has held "that, in the absence of a return of such amounts to the employing agency, the excess earnings may be recovered by the retirement board that pays the employee his pension." *Bristol Cty. Ret. Bd.*, 841 N.E.2d at 278 (citing *Flanagan v. Contributory Retirement Appeal Bd.*, 750 N.E.2d 489, 491-93 (Mass. App. Ct. 2001)).

Plaintiff argues he did not exceed the public sector retiree limitations set forth in Mass. Gen. Laws ch. 32, § 91(b). For example, Plaintiff argues in his objection that the Pittsfield Retirement Board used incorrect pension figures, relying on tax documents showing the taxable income from his pension distribution. (*See* Dkt. No. 373.) But, as the Pittsfield Retirement Board explained in correspondence incorporated into Plaintiff's complaint and central to his claims (*see* Dkt. No. 158 at 69; Dkt. No. 294-1 at 58), Plaintiff's figures fail to take into account his obligations under the DROs to his two ex-wives. That is, because the DROs require the Pittsfield Retirement Board to pay a portion of Plaintiff's pension to his two ex-wives as taxable income to them, that portion is not considered taxable income to Plaintiff but is still counted as part of the total retirement allowance under the limitations set forth in Mass. Gen. Laws ch. 32, § 91(b). (Dkt. No. 309-1, Ex. 2 (citing *Lawrence Borin v. Massachusetts Teachers' Retirement System*, CR-14-53 (MA. CRAB Oct. 18, 2017).)[9] In

_____

[9] Under Mass. Gen. Laws ch. 32, § 16(4), any person aggrieved by a decision of a retirement board can appeal that decision to the Massachusetts Contributory Retirement Appeal Board (CRAB). *See Murphy v. Contributory Ret. Appeal Bd.*, 974 N.E.2d 46, 50 (Mass. 2012). "CRAB assigns the appeal to the division of administrative law appeals (DALA) for a hearing" before an administrative magistrate, who issues a decision. *Id.* (citing Mass. Gen. Laws ch. 32, § 16(4)). A party may object to the administrative magistrate's decision to CRAB, and CRAB must then consider the appeal. *See id.;* Mass. Gen. Laws ch. 32, § 16(4). CRAB has "the power to subpoena witnesses, administer oaths and examine such parts of the books and records of the parties to a proceeding as relate to questions in dispute." Mass. Gen. Laws Ann. ch. 32, § 16(4).

other words, Plaintiff does not get to exceed the earnings limitations under section 91(b) simply because part of his pension has been assigned pursuant to the DROs, at least according to the Contributory Retirement Appeal Board, "which generally is entrusted final responsibility for the administration and uniform application of the retirement laws," *Kozloski v. Contributory Ret. Appeal Bd.*, 814 N.E.2d 730, 733 (Mass. App. Ct. 2004).[10]

In addition, as Judge Robertson explained, Plaintiff's argument that these limitations do not apply to his outside detail work because third parties, rather than the city, pay for such work has been rejected by the Massachusetts Division of Administrative Law Appeals in *Pike v. Melrose Ret. Bd.*, 2008 WL 7557373, at *3 (Ma. DALA Apr. 14, 2008) (explaining that retired police officers performing outside detail work, which entails "the same duties as [active] police officers," are "performing work duties for the municipality" under Mass. Gen. Laws ch. 32, §91(b), because the "duties [are] specifically designed to ensure the safety and well-being of the general public"). Similarly, Plaintiff's argument that Kerwood improperly changed his status from vendor to city employee after retirement, thus subjecting him to the limitations under Mass. Gen. Laws ch. 32, § 91(b) which would not have otherwise applied, is contradicted by the plain language of the statute, as explained in the letter from PERAC then-Executive Director Joseph Connarton (Dkt. No. 1-2 at 88),[11] as well as the acknowledgment Plaintiff signed upon retirement (Dkt. No. 1-1 at 98). *See* Mass.

---

Copies of both the DALA decision and the CRAB decision in *Lawrence Borin v. Massachusetts Teachers' Retirement System*, CR-14-53, which address this DRO issue, are attached hereto as Appendix 1 and Appendix 2, respectively.

[10] The court notes that, under Massachusetts law, Plaintiff is required to exhaust his administrative remedies through the comprehensive administrative review scheme before challenging these pension decisions in court. *See Daniels v. Contributory Ret. Appeal Bd.*, 640 N.E.2d 467, 468 (1994); *see also Kozloski v. Contributory Ret. Appeal Bd.*, 814 N.E.2d 730, 733 (2004) ("In the notoriously difficult, sometimes tortuous, field of retirement rights and calculations, there is particular reason for giving deference to [CRAB's] expertness." (internal quotation marks omitted)). Plaintiff admittedly has not exhausted his administrative remedies. *But see Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019) ("[T]he settled rule is that 'exhaustion of state remedies is not a prerequisite to an action under [42 U.S.C.] § 1983.'" (quoting *Heck v. Humphrey*, 512 U.S. 477 (1994))).

[11] The Public Employee Retirement Administration Commission ("PERAC") "approves local board determinations and supervises their accounting and record-keeping practices, G.L. c. 32, § 21, and is 'charged by statute with over-all responsibility to administer the public employee retirement system.'" *Bos. Ret. Bd. v. Contributory Ret. Appeal Bd.*, 803

Gen. Laws ch. 32, § 91(b) (stating the hour and earnings limitations apply to those "employed in the *service* of the commonwealth, county, city, town, district or authority, *including as a consultant or independent contractor* or as a person whose regular duties require that his time be devoted to the service of the commonwealth, county, city, town, district or authority" (emphasis added)); *Pellegrino v. Springfield Parking Auth.*, 866 N.E.2d 924, 928 (Mass. App. Ct. 2007) (explaining that section 91(a) "generally prohibits anyone who is receiving a city or State pension not only from being employed by the city, but also from being 'paid for any *service* rendered'" (emphasis in original)).

In short, Plaintiff's allegations and arguments as to retiree earnings limitations and recoupment, rather than demonstrating a nefarious plot against him, show officials acting in compliance with uniformly applicable state law. Plaintiff has not alleged facts plausibly suggesting the Pittsfield Retirement Board singled Plaintiff out for adverse treatment, hindered his efforts to pursue a legal claim, participated in a conspiracy, or otherwise violated Plaintiff's federally secured constitutional or statutory rights.[12] Accordingly, the court ADOPTS Judge Robertson's Report and Recommendation Concerning Defendants Pittsfield Retirement Board, Karen Lancto, Edward M. Reilly, and Matthew M. Kerwood's Motion to Dismiss (Dkt. No. 367). The court therefore ALLOWS the Pittsfield Retirement Board Defendants' motion to dismiss (Dkt. No. 162) and

---

N.E.2d 325, 328 (Mass. 2004) (quoting *Barnstable Cty. Ret. Bd. v. Contributory Ret. Appeal Bd.*, 683 N.E.2d 290, 293 (Mass. App. Ct. 1997)). In his letter to Plaintiff, which is attached to Plaintiff's original complaint, Connarton states: "All Massachusetts public pension retirees who are working post-retirement in the public sector in Massachusetts, including those working paid police details, are subject to post-retirement limitations on their earnings. . . . These limitations are in place for all retirees of Massachusetts pension systems, and these limitations apply regardless of whether a retiree is paid as an employee or as a contractor, consultant or vendor." (Dkt. No. 1-2 at 88.)

[12] This same analysis regarding retiree earnings limitations applies to Plaintiff's claims against the Municipal Defendants, including Matthew Kerwood (in his capacity as city Treasurer), who changed Plaintiff's post-retirement employment status in January of 2018. As to the § 1985 conspiracy claim in particular, the Municipal Defendants would be entitled to qualified immunity under the principles of *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867-69 (2017). (*See* Dkt. No. 172 at 28.) As to the Title VII claim against the Municipal Defendants, which is based solely on this retiree earnings limitation issue, Plaintiff has not plausibly alleged retaliation based on "a protected activity within the meaning of the statute." *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009). In addition, as Judge Robertson explained, Plaintiff's Title VII claim against the Pittsfield Retirement Board defendants fails because the Pittsfield Retirement Board was not Plaintiff's employer. (Dkt. No. 367 at 19.)

13

dismisses the federal claims (Counts III, IV, and VIII) with prejudice. In addition, the court declines to exercise supplemental jurisdiction over the remaining state-law claims (Counts II and V) and dismisses those claims without prejudice. *See Rossi v. Gemma*, 489 F.3d 26, 39 (1st Cir. 2007) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims." (quoting *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995)).

E.    <u>Injury on Duty</u>

Plaintiff's federal claims based on his 2015-2016 IOD dispute, which he asserts against Couture as union president and the Municipal Defendants, fare no better. Plaintiff injured his knee walking down the exterior stairs of his own house before driving to work for his shift. (Dkt. No. 1-2 at 110.) Under Massachusetts law, "[w]henever a police officer . . . is incapacitated for duty because of injury *sustained in the performance of his duty* without fault of his own . . . he shall be granted leave without loss of pay for the period of such incapacity." Mass. Gen. Laws ch. 41, § 111F (emphasis added). As Judge Robertson explained, in light of the plain language of the statute, the City of Pittsfield "took the plausible position that an injury sustained by a police officer" in this manner was not "an injury on the job." (Dkt. No. 407 at 11.) In any event, Plaintiff eventually "was successful in obtaining relief, whether though his own efforts, as he believes, or through those of the union, which ultimately signed an agreement with the City resolving the grievance filed on his behalf," resulting in his injury being treated as an IOD under Mass. Gen. Laws ch. 41, § 111F. (*Id.* at 12; *see* Dkt. No. 1-1 at 55.)

These facts do not support Plaintiff's conclusory allegations of a civil rights conspiracy under 18 U.S.C. § 1985. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) ("A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)."); *see also Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980) ("Though we are mindful

that pro se complaints are to be read generously, . . . allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements." (citation omitted)); *Rolon v. Rafael Rosario & Assocs., Inc.* (D.P.R. 2006) (a complaint alleging § 1985 conspiracy "must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred"). Here, as in *Slotnick*, Plaintiff's complaint "neither elaborates nor substantiates its bald claims that certain defendants 'conspired' with one another." *Slotnick v. Garfinkle*, 632 F.2d at 166.

These facts also do not support Plaintiff's constitutional claims under section 1983, as Judge Robertson explained. Plaintiff's First Amendment claim fails because his speech as to the IOD issue was related to matters of personal, rather than public, concern. *Rosaura Bldg. Corp. v. Municipality of Mayaguez*, 778 F.3d 55, 66-67 (1st Cir. 2015) ("If plaintiff's speech is not on a matter of public concern, there is no First Amendment cause of action."). In addition, Plaintiff has not plausibly alleged that his speech or his efforts to pursue a legal claim were hindered in any way. Moreover, as Judge Robertson explained, to the extent Plaintiff relies on his prior lawsuits as the protected activity,[13] "[t]he City's response to Plaintiff's 2015 knee injury took place years after Plaintiff's 1991 and 1997 lawsuits were resolved and was consistent with the relevant statutory provision and thus cannot support the inference that the decision was in retaliation for Plaintiff's earlier petitioning activity." (Dkt. No. 407 at 21.) As to Plaintiff's due process claim, even assuming he has a constitutionally protected property interest in IOD benefits, he has not plausibly alleged that "the remedies available to him [were] constitutionally inadequate," *Lambert v. Fiorentini*, 949 F.2d 22, 28 (1st Cir. 2020), since he successfully obtained such benefits, nor do his allegations rise to the level of

---

[13] As Judge Robertson noted, "Plaintiff has not been specific in identifying the constitutionally protected conduct in which he engaged and the retaliatory actions the Municipal Defendants allegedly took retaliation for such conduct." (Dkt. No. 407 at 20.) *See Rosaura Bldg. Corp.*, 778 at 67 (explaining that "it is vital for any [first amendment retaliation] claim to clearly present the protected activity on which it is premised").

a substantiative due process violation, *see id.* (substantive due process claims require conduct that is "egregiously unacceptable, outrageous, or conscience-shocking" (internal quotation marks omitted)).

Plaintiff's section 1983 claim against Couture, as his union president, also fails because "[l]abor Unions are . . . not state actors," *Mason v. Cent. Mass Transit Mgmt./Worcester Reg'l Transit Auth.*, 394 F. Supp. 3d 166, 173 (D. Mass. 2019), and the complaint does not plausibly demonstrate that any of the exceptions regarding section 1983 suits against private individuals apply. *See Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5-8 (1st Cir. 2005). Accordingly, given the court's conclusion above that the claims against Grady are untimely, the court ADOPTS Judge Robertson's Report and Recommendation Concerning Defendant Michael Grady and Andrew Couture's Motion to Dismiss (Dkt. No. 376). The court therefore ALLOWS Grady and Couture's motion to dismiss (Dkt. No. 173), dismisses both the federal and state-law claims against Grady with prejudice, *see supra* note 7, and dismisses the federal claims (Counts III and IV) against Couture with prejudice but declines to exercise supplemental jurisdiction over the remaining state-law claims (Counts II and V) against Couture and dismisses those claims without prejudice.

F.    <u>License to Carry</u>

Lastly, Plaintiff brings claims against the Municipal Defendants and Dohoney related to his LTC. Plaintiff alleges that despite his successful challenge of the denial of his LTC renewal application in Pittsfield District Court, he still cannot obtain his LTC and the City of Pittsfield (along with Dohoney, who represented Chief Wynn in Pittsfield District Court) is at fault. In particular, Plaintiff alleges in conclusory fashion that the affidavit of Michaela Dunne, Manager of the Law Enforcement and Justice Services of the DCJIS, submitted to the Pittsfield District Court was fabricated. *See Penalbert Rosa v. Fortuno-Burset*, (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross "the line between the conclusory and the factual." (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

557 n. 5 (2007)); *see also* Fed. R. Civ. P. 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). But, as Plaintiff admits, this precise issue has been litigated in Pittsfield District Court and, as Judge Robertson explained, "it appears that the affidavit was accepted by the Massachusetts District Court" when it denied Plaintiff's Motion to Compel Order of Compliance. (Dkt. No. 371 at 4; *see* Dkt. No. 1-2 at 118; Dkt. No. 172-10.) Plaintiff, to the extent he disagreed with the Pittsfield District Court's rulings in this regard, could have appealed to the state Superior Court under Mass. Gen. Laws ch 249, § 4. *See Lambert*, 949 F.3d at 28 (citing *Frawley v. Police Com'r of Cambridge*, 46 N.E.3d 504, 510-11 (Mass. 2016)). However, given that Plaintiff invoked the state court's jurisdiction over this matter, this federal court lacks the authority to interfere with its adjudication of this issue.

Granted, Plaintiff also alleges a delay between Plaintiff's LTC renewal application and its denial by Chief Wynn. But "delay by itself does not state a constitutional claim." *Lozano v. Superior Court of Maine*, 2020 WL 5803439, at *1 (D. Me. Sept. 29, 2020) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985)). In addition, as Judge Robertson explained, "Plaintiff has not alleged that Wynn treated him differently than he treated any other retired police officer with respect to an LTC renewal application or that Wynn conspired with any other individual to prevent Plaintiff from obtaining an LTC." (Dkt. No. 407 at 14.) Again, as to the First Amendment, Plaintiff's speech on this issue was personal, rather than a matter of public concern, and neither his speech nor his efforts to pursue a legal claim were hindered in any perceptible way. Moreover, in light of the statutory prohibition under Mass. Gen. Laws ch. 140, § 131(d)(ii)(F)—which, Plaintiff does not dispute, applies to his 1974 conviction—it is simply implausible that the city's actions regarding the LTC were motivated by Plaintiff's petitioning activity, rather than a desire to comply with the statute. *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) ("As between [the] 'obvious alternative explanation' . . . , and the purposeful, invidious discrimination respondent asks us to infer,

discrimination is not a plausible conclusion." (quoting *Twombly*, 550 U.S. at 567)).[14] As to Plaintiff's due process claim, the First Circuit recently held that the Massachusetts state certiorari procedure, under Mass. Gen. Laws ch 249, § 4, "provides a constitutionally adequate remedy which precludes assertion of a federal due process claim," *Lambert*, 949 F.3d at 25; *see also Frawley*, 46 N.E. 3d at 514-15, and, again, these allegations do not approach a substantive due process violation.[15]

Accordingly, the court ADOPTS Judge Robertson's Reports and Recommendations as to both the Municipal Defendants' motion to dismiss (Dkt. No. 407) and Dohoney's motion to dismiss (Dkt. No. 371). The court therefore ALLOWS the Municipal Defendants' motion to dismiss (Dkt. No. 171), dismisses the federal claims (Counts III, IV, and VIII) with prejudice, and declines to exercise supplemental jurisdiction over the remaining state-law claims (Counts I, II, V, VI, and VII) and dismisses those claims without prejudice. Similarly, the court ALLOWS Dohoney's motion to dismiss (Dkt. No. 217), dismisses the federal claims (Counts III, IV, and VIII) with prejudice, and declines to exercise supplemental jurisdiction over the remaining state-law claims (Counts II, V, VI, and VII) and dismisses those claims without prejudice.

## V. OTHER MOTIONS

### A.   Motions to Amend

On September 30, 2019 and October 15, 2019, Plaintiff filed motions to further amend his complaint. (Dkt. Nos. 294, 322.) Judge Robertson has recommended that both motions be denied as futile and this court agrees.

---

[14] As Judge Robertson explained: "The fundamental shortcoming is that the Complaint does not 'support a fact-based inference' that the Municipal Defendants' actions were anything other than routine actions undertaken by city officials in the exercise of their responsibilities." (Dkt. No. 407 at 20 (quoting *Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003)).)

[15] The court notes that Plaintiff has not asserted a Second Amendment claim.

1. September 30, 2019 Motion to Amend

In his September 30, 2019 motion to amend, Plaintiff seeks to add as Defendants additional members of the Pittsfield Retirement Board (Timothy Hannigan, Timothy Bartini, and William Flynn), the attorney in this action representing the Pittsfield Retirement Board (Michael Sacco), the attorney in this action representing the Municipal Defendants (Jeffrey Trapani), and the current Executive Director of the Public Employee Retirement Administration Commission (John W. Parsons). Plaintiff alleges these defendants conspired to retaliate against him by recouping excessive retiree earnings, which he labels as "larceny." However, these allegations suffer from the same deficiencies discussed above in Section IV.D, regarding Retiree Earnings Limitations and Pension Recoupment. Moreover, as Judge Robertson explained, "Mr. Parsons is not alleged to have done anything." (Dkt. No. 417 at 7.)[16] Accordingly, the court ADOPTS Judge Robertson's recommendation and, therefore, DENIES Plaintiff's September 30, 2019 Motion for Leave to File Amended Complaint (Dkt. No. 294.)

2. October 15, 2019 Motion to Amend

In his October 15, 2019 motion to amend, Plaintiff seeks to amend his complaint to include allegations related to subpoenas he caused to be served on witnesses directing them to testify at the hearing before Judge Robertson on the motions to dismiss. Plaintiff alleges Defendant Wynn withheld the subpoenas and attorney Trapani informed Plaintiff he would be instructing those individuals not to appear at the hearing. As Judge Robertson explained in both her report and recommendation and in her order granting the Municipal Defendants' Emergency Motion for a Protective Order, Wynn and Trapani "were fully justified in instructing the witnesses not to appear," given that evidence would not (and could not) be accepted at the hearing. (Dkt. No. 417 at 9; *see also*

---

[16] The proposed amended complaint contains no specific allegations against Mr. Parsons, but Plaintiff asserts in the motion to amend that he wrote to Mr. Parsons on several occasions, and Mr. Parsons "has attempted to ignore [the] correspondence and has gotten himself involved." (Dkt. No. 294 at 6-7.)

Dkt. No. 327, Dkt. No. 445.) Accordingly, the court ADOPTS Judge Robertson's recommendation and, therefore, DENIES Plaintiff's October 15, 2019 Motion for Leave to File Amended Complaint (Dkt. No. 322).

B.      Motion for Protective Order

On October 23, 2019, Plaintiff filed a motion for a protective order, seeking a general order from the court to stop harassment and retaliation. To the extent Plaintiff seeks injunctive relief, this court agrees with Judge Robertson that he has not carried his burden of demonstrating a substantial likelihood of success on the merits, for the reasons explained above, or irreparable harm. Accordingly, the court ADOPTS Judge Robertson's Report and Recommendation Concerning Plaintiff's September and October 2019 Motions for Leave to File Amended Complaint and Emergency Motion for Protective Order (Dkt. No. 417) and, therefore, DENIES Plaintiff's Motion for Protective Order (Dkt. No. 329).

C.      Motions for Recusal

Between July and September of 2020, Plaintiff filed his 29th through 34th motions for recusal. None have merit. As this court has repeatedly explained to Plaintiff, "dissatisfaction with a Court's rulings and case management is not grounds for recusal." (Dkt. No. 356 at 4 (quoting *Fideicomiso De La Tierra del Cano Martin Pena v. Fortuno*, 631 F. Supp. 2d 134, 137 (D.P.R. 2009)).) Moreover, "the law [cannot] confer a veto power on the assignment of his trial judge to any heckling [litigant] who merely levels a charge that implicates a judge's defensive or vicariously defensive reaction." (*Id.* at 5 (quoting *In re Bulger*, 710 F.3d 42, 47 (1st Cir. 2013)).) Rather,

> [t]he recusal standard must be more demanding because the disqualification decision must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.

(*Id.* (quoting *In re Bulger*, 710 F.3d at 47).) Thus, "[t]he trial judge has a duty not to recuse himself or herself if there is no objective basis for recusal." (*Id.* (quoting *In re United States*, 441 F.3d 44, 65 (1st Cir. 2006)).)

There is no objective basis for recusal here. Instead, Plaintiff makes the unfounded and erroneous accusation that the undersigned impersonated Judge Robertson when she granted the Municipal Defendants' Emergency Motion for Protective Order (Dkt. No. 327). In particular, Plaintiff alleges that the name of the court employee who entered Judge Robertson's order is actually Magistrate Judge Jennifer Boal. As Judge Robertson has explained, however, she made the ruling on the motion for protective order quashing Plaintiff's subpoenas, and neither the undersigned nor Judge Boal were involved in that order. (Dkt. Nos. 445, 446, 455.) In short, Plaintiff's arguments provide no basis for recusal. Accordingly, the court DENIES Plaintiff's 29th Motion for Recusal (Dkt. No. 415), 30th Motion for Recusal (Dkt. No. 424), 31st Motion for Recusal (Dkt. No. 429), 32nd Motion for Recusal (Dkt. No. 435), 33rd Motion for Recusal (Dkt. No. 442), and 34th Motion for Recusal (Dkt. No. 449).[17]


## VI. CONCLUSION

For these reasons, the court ADOPTS the following Reports and Recommendations issued by Judge Robertson: Dkt. Nos. 367, 368, 371, 376, 407, 411, and 417.

The court accordingly DENIES: Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 276), Plaintiff's September 30, 2019 Motion for Leave to File Amended Complaint (Dkt. No. 294),

---

[17] In addition, Plaintiff's Motion for Clarification (Dkt. No. 426) and Fifth Motion for Recusal of Judge Robertson (Dkt. No. 452) are DENIED AS MOOT. As to the motion for clarification, the court notes that the June 8, 2020 "Anticipated Response" he asserts is missing from the docket is included as Dkt. No. 422-2 and nothing therein alters the court's analysis. The motion for recusal as to Judge Robertson includes the same argument as to her ruling on Defendant's Emergency Motion for Protective order, which Judge Robertson has already addressed and rejected on multiple occasions. (*See* Dkt. Nos. 445, 446, and 455.)

Plaintiff's October 15, 2019 Motion for Leave to File Amended Complaint (Dkt. No. 322), and Plaintiff's Motion for Protective Order (Dkt. No. 329).

The court also GRANTS: Alexander's Motion to Dismiss (Dkt. No. 163) and dismisses all claims against her with prejudice; Grady and Couture's Motion to Dismiss (Dkt. No. 173) and dismisses both the federal and state-law claims against Grady with prejudice, but dismisses only the federal claims (Counts III and IV) against Couture with prejudice and dismisses the state-law claims (Counts II and V) without prejudice; the Pittsfield Retirement Board's Motion to Dismiss (Dkt. No. 162) and dismisses the federal claims (Counts III, IV, and VIII) with prejudice, but dismisses the state-law claims (Counts II and V) without prejudice; the Municipal Defendant's Motion to Dismiss (Dkt. No. 171) and dismisses the federal claims (Counts III, IV, and VIII) with prejudice, but dismisses the state-law claims (Counts I, II, V, VI, and VII) without prejudice; Dohoney's Motion to Dismiss (Dkt. No. 217) and dismisses the federal claims (Counts III, IV, and VIII) with prejudice, but dismisses the state-law claims (Counts II, V, VI, and VII) without prejudice).

In addition, the court DENIES: Plaintiff's 29th Motion for Recusal (Dkt. No. 415), 30th Motion for Recusal (Dkt. No. 424), 31st Motion for Recusal (Dkt. No. 429), 32nd Motion for Recusal (Dkt. No. 435), 33rd Motion for Recusal (Dkt. No. 442), and 34th Motion for Recusal (Dkt. No. 449). The court also DENIES AS MOOT: Plaintiff's Motion for Clarification (Dkt. No. 426), Plaintiff's September 17, 2020 Motion for Reconsideration (Dkt. No. 451), Plaintiff's Fifth Motion for Recusal of Judge Robertson (Dkt. No. 452), and Plaintiff's October 1, 2020 Motion to Re-assert Relief from Judgment (Dkt. No. 456).

It is So Ordered.

  /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge